# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### AT CANTON

```
------------------------------------------------------- x
In re:                                                  :   Chapter 11
                                                        :
SCHWAB INDUSTRIES, INC., et al.,[1]                     :   Case No. 10-60702
                                                        :   (Jointly Administered)
                        Debtors.                        :
                                                        :   Judge Russ Kendig
------------------------------------------------------- x
```

## APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2014(a) AND 6003(a), FOR THE ENTRY OF AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY WESTERN RESERVE PARTNERS, LLC AS INVESTMENT BANKERS, *NUNC PRO TUNC* TO MARCH 10, 2010

Schwab Industries, Inc ("SII"), Medina Cartage Co. ("MCC"), Medina Supply Company ("MSC"), Quality Block & Supply, Inc. ("QBS"), O.I.S. Tire, Inc. ("OIS"), Twin Cities Concrete Company ("TCC"), Schwab Ready-Mix, Inc. ("SRM"), Schwab Materials, Inc. ("SMI") and Eastern Cement Corp. ("ECC", and together with SII, MCC, MSC, QBS, OIS, TCC, SRM and SMI, the "Debtors"), the debtors and debtors in possession in the above-captioned Chapter 11 cases (the "Cases"), by and through their undersigned proposed counsel, hereby apply (the "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a), 2016(b) and 6003(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order authorizing Debtors to retain and employ Western Reserve Partners, LLC ("Western Reserve") as investment bankers in these

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are:  Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525), Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

Cases.  In support of this Application, Debtors submit the *Declaration of Kenneth A. Hirsch in Support of Application of Debtors and Debtors in Possession, Pursuant to Section 327(a) and 329(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a), and 6003(a), for Entry of an Order Authorizing Debtors to Retain and Employ Western Reserve Partners LLC, as Investment Bankers, Nunc Pro Tunc to March 10, 2010* (the "Hirsch Declaration"), a copy of which is attached hereto as Exhibit A and incorporated by reference herein, and respectfully state as follows:

## BACKGROUND

1.      On the date hereof (the "Petition Date"), Debtors commenced the Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Debtors have concurrently filed a motion seeking to jointly administer their estates.

2.      Debtors are continuing in possession of their properties and assets and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Cases.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue of this case in this district is proper pursuant to 28 U.S.C. §§1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

### *Debtors and Debtors' Businesses*

4.      Debtors' businesses produce, supply and distribute ready-mix concrete, concrete block, cement and related supplies to commercial, governmental and residential contractors throughout Northeast Ohio and Southwest Florida.  Debtors employ approximately 350 workers (all of whom are non-union) who are stationed across Ohio and Florida either at Debtors' Dover,

Ohio headquarters or at one of twenty ready-mix plants (13 in Ohio and 7 in Florida) or three Ohio plants which produce concrete block.

5.      With more than 40 years experience in the construction industry, Debtors have built a reputation of success and quality.  Debtors' competitive advantages flow from their attention to timeliness and an emphasis on geographic positioning of its locations near to interstates and high traffic areas to allow for expedient delivery of materials, concrete, concrete block and cement.

6.      As a result of its reputation and relationships, Debtors benefit from many longstanding and continuing relationships with all levels of government.  Projects from federal, state and municipal agencies, in Ohio and Florida, provide a material portion of Debtors' work.

7.      In addition to those operations in Ohio and Florida described above, through Debtor ECC, Debtors hold exclusive access to a deep-water terminal at Port Manatee on the Gulf of Mexico.  The strategic positioning of Port Manatee allows Debtors to both (i) efficiently distribute imported cement and aggregates throughout Florida; and (ii) export material throughout the Gulf of Mexico region.

8.      Their geographic advantages, existing relationships, reputation and import/export capabilities, uniquely situate Debtors to take advantage of opportunities resulting from Federal stimulus money over the next few years.

### *Individual Debtors*

9.      Debtor SII is an Ohio corporation headquartered in Dover, Ohio which serves as the holding company of the other Debtors.  As the parent organization, SII owns, either directly or through another Debtor, all the equity interests of the other Debtors.  SII is owned entirely by four members of the Schwab family.

10.     Debtor MCC is an Ohio corporation headquartered in Dover, Ohio.   MCC operates certain transportation systems which support the other Ohio Debtors.  MCC is a wholly owned subsidiary of SII.

11.     Debtor MSC is an Ohio corporation headquartered in Dover, Ohio.  MSC operates eight (8) ready-mix plants in Northeast Ohio.  MSC is a wholly owned subsidiary of SII.

12.     Debtor TCC is an Ohio corporation headquartered in Dover, Ohio.  TCC operates three (3) ready-mix plants in Northeast Ohio.  TCC is a wholly owned subsidiary of SII.

13.     Debtor OIS is an Ohio corporation headquartered in Dover, Ohio.   OIS' operations have been substantially wound down and OIS is administering its remaining assets and liabilities.  OIS is a wholly owned subsidiary of SII.

14.     Debtor QBS is an Ohio corporation headquartered in Dover, Ohio.  QBS operates two (2) ready-mix plants and a block plant in Northeast Ohio.   QBS is a wholly owned subsidiary of SII.

15.     Debtor SRM is a Florida corporation with a mailing address in Dover, Ohio.  SRM operates seven (7) ready-mix plants along the gulf coast of Florida.  SRM is a wholly owned subsidiary of SII.

16.     Debtor SMI is a Florida corporation with a mailing address in Dover, Ohio.  SMI wholly owns both ECC and a 2,100 acre plot of land ("Corkscrew") on the gulf coast of Florida near Fort Myers that has been identified as a primary future source of aggregates (mineral materials such as sand or stone, used in making concrete) that can be mined once proper approvals are obtained.  Corkscrew is currently profitable, producing fruit and other perishables sold to third parties.  SMI is a wholly owned subsidiary of SRM.

17.     Debtor ECC is a Florida corporation with a mailing address in Dover, Ohio.  ECC operates a modern 40,000 metric ton terminal in Port Manatee, the largest deep water port near the Panama Canal.  Located on the Gulf of Mexico, Port Manatee provides outstanding access for Debtors to export and import cement and aggregates to other non-American markets.  ECC uses this port access to support the sales efforts of Debtors both directly and indirectly.  Specifically, ECC sells 40% of cement imported through ECC directly to SRM, and sells all other imported cement to independent companies that do not directly compete with Debtors.  ECC is a wholly owned subsidiary of SMI.

### Events Leading to the Chapter 11 Filing

18.     Debtors are leaders in the production, supply and distribution of ready-mix concrete, concrete block, cement and related supplies to commercial, municipal and residential contractors throughout Northeast Ohio and Southwest Florida.  In fiscal year 2006, they provided more than $208 million worth of product to their customers.

19.     During fiscal year 2007 and thereafter, as a result of the nationwide real estate crash and the consequential dramatic slow down in the construction industry, Debtors' operations, particularly in Southwest Florida (where real estate and new construction has steeply declined), suffered.[2]  The decrease in sales negatively impacts Debtors' working capital availability and cash flows.

20.     As of December 31, 2009, Debtors report a book value of total assets of $104,915,117, with cash of $672,698 and total "working capital"[3] assets of $15,854,211.

