UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
AT CANTON

---------------------------------------------------------- x
In re:                                                     :    Chapter 11
                                                           :
SCHWAB INDUSTRIES, INC., *et al.*,[1]                      :    Case No. 10-60702
                                                           :    (Jointly Administered)
              Debtors.                                     :
                                                           :    Judge Russ Kendig
---------------------------------------------------------- x


**MOTION FOR ORDER (1) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, SUBJECT TO HIGHER OR BETTER OFFERS, PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365; (2) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SUCH SALE AND DETERMINING AND ADJUDICATING CURE AMOUNTS WITH RESPECT TO SUCH CONTRACTS AND LEASES; (3) WAIVING THE FOURTEEN-DAY STAY PERIOD PROVIDED BY <u>BANKRUPTCY RULE 6004(H); AND (4) GRANTING RELATED RELIEF</u>**

Schwab Industries, Inc ("<u>SII</u>"), Medina Cartage Co. ("<u>MCC</u>"), Medina Supply Company ("<u>MSC</u>"), Quality Block & Supply, Inc. ("<u>QBS</u>"), O.I.S. Tire, Inc. ("<u>OIS</u>"), Twin Cities Concrete Company ("<u>TCC</u>"), Schwab Ready-Mix, Inc. ("<u>SRM</u>"), Schwab Materials, Inc. ("<u>SMI</u>") and Eastern Cement Corp. ("<u>ECC</u>", and together with SII, MCC, MSC, QBS, OIS, TCC, SRM and SMI, the "<u>Debtors</u>"), the debtors and debtors in possession in the above-captioned Chapter 11 cases (the "<u>Cases</u>"), by and through their undersigned counsel, hereby move (the "<u>Sale Motion</u>") this Bankruptcy Court for an order (1) authorizing the sale of substantially all of the Debtors' assets, free and clear of liens, claims, interests and encumbrances, subject to higher or better

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525), Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

CLE - 2647839.2

offers, pursuant to Bankruptcy Code[2] sections 363 and 365; (2) approving the assumption and assignment of certain executory contracts and unexpired leases in connection with such sale and determining and adjudicating cure amounts with respect to such contracts and leases; and (3) waiving the fourteen-day stay period provided by Bankruptcy Rule 6004(h); and (4) Granting Related Relief. In support of this Sale Motion, Debtors respectfully state as follows:

## BACKGROUND FACTS

1. On February 28, 2010 (the "Petition Date"), Debtors commenced the Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Cases are being jointly administered pursuant to an order of this Court.

2. Debtors are continuing in possession of their properties and assets and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

3. On March 9, 2010, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. Venue of this case in this district is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

### *Debtors and Debtors' Businesses*

5. Debtors' businesses produce, supply and distribute ready-mix concrete, concrete block, cement and related supplies to commercial, governmental and residential contractors throughout Northeast Ohio and Southwest Florida. Debtors employ approximately 350 workers (all of whom are non-union) who are stationed across Ohio and Florida either at Debtors' Dover,

---

[2] Unless otherwise indicated, all section references are to the current version of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and all rule references are to the current Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Ohio headquarters or at one of twenty ready-mix plants (13 in Ohio and 7 in Florida) or three Ohio plants which produce concrete block.

6. With more than 40 years experience in the construction industry, Debtors have built a reputation of success and quality. Debtors' competitive advantages flow from their attention to timeliness and an emphasis on geographic positioning of its locations near to interstates and high traffic areas to allow for expedient delivery of materials, concrete, concrete block and cement.

7. As a result of its reputation and relationships, Debtors benefit from many longstanding and continuing relationships with all levels of government. Projects from federal, state and municipal agencies, in Ohio and Florida, provide a material portion of Debtors' work.

8. In addition to those operations in Ohio and Florida described above, through Debtor ECC, Debtors hold exclusive access to a deep-water terminal at Port Manatee on the Gulf of Mexico. The strategic positioning of Port Manatee allows Debtors to both (i) efficiently distribute imported cement and aggregates throughout Florida; and (ii) export material throughout the Gulf of Mexico region.

9. Their geographic advantages, existing relationships, reputation and import/export capabilities, uniquely situate Debtors to take advantage of opportunities resulting from Federal stimulus money over the next few years.