---

[2]    For fiscal year ending April 30, 2007, Debtors had approximately $197,000,000 in sales.  For fiscal year ending April 30, 2008, Debtors had approximately $144,000,000 in sales.  For fiscal year ending April 30, 2009, Debtors had approximately $103,000,000 in sales.  Debtors' fiscal year ends each April 30.  The decrease in sales was significantly sharper for Debtors' Florida operations.
[3]    "Working capital" assets are understood to be comprised of cash, accounts receivable, inventory and prepaid expenses.

21.    Similarly, as of December 31, 2009, Debtors owe their Secured Lenders[4] pursuant to that certain Amended and Restated Credit Agreement dated October 18, 2007 (i) $8,582,950 on account of a certain revolving line of credit (the "Revolving Line of Credit"); (ii) $19,125,245 on account of that certain "Term A" Loan (the "Term A Loan"); and (iii) $31,995,586 on account of that certain "Term B" Loan (the "Term B Loan" and together with the Revolving Line of Credit and the Term A Loan, the "Secured Loans").   Upon information and belief, a first priority security interest in substantially all the personal property assets of Debtors and a first priority mortgage interest in substantially all the real property of the Debtors secures repayment of the Secured Loans.

22.    Also, as of December 31, 2009, Debtors' financial statements report trade payables of $13,390,149.

23.    On or about January 13, 2010, the Secured Lenders notified Debtors of their default of certain obligations pursuant to the Secured Loans.

24.    Debtors present cash needs are at their seasonal peak due to the slowdown in construction activity in winter and the inability to create concrete at certain temperatures.

25.    Debtors have sought financing from numerous possible lending services, including key customers, such as National Lime and Stone Company, among others. Unfortunately, these efforts have been unsuccessful.

26.    Debtors' unsuccessful efforts to obtain refinancing result in their current liquidity crisis.   This liquidity crisis necessitates Debtors' petition for relief under Chapter 11 of the Bankruptcy Code.

---

[4]    The "Secured Lenders" are KeyBank, National Association, Bank of America, N.A. and The Huntington National Bank.

## RELIEF REQUESTED

27.     By the Application, Debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a), 2016(b) and 6003(a), seek to employ and retain Western Reserve as their investment banker in the Cases.

## RETENTION OF WESTERN RESERVE

28.     Debtors seek to retain Western Reserve as their investment banker because of Western Reserve's substantial experience with sell-side advisory engagements for businesses (both financially successful, as well as financially distressed), including executing more than 200 sell-side transactions.  Debtors believe that Western Reserve is both well-qualified and able to assist them in these Cases in an efficient and timely manner.

29.     As of December 5, 2008, Debtors began working with Western Reserve to provide investment banking services to Debtors (the "Prepetition Engagement").  In Debtors' view, through its Prepetition Engagement, Western Reserve developed a thorough understanding of Debtors' operations, finance and systems.  Western Reserve also possesses meaningful experience in working on selling businesses while the business is in Chapter 11 – such knowledge is essential to Debtors' situation.

30.     As part of the Prepetition Engagement, Western Reserve conducted an extensive marketing process, engaging in discussions with myriad of prospective buyers and investors. Western Reserve's contacts extended to 62 financial parties and 41 strategic parties.  Several parties developed by Western Reserve presently remain interested in executing a Transaction.

31.     To the best of Debtors' knowledge, Western Reserve and all of its employees are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code, and neither Western Reserve nor any of its professionals holds any interest materially adverse to

Debtors' estates. Western Reserve, through the Hirsch Declaration, has confirmed this understanding.

32. To the best of Debtors' knowledge, Western Reserve has no connection with Debtors, creditors, other parties in interest, or their attorneys or accountants, except that Western Reserve may serve as a professional person in other matters, wholly unrelated to Debtors or the Cases.

## SERVICES TO BE PROVIDED BY WESTERN RESERVE

33. Western Reserve will provide such investment banking and advisory services as Western Reserve and Debtors deem appropriate and feasible in order to advise Debtors in the course of the Cases. In particular, Western Reserve has prepared a thorough assessment of Debtors' operations, financial condition, cash flow, credit worthiness and viability to take Debtors to market. Western Reserve will also assist Debtors in any merger, consolidation, reorganization, recapitalization, financial restructuring or other transaction or series of related transactions pursuant to which Debtors are, directly or indirectly, acquired by or combined with any person or group of persons as more fully described in the engagement letter (a "Transaction"). More specifically, the services provided by Western Reserve will and have include the following:

(a) Western Reserve will provide such investment banking services needed in connection with a Transaction;

(b) Western Reserve will identify and analyze potential purchases;

(c) Western Reserve shall advise Debtors in evaluating the structure and form of a Transaction;

(d) Western Reserve shall advise Debtors in evaluating any offers and in the negotiation of any Transaction;

(e) Western Reserve shall advise Debtors and their other professionals in negotiation definition documentation of any Transaction;

(f)   Western Reserve shall provide any and all other investment banking and advisory services otherwise agreed to by Western Reserve and Debtors.

34.   It is understood and agreed that Western Reserve will not be auditing any financial statements or performing attest procedures with respect to information in conjunction with its engagement.  It is further understood that Western Reserve's services are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

## DISINTERESTEDNESS

35.   Western Reserve conducted a review of its professional contacts for all material parties in interest in the Cases.  Western Reserve reviewed the List of Parties to Search for Conflicts attached to this Application as Exhibit B and compared it to its internal computer database for present or former clients of Western Reserve in order to identify potential relationships.  Connections with Debtors, their creditors, other parties in interest (as reasonably known to Western Reserve) or their respective attorneys, if any, are disclosed in the Hirsch Declaration.

36.   Western Reserve has not provided services to creditors or other parties in interest which could impact their rights in the Cases, nor does Western Reserve's involvement in the Cases compromise its ability to continue such various consulting services to such third parties.

37.   Further, as part of its diverse practice, Western Reserve has engagements that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties in interest in the Cases.  Western Reserve has in the past, may currently and will likely in the future be working with or against other professionals involved in the Cases in matters unrelated to Debtors and the Cases.  Based upon the Hirsch Declaration, none of these business relationships create interests materially adverse to Debtors

herein in matters upon which Western Reserve is to be employed, and none are in connection with the Cases.

38.     As of the Petition Date, Debtors owe Western Reserve $2,429.63 for expense reimbursements associated with the Prepetition Engagement (the "Past Amounts Due").  As a condition of accepting this assignment, Western Reserve agreed to waive its rights to collect the Past Amounts Due.

39.     Based on the results of the relationship search conducted to date as described above, Western Reserve appears to have no connection with Debtors, their creditors, other parties in interest (as reasonably known to Western Reserve) or their respective attorneys, except as disclosed in the Hirsch Declaration or otherwise described herein.  Further, no one involved in the Cases or in Western Reserve's practice generally has any connection to the United States Trustee or any person employed in the Office of the United States Trustee in this District.

40.     As such, Western Reserve is a "disinterested person" as such term is defined pursuant to section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Western Reserve:

      (a)     is not a creditor, an equity security holder, or an insider of any Debtor;

      (b)     is not and was not within two years before the date of the filing of the petition, a director, officer, or employee of any Debtor; and

      (c)     does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, any Debtor, or for any other reason.