***Individual Debtors***

10. Debtor SII is an Ohio corporation headquartered in Dover, Ohio which serves as the holding company of the other Debtors. As the parent organization, SII owns, either directly or through another Debtor, all the equity interests of the other Debtors. SII is owned entirely by four members of the Schwab family.

11. Debtor MCC is an Ohio corporation headquartered in Dover, Ohio. MCC

operates certain transportation systems which support the other Ohio Debtors.  MCC is a wholly owned subsidiary of SII.

12. Debtor MSC is an Ohio corporation headquartered in Dover, Ohio.  MSC operates eight (8) ready-mix plants in Northeast Ohio.  MSC is a wholly owned subsidiary of SII.

13. Debtor TCC is an Ohio corporation headquartered in Dover, Ohio.  TCC operates three (3) ready-mix plants in Northeast Ohio.  TCC is a wholly owned subsidiary of SII.

14. Debtor OIS is an Ohio corporation headquartered in Dover, Ohio.  OIS' operations have been substantially wound down and OIS is administering its remaining assets and liabilities.  OIS is a wholly owned subsidiary of SII.

15. Debtor QBS is an Ohio corporation headquartered in Dover, Ohio.  QBS operates two (2) ready-mix plants and a block plant in Northeast Ohio.  QBS is a wholly owned subsidiary of SII.

16. Debtor SRM is a Florida corporation with a mailing address in Dover, Ohio.  SRM operates seven (7) ready-mix plants along the gulf coast of Florida.  SRM is a wholly owned subsidiary of SII.

17. Debtor SMI is a Florida corporation with a mailing address in Dover, Ohio.  SMI wholly owns both ECC and a 2,100 acre plot of land (the "Orange Grove") on the gulf coast of Florida near Fort Myers that has been identified as a primary future source of aggregates (mineral materials such as sand or stone, used in making concrete) that can be mined once proper approvals are obtained.  The Orange Grove is currently profitable, producing fruit and other perishables sold to third parties.  SMI is a wholly owned subsidiary of SRM.

18. Debtor ECC is a Florida corporation with a mailing address in Dover, Ohio.  ECC operates a modern 40,000 metric ton terminal in Port Manatee, the largest deep water port near

the Panama Canal. Located on the Gulf of Mexico, Port Manatee provides outstanding access for Debtors to export and import cement and aggregates to other non-American markets. ECC uses this port access to support the sales efforts of Debtors both directly and indirectly. Specifically, ECC sells 40% of cement imported through ECC directly to SRM, and sells all other imported cement to independent companies that do not directly compete with Debtors. ECC is a wholly owned subsidiary of SMI.

*Events Leading to the Chapter 11 Filing*

19. Debtors are leaders in the production, supply and distribution of ready-mix concrete, concrete block, cement and related supplies to commercial, municipal and residential contractors throughout Northeast Ohio and Southwest Florida. In fiscal year 2006, they provided more than $208 million worth of product to their customers.

20. During fiscal year 2007 and thereafter, as a result of the nationwide real estate crash and the consequential dramatic slow down in the construction industry, Debtors' operations, particularly in Southwest Florida (where real estate and new construction has steeply declined), suffered.[3] The decrease in sales negatively impacts Debtors' working capital availability and cash flows.

21. As of December 31, 2009, Debtors report a book value of total assets of $104,915,117, with cash of $672,698 and total "working capital"[4] assets of $15,854,211.

22. Similarly, as of December 31, 2009, Debtors owe their Secured Lenders[5] pursuant to that certain Amended and Restated Credit Agreement dated October 18, 2007 (i) $8,582,950

---

[3] For fiscal year ending April 30, 2007, Debtors had approximately $197,000,000 in sales. For fiscal year ending April 30, 2008, Debtors had approximately $144,000,000 in sales. For fiscal year ending April 30, 2009, Debtors had approximately $103,000,000 in sales. Debtors' fiscal year ends each April 30. The decrease in sales was significantly sharper for Debtors' Florida operations.

[4] "Working capital" assets are understood to be comprised of cash, accounts receivable, inventory and prepaid expenses.

[5] The "Secured Lenders" are KeyBank, National Association, Bank of America, N.A. and The Huntington National Bank.