41.     In addition, based upon the results of the relationship search described above, Western Reserve neither holds nor represents an interest adverse to Debtors within the meaning of sections 327(a) or 328 of the Bankruptcy Code.

42.     It is Western Reserve's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new relevant facts or relationships are discovered or arise, Western Reserve will promptly file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

## **TERMS OF RETENTION**

43.     Debtors and Western Reserve have agreed, subject to Bankruptcy Court approval, to the terms of that certain agreement attached hereto as <u>Exhibit C</u>.  As described in more particularity therein, Western Reserve's compensation shall consist of an initial Base Fee of $35,000 which was paid as a retainer for work to be performed on February 12, 2010; monthly fees of $20,000 payable on the 12th day of each month thereafter (the "<u>Monthly Fees</u>")[5]; and a Transaction Fee generally calculated to be one and three-quarters percent (1.75%) of the value of any Transaction (the "<u>Transaction Fee</u>").[6]  Debtors also have agreed to reimburse Western Reserve's reasonable out-of-pocket expenses of Western Reserve (as described with  greater particularity therein).

44.     Notwithstanding the request that Monthly Fees be paid to Western Reserve on the 12th day of each month.  Debtors understand that Western Reserve intends to apply to this Court for approval of such post payment of compensation and reimbursement of expenses for investment banking services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Bankruptcy Rules, Orders of this Court and guidelines established by the United States Trustee.  Debtors submit that monthly payments of

---

[5]     The Base Fee is considered a Monthly Fee, and Monthly Fees have been agreed to be credited against any future Transaction Fee earned.

[6]     In the event Debtors retain a supplemental investment banker with respect to Corkscrew, it is agreed that Western Reserve shall only be entitled to a Transaction Fee on the first $15,000,000 of value received in a Transaction relating to Corkscrew.  Moreover, provided Western Reserve has completed at least one Transaction having a Transaction Value exceeding $27,500,000, Western Reserve shall be entitled to collect an aggregate sum (net of other fees already collected and other adjustments) of no less than $550,000.

10-60702-rk    Doc 91    FILED 03/10/10    ENTERED 03/10/10 16:44:07    Page 11 of 42

the Monthly Fees will be in compliance with the interim compensation procedures proposed for compensating Debtors' other professionals.

## RETAINERS AND COMPENSATION

45.    Western Reserve received a retainer for services rendered as investment banker to Debtors in connection with its Prepetition Engagement in the amount of $25,000 (the "Deposit"). The Deposit was applied to amounts outstanding.  Accordingly, as of the Petition Date, Western Reserve is not owed any further prepetition amounts.  Western Reserve is not a creditor of Debtors.  Western Reserve also received the Base Fee on February 12, 2010.

## INDEMNIFICATION PROVISIONS

46.    Debtors have further agreed to indemnify, defend and hold harmless Western Reserve, and its affiliates, the respective member, managers, partners, directors, officers, agents and employees of Western Reserve (individually, an "Indemnified Party" and collectively, the "Indemnified Parties") according to the terms of Exhibit A to the Engagement Letter.

## NOTICE

47.    Notice of this Application has been provided to (i) the office of the United States Trustee for Region IX; (ii) each of Debtors' secured lenders (KeyBank, National Association, Huntington National Bank, and Bank of America, N.A.); counsel for the Agent for Debtors' secured lenders; (iv) the additional creditors identified on Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel for EFO Financial Group, LLC; (vi) other known claimants having liens or security interests in property of Debtors; (vii) the Internal Revenue Service; and (viii) the United States Department of Justice.  In light of the nature of the relief requested, Debtors submit that no other or further notice is necessary..

**[Remainder of page intentionally left blank]**

## **CONCLUSION**

WHEREFORE, Debtors respectfully request entry of an order substantially in the form attached hereto as <u>Exhibit D</u>, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated:  March 10, 2010                Respectfully submitted,
       Cleveland, Ohio

                                        */s/ David R. Exley*
                                        David R. Exley
                                        Vice President of Administration, and Authorized
                                        Officer on behalf of, each Debtor

Submitted by:


*/s/ Lawrence E. Oscar*
Lawrence E. Oscar (0022696)
Daniel A. DeMarco (0038920)
Christopher B. Wick (0073126)
Christopher W. Peer (0076257)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
Telephone:  (216) 621-0150
Facsimile:   (216) 241-2824
E-mail:  leoscar@hahnlaw.com
         dademarco@hahnlaw.com
         cwick@hahnlaw.com
         cpeer@hahnlaw.com


*Proposed Counsel to Debtors*

# <u>EXHIBIT A</u>

CLE - 2247125.1

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
AT CANTON**

----------------------------------------------------- x
In re:                                      :   Chapter 11
                                            :
SCHWAB INDUSTRIES, INC., *et al.*,[1]        :   Case No. 10-60702
                                            :   (Jointly Administered)
          Debtors.        :
                                            :   Judge Russ Kendig
----------------------------------------------------- x

**VERIFIED DECLARATION OF KENNETH A. HIRSCH IN SUPPORT OF
APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO
SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 2014(A) AND 6003(A), FOR THE ENTRY OF AN ORDER AUTHORIZING
DEBTORS TO RETAIN AND EMPLOY WESTERN RESERVE PARTNERS LLC, AS
INVESTMENT BANKERS, *NUNC PRO TUNC* TO MARCH 10, 2010**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are:  Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525), Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

DECLARATION OF KA HIRSCH - CLE - 2247127.1

STATE OF OHIO )
) ss:
COUNTY OF _____ )

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Kenneth A. Hirsch, declares, under penalty of perjury:

1. I am a Managing Director of Western Reserve Partners, LLC ("Western Reserve") with offices at 200 Public Square, Suite 3750, Cleveland, Ohio 44114, and I am duly authorized to make the following Declaration (the "Declaration") on behalf of Western Reserve in support of the *Debtors' Application, Pursuant to Section 327(a) and 329(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 6003(a) for the Entry Of An Order Authorizing Debtors to Retain and Employ Western Reserve Partners, LLC as Investment Bankers, Nunc Pro Tunc to March 10, 2010* (the "Application")[2] for entry of an order authorizing Debtors to retain and employ Western Reserve as investment bankers, and for the purpose of fulfilling the disclosure requirements of Federal Rules of Bankruptcy Procedure 2014(a) and 2016(b). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Application.

### *Qualifications of Professionals*

2.      Western Reserve maintains its offices at 200 Public Square, Suite 3750, Cleveland, Ohio 44114.

3.      Western Reserve possesses the requisite experience and expertise to serve as Debtors' financial advisor.  Western Reserve has experience and expertise in Chapter 11 cases involving business entities that may be required by Debtors in their Chapter 11 cases (the "<u>Cases</u>").

4.      As of December 5, 2008, Debtors began working with Western Reserve to provide investment banking services to Debtors (the "<u>Prepetition Engagement</u>").  As a result, Western Reserve is extremely familiar with Debtors' businesses, financial affairs, and the circumstances surrounding these Cases.

5.      As part of the Prepetition Engagement, Western Reserve conducted an extensive marketing process, engaging in discussions with myriad of prospective buyers and investors. Western Reserve's contacts extended to 62 financial parties and 41 strategic parties.  Several parties developed by Western Reserve presently remain interested in executing a Transaction.