5

CLE - 2647839.2

on account of a certain revolving line of credit (the "Revolving Line of Credit"); (ii) $19,125,245 on account of that certain "Term A" Loan (the "Term A Loan"); and (iii) $31,995,586 on account of that certain "Term B" Loan (the "Term B Loan" and together with the Revolving Line of Credit and the Term A Loan, the "Secured Loans"). Upon information and belief, a first priority security interest in substantially all the personal property assets of Debtors and a first priority mortgage interest in substantially all the real property of Debtors secures repayment of the Secured Loans.

23. Also, as of December 31, 2009, Debtors' financial statements report trade payables of $13,390,149.

24. On or about January 13, 2010, the Secured Lenders notified Debtors of their default of certain obligations pursuant to the Secured Loans.

25. Debtors present cash needs are at their seasonal peak due to the slowdown in construction activity in winter and the inability to create concrete at certain temperatures.

26. Debtors have sought financing from numerous possible lending services, including key customers, such as National Lime and Stone Company, among others. Unfortunately, these efforts have been unsuccessful.

27. Debtors' unsuccessful efforts to obtain refinancing resulted in their current liquidity crisis. This liquidity crisis necessitated Debtors' petition for relief under Chapter 11 of the Bankruptcy Code.

*The Sale Process*

28. In connection with an agreement with the Secured Lenders to permit Debtors' use of cash collateral, the Secured Lenders require Debtors to seek approval of sale and bidding procedures as described in greater detail herein (the "Bidding Procedures").

29. In compliance with the Bidding Procedures Debtors hereby seek authority to sell substantially all of the assets of Debtors to the bidder(s) that submit the bids that are deemed the highest and best bids (in each instance, a "<u>Successful Bidder</u>" and collectively, if applicable, "<u>Successful Bidders</u>").

30. Debtors also seek authority to assume and assign to one or more buyer(s) (each, a "<u>Buyer</u>") certain unexpired leases of nonresidential real property, other unexpired leases and executory contracts (among other things) (each, a "<u>Contract</u>") of Debtors at one or more closing (each, a "<u>Closing</u>") of one or more sale(s) (each, a "<u>Sale</u>") of all or a substantial portion of the assets of Debtors. It is the intent of Debtors to designate those Contracts that Debtors may assume and assign prior to the Sale Hearing (as defined herein) and complete that assumption and assignment, with the Bankruptcy Court's approval, at Closing. The Contracts will be designated on <u>Exhibit 1</u> to the Cure Claim Notice (as defined in the Sale Procedures Motion filed contemporaneously with this Sale Motion) no later than May 24, 2010 (prior to the Sale Hearing). Debtors intend to that any defaults under the Contracts will be cured prior to the Closing and the Buyer will assume any post-closing obligations under such Contracts.

31. Contemporaneously with the filing of this Sale Motion, Debtors are filing a *Motion for an Order (1) Approving Auction and Bidding Procedures and an Auction Date; (2) Scheduling Date and Time for Sale Hearing; (3) Approving the Form and Manner of Service of Notice of the Sale Hearing and Auction Pursuant to Bankruptcy Rules 2002, 6004 and 6006; (4) Approving the Form and Manner of Service of Notice of the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (5) Granting Related Relief,* (the "<u>Sale Procedures Motion</u>").

32. As more fully described in the Sale Procedures Motion and Bidding Procedures

(attached to the Sale Procedures Motion as Exhibit B), Debtors contemplate an auction to maximize the value of the Assets. Debtors will then compare such bids and determine the highest and best offer based on one or a combination of bids.

## Justification of the Sale Process

33. It is necessary to pursue a Sale expeditiously to guard against the erosion of Debtors' collateral base and add value to the Debtors' businesses. Unless Debtors can move quickly to sell their businesses as a going concern, it is likely that the Senior Lenders will not permit further use of cash collateral and one or more of Debtors' businesses will have to be shutdown altogether.

34. A prompt Sale to a Buyer or Buyers with the ability to invest working capital can preserve the values of the assets, potentially preserve the jobs of hundreds of employees and maintain the continuity of operations for the benefit of many parties, including, customers and creditors.