### *Services to be Provided by Western Reserve*

6.      The employment of Western Reserve will assist Debtors in executing faithfully their duties as debtors in possession and implementing the reorganization of Debtors' financial affairs.  Subject to further order of this Court, Western Reserve will provide such investment banking and advisory services as Western Reserve and Debtors deem appropriate and feasible in order to advise Debtors in the course of the Cases.  In particular, Western Reserve has prepared a thorough assessment of Debtors' operations, financial condition, cash flow, credit worthiness and viability to take Debtors to market.  Western Reserve will also assist Debtors in (a) any merger, consolidation, reorganization, recapitalization, financial restructuring or other transaction or

series of related transactions pursuant to which Debtors are, directly or indirectly, acquired by or combined with any person or group of persons or (b) any acquisition, directly or indirectly, by any person or group of persons, in a single transaction or series of related transactions, of (i) all or substantially all of the assets or business of Debtors or (ii) securities representing more than 50% of the total voting power of Debtors entitled to vote in elections of Directors; or (c) any sale or transfer of the bank debt of Debtors to another holder; or (d) any transaction or series of related transactions involving Debtors of any of its subsidiaries or affiliates (including, without limitation, any repurchase, redemption, reserve stock split or subdivision or combination of shares) that results, directly or indirectly, in any of the events set forth under clauses (a), (b) or (c) above (under any circumstance, a "Transaction").  The assessment will also focus on determining if sufficient liquidity exists to operate the business in accordance with their business plan with an  appropriate level of risk.  More specifically, the services provided by Western Reserve will and have include the following:

      (a)    Western Reserve will provide such investment banking services needed in connection with a Transaction;

      (b)    Western Reserve will identify and analyze potential purchases;

      (c)    Western Reserve shall advise Debtors in evaluating the structure and form of a Transaction;

      (d)    Western Reserve shall advise Debtors in evaluating any offers and in the negotiation of any Transaction;

      (e)    Western Reserve shall advise Debtors and their other professionals in negotiation definition documentation of any Transaction;

      (f)    Western Reserve shall provide any and all other investment banking and advisory services otherwise agreed to by Western Reserve and Debtors.

      7.    It is understood and agreed that Western Reserve will not be auditing any financial statements or performing attest procedures with respect to information in conjunction

with its engagement. It is further understood that Western Reserve's services are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

8.     Subject to the Court's approval of the Application, Western Reserve is willing to serve as Debtors' financial advisor and to perform the services described above.

**_Professional Compensation_**

9.     The services of Western Reserve's professionals will be charged according to Western Reserve's agreement with Debtors, subject to Bankruptcy Court approval. In summary, Western Reserve's agreement with the Debtors calls for Western Reserve to be paid as follows:

(a)     An immediate Base Fee of $35,000 payable upon entry of an order approving this Application, which was paid on February 12, 2010;

(b)     A Monthly Fee of $20,000 per month payable on the 12th day of each month;[3]

(c)     Upon consummation of a Transaction, including successful credit bid by any secured party (or their successors or assigns), a Transaction Fee, due and payable at closing of the Transaction, via wire transfer, generally calculated to be equal to one and three-quarters percent (1.75%) of the value of any Transaction.[4]

(d)     Reimbursement for all reasonable out-of-pocket expenses of Western Reserve (including, without limitation, travel and lodging, research and computer time, postage and delivery expenses, and reproduction and printing expenses) incurred in connection with Western Reserve's services in this matter. Such expenses shall also include reasonable attorney's fees and expenses incurred by Western Reserve in connection with Western Reserve's counsel's review of this Application and other related agreements to which Western Reserve is a party, or which involve Western Reserve's representation of Debtors with respect to a Transaction.

---

[3]     The Base Fee is considered a Monthly Fee, and it has been agreed that Monthly Fees shall be credited against any future Transaction Fee earned.

[4]     In the event Debtors retain a supplemental investment banker with respect to Corkscrew, it is agreed that Western Reserve shall only be entitled to a Transaction Fee on the first $15,000,000 of value received in a Transaction relating to Corkscrew. Moreover, provided Western Reserve has completed at least one Transaction having a Transaction Value exceeding $27,500,000, Western Reserve shall be entitled to collect an aggregate sum (net of other fees already collected and other adjustments) of no less than $550,000.

10.     Notwithstanding the request that Western Reserve be paid the Monthly Fees on the 12th day of each month, Western Reserve intends to apply to the Court for allowance of compensation for professional services and reimbursement of expenses incurred in this case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Orders and Local Bankruptcy Rules of this Court.

11.     Neither I, nor Western Reserve, nor any member or employee thereof has received or been promised any compensation for legal services rendered or to be rendered in any capacity in connection with the Cases other than as permitted by the Bankruptcy Code.

12.     Western Reserve has not agreed to share compensation received in connection with these Cases with any other person, except as permitted by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 in respect of the sharing of compensation among the members of Western Reserve.

### *Disinterestedness of Professionals*

13.     To the best of my knowledge, and except as otherwise set forth herein, the members and employees of Western Reserve (a) do not have any connection with Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any other person employed in the Office of the United States Trustee; (b) are "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to Debtors' respective estates.

14.     Western Reserve conducted a review of its professional contacts for all material parties in interest in the Cases.  Western Reserve reviewed the List of Parties to Search for Conflicts attached to the Application as <u>Exhibit B</u> and compared it to its internal computer database for present or former clients of Western Reserve in order to identify potential relationships.  Western Reserve's diligence revealed no conflicts.

15.     Western Reserve has not provided services to creditors or other parties in interest which could impact their rights in the Cases, nor does Western Reserve's involvement in the Cases compromise its ability to continue such various consulting services to such third parties.

16.     Western Reserve received a retainer for services rendered under the Prepetition Engagement in the amount of $25,000 (the "Deposit").  Western Reserve is owed $2,429.63 for outstanding invoices issued as of the Petition Date.  Western Reserve agrees to waive its rights to such payment.  Accordingly, as of the Petition Date, Western Reserve is not owed any other prepetition amounts.  Western Reserve is not otherwise a creditor of Debtors.

17.     Western Reserve received the Base Fee on February 12, 2010.

18.     Western Reserve will not represent any person in connection with any matter adverse to Debtors.  Further, should Western Reserve discover during the pendency of the Cases that it represents, in unrelated matters, an entity or person that has an interest adverse to Debtors, Western Reserve will disclose to Debtors and the Court the nature of such representation and relationship thereto.

19.     To the best of my knowledge, information and belief, Western Reserve and all counsel, partners and associates thereof as far as I have been able to ascertain:

    (a)     are not creditors of Debtors;

    (b)     are not and were not, within two (2) years of the Petition Date, a director, officer or employee of any Debtor; and

    (c)     do not have an interest materially adverse to the interest of Debtors' respective estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtors, or for any other reason.

20.    To the best of its knowledge, information and belief, and based upon the database search described above, Western Reserve neither represents nor holds any interest materially adverse to the interest of Debtors' respective estates or any class of creditors or equity security

**[Remainder of page intentionally left blank]**

holders by reason of any relationship or connections with or interest in Debtors or any of their creditors or any party in interest in these cases, and is therefore "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.  Western Reserve has no present connections with the United States Trustee in these cases or any person employed in the Office of the United States Trustee.  No person who is a member or associate of Western Reserve is a relative of any judge of the United States Bankruptcy Court for the Northern District of Ohio or the Office of the United States Trustee for Region IX.  Furthermore, no person who is a member or associate of Western Reserve is or has been connected with any judge of such Court or such United States Trustee so as to render the employment of Western Reserve improper as set forth in Rule 5002 of the Federal Rules of Bankruptcy Procedure.