## RELIEF REQUESTED

35. By this Sale Motion, Debtors request authority pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Bankruptcy Rules to sell free and clear of liens, claims, interests and encumbrances substantially all of Debtors' Assets (other than certain "Non-Core Assets" made the subject of a separate motion for authority to sell such non-core assets filed contemporaneously herewith, the "Assets"), subject to higher or better offers, obtained in accordance with the Bidding Procedures proposed in the Sale Procedures Motion. Debtors seek entry of an Order (the "Sale Order"), a proposed form of which will be supplied by June 1, 2010 (prior to the Auction and the Sale Hearing), (a) authorizing and approving the Sale of the Assets to such party or parties that are determined by Debtors following the conclusion of the Auction to have submitted the highest and best offer(s) (each, a "Successful Bidder") free

8

and clear of liens, claims, interests and encumbrances; (b) approving the assumption and assignment of the Contracts in connection therewith; and (c) granting related relief.

## APPLICABLE LAW AND AUTHORITY

**I. THE SALE OF ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, INTERESTS AND ENCUMBRANCES IS WARRANTED.**

**A. The Sale of the Assets is within the Sound Business Judgment of Debtors.**

36. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Debtors respectfully submit that ample authority exists for the approval of the proposed sale of the Assets pursuant to section 363 of the Bankruptcy Code with all possible swiftness.

37. In determining whether to authorize such use, sale or lease of property outside the ordinary course of business and outside of any chapter 11 plan pursuant to section 363(b), Debtors must show that a sound business purpose justifies such actions. In fact, the Sixth Circuit has concluded that "a bankruptcy court can authorize a sale of a chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action" prior to confirmation of a plan of reorganization. *See Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 389-90 (6th Cir. 1986); *see also In re Lionel Corp.* 722 F.2d 1063, 1070 (2d Cir. 1983). The issue directly before the *Lionel* court was "to what extent chapter 11 permits a bankruptcy judge to authorize the sale of an important asset of the bankrupt's estate, out of the ordinary course of business and prior to acceptance and outside of any plan of reorganization." *In re Lionel Corp.*, 722 F.2d at 1066.

38. The *Lionel* test requires a debtor to establish, as a threshold matter, a "sound business reason" justifying the pre-confirmation sale of assets. The *Lionel* court held that, when addressing a motion pursuant to Bankruptcy Code section 363(b), a bankruptcy judge should

9

CLE - 2647839.2

10-60702-rk    Doc 241    FILED 04/05/10    ENTERED 04/05/10 16:34:37    Page 9 of 18

consider all salient factors and the business justifications for a debtor to sell assets pursuant to Bankruptcy Code section 363(b). *Id.* at 1071.

39. To demonstrate a sound business purpose warranting a sale, courts within the Sixth Circuit and in other jurisdictions have developed a four-part test requiring a debtor to demonstrate: (1) a sound business reason; (2) accurate and reasonable notice; (3) an adequate price; and (4) good faith. *See In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994); *In re Titusville Country Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (sale of substantially all of the assets was justified where the debtor could show a sound business reason, accurate and reasonable notice, adequate price and good faith); *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

40. Debtors submit that there is ample justification for the proposed sale of the Assets to each Successful Bidder pursuant to Bankruptcy Code sections 105, 363 and 365.

41. Debtors do not presently have requisite funding nor are the Senior Lenders willing to provide the requisite funding to invest in Debtors' working capital. As such, Debtors' Assets risk being eroded by continuing operations. Debtors' ability to use cash collateral to conduct on-going operations is contingent upon, among other things, pursuing a prompt sale of its assets pursuant to section 363 of the Bankruptcy Code. Debtors have determined that a Sale pursuant to section 363 to a purchaser with adequate resources to invest in working capital is likely to prevent erosion of Debtors' Assets and may maximize the value of Debtors' estate for the benefit of its creditors, customers and employees.

42. A liquidation would have a materially adverse impact upon Debtors, their estates, employees, customers and their creditors.

43. Additionally, a Sale may be the only alternative to protect the jobs of hundreds of employees and the customers that contracted with Debtors for product. As a result, a Sale is justified. *See In re Trans World Airlines, Inc.,* 322 F.3d 283 (3d Cir. 2003) (affirming the bankruptcy court's sale of substantially all of the debtor's assets, considering the strong likelihood of piecemeal liquidation should the sale not occur).

44. Finally, the Sale of the Assets is subject to a market check through the solicitation of competing bids through the court-supervised auction process. This process is designed to ensure that Debtors obtain a fair and reasonable price for the Assets.