21.    I have read, understand and agree to be bound by General Order 93-1 "Guidelines for Compensation and Expense Reimbursement of Professionals."

22.    Accordingly, to the best of my knowledge, Western Reserve is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.

23.    To the extent that Western Reserve subsequently discovers any facts bearing on this Declaration or its representation of Debtors, this Declaration will be supplemented and those facts will be fully disclosed to the Court.

Dated:____2/13_____, 2010                    */s/ Kenneth A. Hirsch*_____
                                              Kenneth A. Hirsch

holders by reason of any relationship or connections with or interest in Debtors or any of their creditors or any party in interest in these cases, and is therefore "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code. Western Reserve has no present connections with the United States Trustee in these cases or any person employed in the Office of the United States Trustee. No person who is a member or associate of Western Reserve is a relative of any judge of the United States Bankruptcy Court for the Northern District of Ohio or the Office of the United States Trustee for Region IX. Furthermore, no person who is a member or associate of Western Reserve is or has been connected with any judge of such Court or such United States Trustee so as to render the employment of Western Reserve improper as set forth in Rule 5002 of the Federal Rules of Bankruptcy Procedure.

21.     I have read, understand and agree to be bound by General Order 93-1 "Guidelines for Compensation and Expense Reimbursement of Professionals."

22.     Accordingly, to the best of my knowledge, Western Reserve is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.

23.     To the extent that Western Reserve subsequently discovers any facts bearing on this Declaration or its representation of Debtors, this Declaration will be supplemented and those facts will be fully disclosed to the Court.

Dated: **2/13**            , 2010

Kenneth A. Hirsch

# EXHIBIT B

CLE - 2247125.1

**SCHWAB INDUSTRIES, INC et al.**

**LIST OF PARTIES TO SEARCH FOR CONFLICTS**

**AS OF FEBRUARY 9, 2010**

**DEBTORS:**

Schwab Industries, Inc.
Medina Cartage Company
Medina Supply Company
Quality Block and Supply, Inc.
Schwab Ready Mix, Inc.
O.I.S. Tire, Inc.
Twin Cities Concrete Company
Schwab Materials, Inc.
Eastern Cement Corporation

**NON-DEBTOR AFFILIATES:**

Eastern Portland Cement Corp.
Gilmau Shipping Corp.

**SHAREHOLDERS / OFFICERS / DIRECTORS:**

Jerry A. Schwab
Donna S. Schwab  (also listed occasionally as Donna L. Schwab)
David A. Schwab
Mary Lynn Schwab

**CONSOLIDATED LIST OF TOP 40 GENERAL UNSECURED CREDITORS**

Holcim, Ltd.
Cemex (aka Cemex USA Concrete)
Holcim (US), Inc.
National Lime and Stone Co.
St. Mary's Cement Group
Wells Fargo TPA (aka Wells Fargo Insurance Services)
Euclid Chemical Company
Quicken Loans Arena
Express Scripts, Inc.
Haydite DiGeronimo Aggregates LLC
Oster Sand and Gravel
Stewart Mining, Inc.
Brugmann Sand and Gravel

CLE - 2241604.2

LaFarge Corporation
Icard Merrill Cullis Timm
Hanson Aggregates
Westfield Group
Bruner Cox LLP
Lakeside Sand and Gravel, Inc.
Bonita Grande Mining, LLC
Barry Land Development
Florida Rock Industries, Inc.
Berner Trucking, Inc.
Palmdale Oil Company
Professional Bulk
Dealers Supply Company
Headwaters Resources (aka Headwaters Incorporated)
Westfield Group-O
Bessemer Supply
Crop Productions Services
Martin Marietta Materials
Flynn's of Ohio, Inc.
Soehnlen Brothers Sand and Gravel
Charles Svec, Inc.
Great Lakes Petroleum Company
Ford & Harrison LLP
Cramblett Trucking, Inc.
Silver Brothers, Inc.
Oberfield's, Inc.
Boral Material Technologies, Inc.
PGBC
BWC State Insurance Fund
Westfield Group - Kentucky

**PROFESSIONALS:**

Hahn Loeser & Parks LLP
Budish, Solomon, Steiner & Peck, Ltd.
Bruner-Cox LLP
The Parkland Group
Western Reserve Partners, LLC
The Garden City Group

**DEPOSITORY BANKS:**

Key Bank, National Association
Bank of America, N.A.
National City Bank
Huntington National Bank

CLE - 2241604.2

**SECURED CREDITORS:**

KeyBank National Association
The Huntington National Bank
Bank of America, N.A.
IBM Credit LLC
TCF Equipment Finance, Inc.
Ladco Financial Group
Wells Fargo Equipment Finance, Inc.

**OTHER INTERESTED PARTIES:**
Darrell Markijohn
Ernst & Young
Port of Manatee
Stonehill Financial
Manatee County Port Authority
Wells Fargo Insurance Services

**NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS:**

Billy Creek, LLC
KTB Florida Sports Arena, LLC
Holcim (US) Inc.
GE Capital
Manatee County Port Authority
Mast Family Culligan
ModSpace
Pitney Bowes
Crown Castle International
The National Lime and Stone Company
RentWear
Oster Sand & Gravel, Inc.
The Arena at Gateway
Summit Ready Mix Supply Co.
Central Allied Enterprises, Inc.
Bundschu/Kraft, Inc.
FL Smidth
South Florida Stadium Corporation d/b/a Pro Player Stadium
Copeco
DDI Leasing, Inc.
Meritech, Inc.
Verizon
Qwest Communications Corporation
Staley
Mark Newhart

CCT Financial Corporation
University of South Florida, Board of Trustees


**LITIGATION**

**Antitrust Litigation:**
Superior Concrete and Florida Building Materials, Inc.
Daniel Morgan Construction, Inc.
Shear Construction and Development, Inc.
Square D. Homes, Inc.
Action Ready – Mix Concrete, Inc.
Nuspace, Inc.
Marathon Seawalls & Docks, Inc.
Keys Grading and Paving, Inc.
Deeb Construction & Development Company
Action Ready Mix Concrete Inc.
Advantage Concrete of Florida, Inc.
Puder-Siegel Homes at Mizner Falls, Inc.
Home Building Materials, Inc.
Dakota Land Company
Florida Block & Ready Mix
Bay Area Remodelers, Inc.
Asterisk Luxury Homes, Inc.
Liberty Concrete and Masonry, Inc.
Bandes Construction Company, Inc.
Coscan Construction, LLC
Kroeger Enterprises, Inc.
Carpenter Contractors of America, Inc.
Family Pools, Inc.
Hard Rock Materials

Jam Tire Inc.
James E. Jones, Jr.
Michael P. McMasters, Jr.
Paul Qojnicz
PC Construction Inc.
Donna D. Digiandomenico
Charles Schwab & Co. Inc.
Holy Family Credit Union
Third Federal Savings & Loan
Huntington Bank
Charter One Bank
Wells Fargo Bank NA
JPMorgan Chase Bank, successor by merger to Bank One, NA
Dennis Gulcin

Evan Gulcin
Kennat Companies
Alex Kennat
R.J Mascia Concrete Inc.
RJ Mascia Corp.
Russell J. Mascia
Paul Wojnicz
P C Construction Inc.
Atlas Concrete Walls Inc.
Robert A. Knittel
Terrance L. Moser
Terry Moser
Moser Construction Inc.
Frank J. Dettore
All Purpose Construction Inc.
King Paving
Lisa A. Davis
Brian E. Davis
Concrete Paving Inc.
West End Land Development Inc.
All Concrete Construction Inc.