**B.      Debtors Intend to Negotiate a Sale at Arm's Length and in Good Faith.**

45. Debtors intend to negotiate any Sale transactions at arm's length, without collusion and in good faith within the meaning of Bankruptcy Code section 363(m). Debtors request that the Court determine that the entire Sale process was conducted in good faith within the meaning of Bankruptcy Code section 363(m) and that Debtors and any Successful Bidder(s) are entitled to the protections of Bankruptcy Code section 363(m). *See, e.g., In re Apex Oil Co.,* 92 B.R. 847, 873-74 (Bankr. E.D. Mo. 1988).

46. Based upon the foregoing, Debtors submit that a sale of its Assets represents a sound exercise of Debtors' business judgment, is in the best interest of Debtors' estates and should be approved in all respects.

### C. A Sale of the Assets Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.

47. Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims, encumbrances and interests in such property if,

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793-96 (Bankr. D. Del. 2002) (section 363(f) is written in the disjunctive; the court approved the sale "free and clear" where only one of the five subsections of section 363(f) were met).

48. Any Sale contemplated by this Motion satisfies these requirements.

### D. Prior and Anticipated Marketing

49. Preceding the Petition Date, Debtors' investment banker, Western Reserve Partners, LLC ("WRP"), have been pursuing a refinancing, restructuring or sale of some or all of the Assets.

50. More importantly, Debtors have retained WRP to market Debtors' businesses to potential buyers that WRP has identified as likely purchasers. WRP was engaged by Debtors for more than one year prepetition and therefore has a strong understanding of Debtors' businesses and Assets.

51. WRP's communications and marketing have thus far reached more than 100 interested parties on multiple continents and such efforts have resulted in conversations with financial, strategic and hybrid purchasers for the Assets, all of which WRP will use to maximize the value of the Assets.

52. WRP will aggressively market the Assets to potential bidders, seeking to maximize the value of the Assets for Debtors' estates.

## II. THE COURT SHOULD PERMIT DEBTORS TO ASSUME AND ASSIGN CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO ANY SUCCESSFUL BIDDER.

53. Pursuant to Bankruptcy Code section 365(a), (b) and (f), but conditioned on the closing of a related Sale, Debtors request entry of an order approving the assumption by Debtors and the assignment by Debtors to any Successful Bidder(s) of the Contracts.

54. Sections 365(a) and 1107(a) of the Bankruptcy Code authorize a debtor-in-possession to assume an executory contract subject to the bankruptcy court's approval. Section 365(a) of the Bankruptcy Code provides,

> [e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

55. A debtor's decision to assume or reject an unexpired lease or executory contract must only satisfy the business judgment rule and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See In re Food Barn Stores, Inc.,* 107 F.3d 558, 567 n. 16 (8th Cir. 1996). *See also In re Mkt. Square, Inc.,* 978 F.2d 116, 121 (3d Cir. 1992) (the resolution of whether to authorize assumption or rejection of a lease is matter of business judgment by the debtor); *In re Phar-Mor, Inc. v. Strauss Bldg. Assoc.,* 204 B.R. 948,

13

CLE - 2647839.2

952 (N.D. Ohio 1997); *In re Structurelite Plastics Corp.,* 86 B.R. 922, 925 (Bankr. S.D. Ohio 1988).

56. Section 365(b)(1) of the Bankruptcy Code requires a debtor-in-possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed. Section 365(b)(1) provides,

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

57. Additionally and prior to assignment of an executory contract, a debtor-in-possession must comply with section 365(f)(2) that provides,

> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

58. Debtors will seek the cure of any defaults under the Contracts at or before Closing satisfying sections 365(b)(1)(A) and (B) of the Bankruptcy Code.

14

59. Adequate assurance of future performance depends upon the facts and circumstances of each case but should be given practical, pragmatic construction. *In re Tama Beef Packing, Inc.*, 277 B.R. 407 (Bankr. N.D Iowa 2002) (holding that "[i]n making the determination of 'adequate assurance', the Court must give a practical pragmatic construction of each case"); *See also In re Carlisle Homes,* 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). Evidence of adequate assurance of future performance can be established based upon the financial health and experience of the assignee in the type of enterprise and property involved. *In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986); *In re Alipat, Inc.*, 36 B.R. 274, 278 (Bankr. E.D. Mo. 1984) (holding that a business assigned to an experienced operator that will operate the business in substantially the same way will provide adequate assurance).