# EXHIBIT C

CLE - 2247125.1

# W E S T E R N   R E S E R V E

P A R T N E R S   L L C

200 Public Square . Suite 3750 . Cleveland, Ohio 44114
Phone: (216) 589-0900 . Fax: (216) 589-9558 . www.wesrespartners.com

February 12, 2010

CONFIDENTIAL

The Board of Directors
Schwab Industries, Inc.
2301 Progress St.
Dover, OH 44622

Attention: David Schwab, Chief Executive Officer

Ladies and Gentlemen:

This agreement sets forth the terms and conditions under which Schwab Industries, Inc. (the "Company") has engaged Western Reserve Partners LLC ("Western Reserve") as its exclusive financial advisor in connection with the possible sale or financial restructuring of the Company.

1.      Scope of Services. During the term of its engagement hereunder, Western Reserve will provide such financial advisory and investment banking services and assistance in connection with the Transaction or Transactions (as defined below) as are customary and appropriate in engagements of this type and as may be reasonably requested by the Company. Such services may include identifying and analyzing potential purchasers, advising and assisting the Company in evaluating the various structures and forms of any purchase(s), assisting in the evaluation of any offers, advising and assisting the Company in negotiating the financial aspects of the Transaction(s), and assisting the Company and its counsel in negotiating definitive agreement(s) and consummating the Transaction(s). For purposes of this agreement, a "Transaction" means (a) any merger, consolidation, reorganization, recapitalization, financial restructuring or other transaction or series of related transactions pursuant to which the Company or a portion of its assets is, directly or indirectly, acquired by or combined with any person or group of persons or (b) any acquisition, directly or indirectly, by any person or group of persons, in a single transaction or series of related transactions, of (i) any material assets or business of the Company or (ii) securities representing a material interest in the ownership or voting rights of the Company; or (c) any sale or transfer of the bank debt of the Company to another holder involved as part of any of the foregoing transactions; or (d) any transaction or series of related transactions involving the Company or any of its subsidiaries or affiliates (including, without limitation, any repurchase, redemption, reverse stock split or subdivision or combination of shares) that results, directly or indirectly, in any of the events set forth under clauses (a) or (b) or (c) above.

2.      Fees and Expenses. For Western Reserve's services hereunder, the Company will compensate Western Reserve as follows:

CLE - 2255626.3

The Board of Directors
Schwab Industries, Inc.
February 12, 2010
Page 2

      (a)    <u>Base Fee</u>. Upon execution of this agreement, the Company will pay Western Reserve an initial engagement fee in the amount of $35,000 (the "Base Fee").

      (b)    <u>Monthly Fee</u>. The Company will pay Western Reserve a monthly fee (the "Monthly Fee") in the amount of $20,000 per month. The Base Fee payment will constitute the first Monthly Fee and is to be paid upon execution of this agreement and subsequent Monthly Fee payments are to be paid on the each 30th day thereafter. Amounts paid by the Company for the Base Fee or any Monthly Fee thereafter shall be credited against the Transaction Fee described below.

      (c)    <u>Transaction Fee</u>. Upon consummation of each Transaction (as described above), Western Reserve shall earn a transaction fee (the "Transaction Fee") equal to 1.75% of that Transaction's total Transaction Value (as defined below). In the event that the Company hires a supplemental financial advisor with respect to the sale of the Corkscrew Road property, Western Reserve will be due 1.75% only on the first $15,000,000 of value received for the Corkscrew Road property. The Transaction Fee shall be payable by the Company at the Closing of any such Transaction. Upon the termination of this engagement for any reason, including, without limitation, (1) confirmation of a reorganization or (2) the Chief Restructuring Officer causing Western Reserve to cease asset sale activities, Western Reserve shall deliver to the Company a final reconciliation of all amounts earned by Western Reserve hereunder and paid by the Company to date. If such final reconciliation shows that Western Reserve has completed at least one (1) Transaction with a Transaction Value of at least $27,500,000 but has not received Transaction Fees of at least $550,000, then Western Reserve shall promptly issue an invoice to the Company (payable in accordance with the provisions of Section 7 hereunder) for the difference between the amounts paid to Western Reserve and $550,000.

      For purposes of this agreement, "Transaction Value" means the sum of: (i) any and all cash paid, directly or indirectly, for the assets, , business or capital stock of the Company; (ii) the fair market value of any and all assets, securities or other property or rights transferred, directly or indirectly, in payment for the assets, business or capital stock of the Company, including, without limitation, payments to be made under noncompetition or similar arrangements and any deferred or contingent payments or potential payments, including under any earn-out or escrow arrangements; provided that the value of debt instruments for which there is no established trading market shall be the face amount thereof; (iii) the principal amount of any indebtedness for borrowed money (including capitalized lease obligations, but excluding trade payables and accrued operating expenses) assumed, repaid, refinanced, restructured, retired, extinguished or acquired by the purchaser in any Transaction; and (iv) the aggregate amount of any dividends or other distributions declared or paid by the Company with respect to its capital stock after the date of this agreement, other than normal recurring cash dividends in amounts not materially greater than currently paid. If, in lieu of receiving all or any portion of the type of consideration payable to the other shareholders of the Company in connection with a Transaction, any shareholder directly or indirectly retains an ownership interest in the Company or directly or indirectly acquires an ownership interest in the corporation or other entity surviving or resulting from a Transaction, the Transaction Value shall be calculated by assuming that such shareholder had sold his entire ownership interest in the Company and received in exchange therefor an amount per share equal to that received by the Company or the other shareholders of the Company, as the case may be, in a Transaction

CLE - 1256626 3

The Board of Directors
Schwab Industries, Inc.
February 12, 2010
Page 3

For purposes of determining the Transaction Value, the fair market value of any assets, securities, property or other rights shall be (i) in the case of securities for which there is an established trading market, the closing sale price of the securities on the trading day preceding the date of the closing of a Transaction, and (ii) in the case of any assets, securities other than those for which there is an established trading market, property or rights, as mutually agreed by Western Reserve and the Company; provided that, if the parties cannot so agree, they will choose a qualified appraiser of national standing to conclusively determine, with the expenses of such appraiser to be shared equally between the Company and Western Reserve, the fair market value of such assets, securities, property or rights, and provided further, that the value of debt instruments for which there is no established trading market shall be the face amount thereof. Any information available to the Company for purposes of calculating the amount of any component of the Transaction Value shall be made available to Western Reserve by the Company upon request.