60. Bankruptcy Code Section 365(k) provides:

> Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

11 U.S.C. § 365(k).

61. Based upon the foregoing, Debtors' assumption and assignment of the Contracts subject to the Sale complies with Bankruptcy Code section 365(k), and thus, upon the approval of such assumption and assignment, and pursuant to Bankruptcy Code section 365(k), after payment of the cure amount, Debtors should be relieved of all liability on the assumed and assigned Contracts.

62. Prior to the Sale Hearing, Debtors will serve all parties to their Contracts with a notice (the "Cure Claim Notice") that contains the following information: (a) notice of Debtors'

intent to assume and assign certain of the Contracts to any Successful Bidder(s);; (b) a list of the Contracts and the monetary defaults (if any) related to each Contract that are required to be cured pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"); and (c) the procedures for filing objections to the assumption and assignment of the Contracts, including objections to the proposed Cure Amounts. The form of Cure Claim Notice shall be subject to prior Court approval and is attached as Exhibit D to the Sale Procedures Motion.

63. Prior to the Sale Hearing, the Buyer shall designate the Contracts that may be assumed and assigned to each Successful Bidder at Closing. At the Sale Hearing, Debtors will establish, as previously addressed, adequate assurance of future performance under the Contracts. The Court's findings at the Sale Hearing as to the Cure Amounts, if any, arising from the Contracts pursuant to section 365(b)(1) of the Bankruptcy Code shall be final and binding on the parties to all Contracts, and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment (to the extent any Contract contains an audit clause), except as otherwise provided by the Sale Order.

## VI. DEBTORS REQUEST THAT THE COURT WAIVE THE 14-DAY STAY UNDER BANKRUPTCY RULE 6004(h).

64. Pursuant to Bankruptcy Rules 6004(h) and 6006(d), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code and the assumption and assignment of executory contracts pursuant to section 365 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h) and 6006(d). The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to Fed R. Bankr. P. 6004(h) and 6006(d).

65. Although Bankruptcy Rule 6004(h) and 6006(d) and the Advisory Committee

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, *Collier on Bankruptcy* suggests that the fourteen-day period should be eliminated to allow the sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 6004.09. Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and overruled, and the objecting party informs the Court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

66. As previously set forth, time is of the essence with respect to the contemplated transaction. As such, Debtors have every expectation that it will choose to close this sale as soon as possible after all closing conditions have been met or waived. Accordingly, Debtors respectfully request that the Court eliminate the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

67. Notice of this Motion has been provided to (i) the office of the United States Trustee for Region IX; (ii) each of Debtors' secured lenders (KeyBank, National Association, The Huntington National Bank, and Bank of America, N.A.); (iii) counsel for the Agent for Debtors' secured lenders; (iv) the additional creditors identified on Debtors' consolidated list of thirty (30) largest unsecured creditors; (v) counsel for the Committee; (vi) counsel for Naples Funding Group, L.C.; (vii) other known claimants having liens or security interests in property of Debtors; (viii) the Internal Revenue Service; (ix) the United States Department of Justice; (x) all other parties that have filed notices requesting service in these Cases; and (xi) any other parties required to be provided notice of this Motion pursuant to the case management procedures in place in these Cases. In light of the nature of the relief requested, Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, Debtors respectfully request entry of an order substantially in the form that will be submitted prior to the Sale Hearing (a) authorizing the sale of substantially all of the Debtors' Assets, free and clear of liens, claims, interests and encumbrances, subject to higher or better offers, pursuant to Bankruptcy Code section 363 and 365; (b) approving the assumption and assignment of the Contracts and determining and adjudicating Cure Amounts with respect to such Contracts; (c) waiving the fourteen-day stay period provided by Bankruptcy Rule 6004(h) and (d) granting such other and further relief to which Debtors may be justly entitled.

April 5, 2010  
Cleveland, Ohio

Respectfully submitted,

*/s/ Lawrence E. Oscar*
Lawrence E. Oscar (0022696)
Daniel A. DeMarco (0038920)
Christopher W. Peer (0076257)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone: (216) 621-0150
Facsimile: (216) 241-2824
E-mail: leoscar@hahnlaw.com
 dademarco@hahnlaw.com
 cpeer@hahnlaw.com

*Counsel to Debtors*

CLE - 2647839.2