(d)    Expenses.  The Company will reimburse Western Reserve for all reasonable expenses incurred by Western Reserve in connection with the performance of its services under this agreement, including but not limited to reasonable fees and expenses of Western Reserve's legal counsel. Western Reserve will render invoices for such expenses to the Company on a quarterly basis during Western Reserve's engagement and at the conclusion of the engagement.

All invoices will be due and payable within 30 days after date of issuance, except for those invoices related to the consummation of a Transaction, which are due and payable in full upon closing of any such Transaction.  If any fee earned or reimbursable expense is not paid when due, then the Company will be charged a late fee of 1% per month (12% annually) on the amount outstanding.  The Company agrees to reimburse Western Reserve for all expenses, including but not limited to reasonable attorneys' fees, actually and reasonably incurred by Western Reserve in connection with enforcing the Company's obligation to pay Western Reserve for such fee or to reimburse Western Reserve for such expense as provided by this agreement.

2.    Coordination; Access to Information.  The Company and its directors and executive officers will promptly inform Western Reserve of any inquiry they may receive concerning the possible acquisition of the Company or availability of all or a portion of the stock or assets of the Company for purchase.  During the period of the engagement contemplated by this agreement, neither the Company nor any of its directors or executive officers will initiate any discussions with respect to a sale of the Company without first consulting Western Reserve.

The Company will provide Western Reserve with access to the Company's officers, directors, advisors and facilities and furnish or cause to be furnished to Western Reserve all information relating to the Company or a Transaction as Western Reserve reasonably deems necessary or appropriate in connection with its engagement.  The Company hereby warrants to Western Reserve that all information provided to Western Reserve by the Company or its directors, officers, advisors or other representatives in connection with this engagement will be true and accurate in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Company acknowledges and agrees that Western Reserve will be using publicly available

CLE - 2255026.3

The Board of Directors
Schwab Industries, Inc.
February 12, 2010
Page 4

information and information in reports and other materials provided by others, including information provided by or on behalf of the Company and any prospective purchaser, and that Western Reserve does not assume any responsibility for, and may rely without independent verification on the accuracy and completeness of, any such information, and that Western Reserve will not make an appraisal of any assets or liabilities of the Company or any prospective purchaser.

4.   **Certain Acknowledgements.**  The Company represents that it is a sophisticated business enterprise that has retained Western Reserve solely as an advisor for the limited purposes set forth in this agreement.  The parties acknowledge and agree that their respective rights and obligations under this agreement are contractual in nature.  Each party disclaims any intention to impose fiduciary obligations on the other by virtue of this agreement or the engagement contemplated hereby, and this agreement shall not be so construed.  This agreement is solely for the benefit of the parties hereto, the indemnified persons described in Appendix A hereto, and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this agreement or the performance of any services in connection with the engagement contemplated by this agreement.  No fee payable to any other financial advisor by the Company or any other company in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Western Reserve hereunder.

5.   **Announcement.**  If a Transaction is completed, Western Reserve may, at its option and expense, place advertisements or announcements in such newspapers, periodicals, mailings or other publications as it may choose, stating that Western Reserve acted as financial advisor to the Company in connection with a Transaction.

6.   **Indemnification, Contribution and Reimbursement.**  The Company agrees to the provisions with respect to its indemnification of Western Reserve and the other matters set forth in Appendix A hereto, which is incorporated by reference into this agreement.  The Company's agreements in this paragraph and Appendix A are a material inducement to Western Reserve's entering into this engagement.

7.   **Term of Engagement.**  Either Western Reserve or the Company may terminate Western Reserve's engagement hereunder at any time, with or without cause, by giving written notice of such termination to the other party.  Upon any such termination, neither party will have any liability or continuing obligation to the other; provided, however, that: (i) the provisions of Appendix A to this agreement shall survive any such termination; (ii) the Company shall remain liable for Western Reserve's fees earned and expenses incurred through the date of such termination and these fees and expenses shall be paid within 30 days from the date of the termination letter; and (iii) if a Transaction is consummated within 12 months of the termination of Western Reserve's engagement or if a definitive agreement with respect to a Transaction is entered into during such period and subsequently consummated, the Company shall be obligated to pay Western Reserve the Transaction Fee in accordance with the terms of this agreement.

8.   WAIVER OF JURY TRIAL.  EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION, CLAIM OR PROCEEDING (WHETHER BASED UPON

CLE - 2255526.3

The Board of Directors
Schwab Industries, Inc.
February 12, 2010
Page 5

CONTRACT, TORT OR OTHERWISE) RELATING TO OR ARISING OUT OF THIS AGREEMENT,
THE ENGAGEMENT OF WESTERN RESERVE PURSUANT HERETO OR THE PERFORMANCE
BY WESTERN RESERVE OF THE SERVICES CONTEMPLATED BY THIS AGREEMENT.

     9     Governing Law; Miscellaneous.  This agreement (which shall always be deemed to
include all appendices hereto) shall be governed by and construed in accordance with the laws of the State
of Ohio, without regard to conflicts-of-law principles, and shall be binding upon and inure to the benefit
of the Company, Western Reserve, the indemnified persons described in Appendix A, and their respective
successors and assigns.  This agreement may not be amended or modified except in a writing signed by an
authorized officer of Western Reserve and the Company which specifically references this agreement.
The paragraph headings used in this agreement are intended only for convenience of reference and shall
be disregarded in interpreting its provisions.  The use of any particular pronoun in this agreement is not
intended to be restrictive as to gender or number; rather, the masculine includes the feminine and neuter,
the singular includes the plural, and vice-versa, as the context may require.

     If the foregoing accurately sets forth the terms of our agreement, please sign in the space
indicated below and return to us a duplicate copy of this letter, at which time this letter will become a
mutually binding obligation.

                  Very truly yours,

                  WESTERN RESERVE PARTNERS LLC

                  By: _____
                      Kenneth A. Hirsch, Managing Director

Agreed to as of the above date:

Schwab Industries, Inc.

By: _____

Its: _____Presiden+_____

CLE - 7253626 3

## APPENDIX A

### INDEMNIFICATION AND CONTRIBUTION

This Appendix A is a part of and incorporated into that certain letter agreement dated February 2, 2010 (the "Agreement") between Western Reserve Partners LLC ("Western Reserve") and Schwab Industries, Inc. (the "Company").

(a)    If Western Reserve, any affiliate of Western Reserve, or any employee, agent, officer, director, manager, attorney, member or shareholder of Western Reserve or of any such affiliate (any or all of the foregoing being hereinafter referred to as an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry (each, a "Claim") brought by or against any person, including securityholders of the Company, in connection with, arising out of, based upon, or in any way related to the engagement described in the Agreement, the Company periodically will reimburse each Indemnified Person for his legal and other expenses (including but not limited to the costs of any investigation and preparation) reasonably incurred in connection therewith upon presentation of appropriate statements therefor; provided, however, that if it is finally judicially determined by a court of competent jurisdiction in any such action, suit, proceeding, investigation or inquiry that any loss, claim, damage or liability of an Indemnified Person has resulted primarily and directly from the gross negligence or willful misconduct of such Indemnified Person in performing the services which are the subject of the Agreement, such Indemnified Person shall repay such portion of the reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of such Indemnified Person which is the subject of such holding. The Company also will indemnify and hold each Indemnified Person harmless from and against any losses, actions, claims, damages or liabilities which such Indemnified Person may suffer or incur in connection with any matter related to the engagement described in the Agreement, except only if and to the extent it is finally judicially determined by a court of competent jurisdiction that such loss, action, claim, damage or liability has resulted primarily and directly from the gross negligence or willful misconduct of such Indemnified Person in performing the services that are the subject of the Agreement. If the Company so elects, the Company may assume the defense of such Claim, including the employment of counsel reasonably acceptable to Western Reserve and the Company shall pay the fees, expenses, and disbursements of such counsel. If the Company elects to assume such defense, the Company shall not be liable to any Indemnified Person under these indemnification provisions for any legal or other expenses subsequently incurred by the Indemnified Person in connection with such defense, other than reasonable costs of investigation, and except as provided in the following sentence. In the event that Western Reserve reasonably determines that having separate counsel would be appropriate under the circumstances due to actual or potential conflicts of interest, then Western Reserve may employ separate counsel reasonably acceptable to the Company to represent and defend Western Reserve in any Claim. If Western Reserve so employs separate counsel, the Company shall not be required to pay the fees and disbursements of more than one counsel for Western Reserve in any jurisdiction in any single action or proceeding. Separate counsel retained by Western Reserve shall, to the extent consistent with its professional responsibilities, cooperate with the Company and any counsel designated by the Company.

(b)    If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold him harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Person as a result of such loss, action, claim, damage or liability in such proportion as is appropriate to reflect (i) the relative benefits to the Company and its securityholders on the one hand, and Western Reserve and the other Indemnified Persons on the other hand, in connection with the transaction to which such exculpation, indemnification or reimbursement relates, or (ii) if allocation on that basis is not permitted by applicable law, to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the Company, Western Reserve and the other Indemnified Persons with respect to such loss, action, claim, damage or liability and any other relevant equitable considerations; provided, however, that in no event shall the amount to be contributed by all Indemnified Persons in the aggregate exceed the amount of the fees received by Western Reserve under the Agreement.

(c)    The Company shall be liable for any settlement of any claim against any Indemnified Person made with the Company's written consent, which consent shall not unreasonably be withheld. The Company shall not, without the prior written consent of Western Reserve, settle, compromise or discharge any claim or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise,

CLE - 2253626.3

discharge or consent includes, as an unconditional term thereof, the giving by the claimant to Western Reserve and each Indemnified Person of an unconditional release from any and all liability in respect of such claim.

(d)     .    The reimbursement, indemnity and contribution obligations of the Company under this Appendix A shall be in addition to any liability which the Company may otherwise have, and shall be binding upon and inure to the benefit of the respective successors, assigns, heirs and personal representatives of the Company and each Indemnified Person. No Indemnified Person shall have any liability to the Company or its securityholders for or in connection with any matter referred to in this Appendix A or elsewhere in the Agreement except to the extent that any losses, actions, claims, damages, liabilities or expenses incurred by the Company result primarily and directly from the gross negligence or willful misconduct of Western Reserve or such Indemnified Person in performing the services that are the subject of the Agreement. The provisions of this Appendix A shall survive any termination, expiration or completion of the engagement provided by the Agreement.

CLE - 2255626 3

# EXHIBIT D

CLE - 2247125.1

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### AT CANTON

```
-------------------------------------------------------- x
In re:                                          :   Chapter 11
                                                :
SCHWAB INDUSTRIES, INC., et al.,[1]             :   Case No. 10-60702
                                                :   (Jointly Administered)
                        Debtors.                :
                                                :   Judge Russ Kendig
-------------------------------------------------------- x
```

## ORDER APPROVING APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) AND 6003(a), FOR THE ENTRY OF AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY WESTERN RESERVE PARTNERS LLC, AS INVESTMENT BANKERS, *NUNC PRO TUNC* TO MARCH 10, 2010

Upon consideration of the application dated March 10, 2010 (the "Application") of Schwab Industries, Inc ("SII"), Medina Cartage Co. ("MCC"), Medina Supply Company ("MSC"), Quality Block & Supply, Inc. ("QBS"), O.I.S. Tire, Inc. ("OIS"), Twin Cities Concrete Company ("TCC"), Schwab Ready-Mix, Inc. ("SRM"), Schwab Materials, Inc. ("SMI") and Eastern Cement Corp. ("ECC", and together with SII, MCC, MSC, QBS, OIS, TCC, SRM and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525), Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

ORDER TO RETAIN WESTERN RESERVE - CLE - 2247125.1

SMI, the "Debtors"), the debtors and debtors in possession in the above-captioned Chapter 11 cases (the "Cases"), for entry of an order approving Debtors' retention of Western Reserve Partners, LLC ("Western Reserve") as investment bankers for Debtors; and based upon the *Affidavit of David R. Exley in Support of Chapter 11 Petitions and First-Day Motions* (the "Exley Affidavit"), concurrently filed with the Application, and the *Declaration of Kenneth A. Hirsch in Support of Application of Debtors and Debtors in Possession, Pursuant to Section 327(a) and 329(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a), and 6003(a), for the Entry of an Order Authorizing Debtors to Retain and Employ Western Reserve Partners LLC, as Investment Bankers, Nunc Pro Tunc to March 10, 2010* (the "Hirsch Declaration"), attached to the Application; and after due deliberation and hearing, this Court finds that:   (i) it has jurisdiction over the matters raised in the Application under 28 U.S.C. §§157 and 1334; (ii) venue of this matter is proper under 28 U.S.C. §§1408 and 1409; (iii) this matter is a core proceeding under 28 U.S.C. §157(b)(2); (iv) the relief requested in the Application is in the best interests of Debtors, their estates, creditors, and other parties in interest; (v) adequate and proper notice of the Application and the hearing thereon has been given and that no other or further notice is necessary; and (vi) good and sufficient cause exists for the granting of the relief requested in the Application as set forth herein.   Accordingly,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is GRANTED and APPROVED in its entirety.

2.      Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the Application.

3.      In accordance with sections 327(a) and 328 of the Bankruptcy Code, and Rules 2014 and 6003(a) of the Bankruptcy Rules, Debtors shall be and hereby are authorized and

empowered to employ and retain Western Reserve as their financial advisors, *nunc pro tunc* as of the Petition Date, for the matters referred to in the Application, during the pendency of these Cases.

4.      Payment of the Base Fee is approved.

5.      In connection with the services to be rendered by Western Reserve, Western Reserve shall receive compensation and reimbursement of expenses in accordance with the terms in the Application, provisions of sections 327, 330 and 331 of the Bankruptcy Code and any applicable order of the Court.

6.      The Court shall retain jurisdiction to hear and determine all matters emanating form this Order.

7.      This Order shall be immediately effective and enforceable upon entry.

IT IS SO ORDERED.

# # #

Prepared and Submitted By,

*/s/ Lawrence E. Oscar*
Lawrence E. Oscar (0022696)
Daniel A. DeMarco (0038920)
Christopher B. Wick (0073126)
Christopher W. Peer (0076257)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:    (216) 621-0150
Facsimile:    (216) 241-2824
E-mail:       leoscar@hahnlaw.com
              dademarco@hahnlaw.com
              cwick@hahnlaw.com
              cpeer@hahnlaw.com

*Proposed Counsel to Debtors*