Schedule 3.11

Ownership Interests in Transferred Partnerships

Jones Loop Partnership:  Schwab Industries, Inc. owns a 25% partnership interest in Jones Loop Partnership.  See attached for all other partnership ownership interests.

Allen Concrete Pumping:  Schwab Ready-Mix, Inc. owns a 50% partnership interest in Allen Concrete Pumping.  Allen Concrete and Masonry, Inc., a Florida corporation, owns the other 50% partnership interest.

CLE - 2703959.2

P02

JONES LOOP PARTNERSHIP

WILDER RECEIVABLE
SCHEDULED QUARTERLY RECEIVABLE
2/20/2007

| | | |
|---|---|---|
| 1 | DENNIS J. FULLENKAMP | 9.250000% |
| 124 | ROBERT & MARY ACKERT, CO-TTEES | 1.000000% |
| 6 | PAUL A. & PAULINE A. BEAUDRY | 1.250000% |
| 251 | BRANCH INVESTMENTS, INC. | 13.500000% |
| 99 | Charlene Comfort | 3.000000% |
| 175 | Samuel L. Coulter | 0.333333% |
| 240 | ANNE DOHERTY | 0.500000% |
| 11 | John C. Doherty | 0.500000% |
| 118 | Dwain Hicks | 10.000000% |
| 176 | Ronald A. Justus | 0.333333% |
| 208 | JUN JA KIM | 3.000000% |
| 191 | Mr. Michael Medel | 1.000000% |
| 112 | Thomas G. Miller | 20.000000% |
| 174 | Timothy G. Phillips | 0.333334% |
| 115 | Schwab Industries ATT: Jeff Raper | 25.000000% |
| 73 | David A. Schwab | 5.000000% |
| 190 | RONALD STAHNKE DDS, PROFIT SHARI | 1.000000% |
| 98 | Steven Taller | 3.000000% |
| 85 | William & Denise Webb | 2.000000% |
| | | 100.000000% |

## Schedule 3.13(a)

## Liabilities of Transferred Partnerships

<u>Jones Loop Partnership</u>:   A $10,000 invoice for pro rata share of partnership legal expenses.

<u>Allen Concrete Pumping</u>:  Liabilities limited to ordinary course accounts payable funded through working capital generated by the partnership.

CLE - 2703979.2

<u>Schedule 3.13(b)</u>

<u>Business and Operations of Transferred Partnerships</u>

<u>Jones Loop Partnership</u>:  Jones Loop Partnership's sole asset is approximately 174 acres of real property in Punta Gorda, Florida.  Business activities and operations of Jones Loop Partnership are limited to ownership of such real property.

<u>Allen Concrete Pumping</u>:  Allen Concrete Pumping currently conducts business as a concrete pumping operation.  Allen Concrete Pumping is a customer of Schwab Ready-Mix, Inc. and supplies concrete to concrete subcontractors.

CLE - 2703975.2

**Schwab Industries, Inc.**
**Cash Flow Forecast Summary**
(000's omitted)

| | Week ending | | 9 05/01/10 | 10 05/08/10 | 11 05/15/10 | 12 05/22/10 | 13 05/29/10 | Totals |
|---|---|---|---|---|---|---|---|---|
| | | | | | Key DIF Post-Petition | | | |
| **Operating Cash Receipts:** | | | | | | | | |
| Collections on Pre-Petition AR after line paid | | | 72 | 72 | 72 | 72 | 72 | 360 |
| Collections on Post-Petition AR | | | 780 | 736 | 1,029 | 660 | 1,247 | 4,452 |
| Release of Collection on Pre-Petition AR | | | - | - | - | - | - | - |
| Net Farm Receipts | | | 350 | 230 | 230 | 165 | | 975 |
| **Total Cash Receipts** | | | 1,202 | 1,038 | 1,331 | 897 | 1,319 | 5,787 |
| **Disbursements:** | | | | | | | | |
| **Payroll and Related:** | | | | | | | | |
| Misc City Taxes, Garnishments, Child Support etc | | | 3 | 3 | 17 | 20 | 6 | 49 |
| Hourly Payroll - Variable based on sales | 13% | | 203 | 130 | 240 | 240 | 288 | 1,101 |
| Salary Payroll | Fixed | | 145 | 80 | 80 | 80 | 161 | 546 |
| Payroll Reductions | | | (30) | (10) | (10) | (10) | (30) | (90) |
| Payroll Taxes & 401k (ACH) | 8.5% | | 30 | 18 | 27 | 27 | 65 | 167 |
| State and Federal Unemployment Taxes | | | 124 | - | - | - | 90 | 214 |
| Health & Welfare (ACH) | | | 100 | 100 | 100 | 85 | 85 | 470 |
| Health Care - Express Scrips | | | 60 | 60 | 60 | 30 | 60 | 270 |
| Health & Welfare Reduction | | | (22) | (22) | (22) | (22) | (22) | (110) |
| TPA Admin Fees | | | 26 | - | - | 25 | | 51 |
| Himak - Stop Loss Premium | | | 35 | - | 35 | - | - | 70 |
| Workers Comp (ACH - Ohio) | | | 14 | 14 | 14 | 14 | 14 | 70 |
| Workers Comp (Ohio Adm and Prior Claims) | Feb & Aug | | - | 53 | - | - | 45 | 98 |
| Workers Comp (Florida-non state fund) | | | 10 | - | - | - | - | 10 |
| Workers Comp (Eastern) | | | 1 | - | - | - | - | 1 |
| Non Qualified Non Family Pension (ACH) | | | 4 | - | - | - | 4 | 8 |
| Non-Qualified Pension (ACH) | | | - | - | - | - | - | - |
| Family 945 | | | - | - | - | - | - | - |
| **Total Payroll & Related** | | | 703 | 426 | 541 | 464 | 791 | 2,925 |
| **Operating Disbursements:** | | | | | | | | |
| Total Purchases, Freight and Fuel | 54% | | 1,008 | 1,124 | 1,074 | 1,074 | 215 | 4,495 |
| Repairs & Maint - Trucks | | | 16 | 20 | 20 | 20 | 20 | 96 |
| Repairs & Maint - Other | | | 12 | 15 | 15 | 15 | 15 | 72 |
| Utilities | | | 19 | 20 | 20 | 20 | 20 | 99 |
| Corporate Insurance | | | 400 | - | - | - | 110 | 510 |
| Florida and Ohio Sales Tax | | | 255 | - | - | 280 | 297 | 832 |
| Rents | | | - | 33 | - | - | - | 33 |
| Travel, Meals & Ent. | | | 5 | 7 | 7 | 7 | 7 | 33 |
| Projected operating cost reductions | | | - | - | - | - | - | - |
| Convert Florida Drivers to PT & Eliminate Benefits | | | (7) | (7) | (7) | (7) | (7) | (35) |
| Bank Fees | | | 4 | - | 4 | - | 4 | 12 |
| Ohio CAT Tax | | | 36 | - | - | - | - | 36 |
| Ordinary Course Professional | | | 5 | 5 | 5 | 5 | 5 | 25 |
| Port Lease | | | - | - | - | - | - | - |
| Other | | | 20 | 20 | 20 | 20 | 20 | 100 |
| **Total Operating Disbursements** | | | 1,773 | 1,237 | 1,158 | 1,434 | 706 | 6,308 |
| **Net Operating Cash Flow** | | | (1,274) | (625) | (368) | (1,001) | (178) | (3,446) |

Schwab Cash Fcst - Ch11 Use of Cash Collateral R3-Stalking Horse- bank DIP.xls 5/2/2010 9:50 PM

(000's omitted)

|  | 01/31/10 | 9 05/01/10 For March Fees | 10 05/08/10 | 11 05/15/10 For April Fees | 12 05/22/10 | 13 05/29/10 For May Fees | Totals |
|---|---|---|---|---|---|---|---|
| **Week ending** |  |  |  |  |  |  |  |
|  |  |  |  |  | **Key DIP Post-Petition** |  |  |
| **Professional Fees:** |  |  |  |  |  |  |  |
| Bruner-Cox LLP |  | - | 20 | 25 | - | 20 | 65 |
| Hahn Loeser Parks |  | - | 97 | 91 | - | 125 | 313 |
| ParkInd |  | 162 | - | 140 | - | 120 | 422 |
| Brouse McDowell |  | - | 239 | 75 | - | - | 314 |
| Committee & Financial Advisor |  | - | 100 | 100 | - | 242 | 442 |
| Freehorn & Peters LLP |  | - | - | - | - | - | - |
| Frost Brown Todd, LLC |  | - | - | - | - | - | - |
| Conway Mackenzie, Inc. |  | - | - | - | - | - | - |
| Western Reserve |  | - | 17 | 20 | - | 20 | 57 |
| Richard Hiring |  | - | - | 30 | - | 10 | 40 |
| Appraisers and court reporters |  | - | 22 | 25 | - | 10 | 57 |
| Garden City Group - Noticing Agent |  | - | - | 20 | - | 20 | 40 |
| Bank Counsel and Financial Advisor |  | - | - | - | - | - | - |
| US Trustee |  | - | - | - | - | 13 | 13 |
| Professional Fee Escrow |  | - | - | - | - | - | - |
| Chartwell -RE Auction, Mkting, Phase 1 Exp |  | - | - | 25 | - | - | 25 |
| Chartwell Break-up Fee ($15k per property) |  | - | - | 180 | - | - | 180 |
| Cincinnati Expense Reimbursement |  | - | - | - | - | 50 | 50 |
| Professional fee 20% holdbacks plus amts in excess of budget for March |  | - | - | - | - | 786 | 786 |
| **Total Professional Fees** |  | 162 | 495 | 731 | - | 1,416 | 2,804 |
| Proceeds from Cash Surrender of Life Ins |  |  |  |  | 100 |  |  |
| Expense possible timing deferral |  |  |  |  | (831) |  |  |
| Proceeds from sale of non-core assets |  | 375 | 275 |  |  | 1,325 | 1,975 |
| **Net Weekly Cash Flow before debt service** |  | (1,061) | (845) | (368) | (901) | (1,100) | (4,275) |
| **Debt Service:** |  |  |  |  |  |  |  |
| **Key** |  |  |  |  |  |  |  |
| Term A & B Principal ($1,665k qtly) | 01/31/10 |  |  |  |  |  |  |
| Funding Fee |  | - | 50 | - | - | - | 50 |
| Post Petition Interest |  |  |  |  |  |  |  |
| Pre-Petition LOC Interest |  |  |  |  |  |  |  |
| Swap Fees | pd qtly | 77 |  |  |  |  | 77 |
| EFO Financial Group |  |  |  |  |  |  |  |
| Application Fee |  |  |  |  |  |  |  |
| Legal Fee |  |  |  |  |  |  |  |
| Interest Reserve Draw Down | 12% | 35 |  |  |  |  | 35 |
| Interest Earned |  |  |  |  |  |  |  |
| Commitment Fee | 2% |  |  |  |  |  |  |
| Unused Line Fee | 0.35% |  |  |  |  |  |  |
| Loan Servicing Fee | 1.1% |  |  |  |  |  |  |
| Title Insurance |  |  |  |  |  |  |  |
| Interest Reserve |  | (35) |  |  |  |  | (35) |
| Exit fees | 2.0% |  |  |  |  |  |  |
| Emergency stand by fees | 2.0% |  |  |  |  |  |  |
| Lender due and legal diligence expenses |  |  |  |  |  |  |  |
| Other Bank Fees |  |  |  |  |  |  |  |
| **Total Debt Service** |  | 77 | 50 | - | - | - | 127 |
| **Net Weekly Cash Flow** |  | (1,138) | (895) | (368) | (901) | (1,100) | (4,402) |
| **Beginning Cash** |  | 1,310 | 172 | 1,277 | 909 | 8 | 1,310 |
| **EFO - Advances** |  |  |  |  |  | 8 | 1,310 |

(000's omitted)

| | Week ending | Key DIP Post-Petition | | | | | |
| | | 9 05/01/10 | 10 05/08/10 | 11 05/15/10 | 12 05/22/10 | 13 05/29/10 | Totals |
|---|---|---|---|---|---|---|---|
| Key—Advances | | | 2,000 | | | | 2,000 |
| Ending Cash | | 172 | 1,277 | 909 | 8 | (1,092) | (1,092) |
| Amounts to be assumed/paid by buyer | | | | | | 750 | 750 |
| | | | | | | | (342) |

| | Week ending | At Petition | Key DIF Post-Petition | | | | | Totals |
|---|---|---|---|---|---|---|---|---|
| | | | 9 05/01/10 | 10 05/08/10 | 11 05/15/10 | 12 05/22/10 | 13 05/29/10 | |
| **Cash Collateral Summary** | | | | | | | | |
| Accounts Receivable - Pre-Petition | | 8,200 | 2,947 | 2,875 | 2,803 | 2,731 | 2,659 | |
| Accounts Receivable - Post-Petition | | | 11,864 | 13,027 | 13,898 | 15,137 | 15,789 | |
| Inventory - Pre-Petition | | 3,389 | | | | | | |
| Inventory - Post-Petition | | | 2,855 | 2,953 | 3,002 | 3,050 | 3,099 | |
| Surplus Non Core Asset Sales-cumulative | | | (375) | (650) | (650) | (650) | (1,975) | |
| Bank collateral in life insurance | | | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | |
| **Total Cash Collateral** | | 11,589 | 15,291 | 16,205 | 17,052 | 18,268 | 17,572 | |
| Cash Balance | | 0 | 172 | 1,277 | 909 | 8 | (1,092) | |
| **Cash Collateral Plus Cash** | | 11,589 | 15,463 | 17,482 | 17,961 | 18,276 | 16,480 | |
| **Cumulative Increase in Cash Collateral** | | | | | | | | |
| Without unpaid interest | | | 3,874 | 5,894 | 6,373 | 6,687 | 4,891 | |
| With unpaid interest | | | 2,880 | 4,899 | 5,378 | 5,693 | 3,897 | |
| | | | | | | | | |
| Beginning EFO Loan Balance | | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | - |
| Advances - Working Capital | | | - | - | - | - | - | 3,500 |
| Ending EFO Loan Balance | | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| | | | | | | | | |
| EFO Availability | | | 14,808 | 14,808 | 14,808 | 14,808 | 14,808 | |
| | | | | | | | | |
| Balance in Interest Reserve | | | 350 | 350 | 350 | 350 | 350 | |
| Maximum EFO Commitment | | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | |
| Unused portion of EFO facility | | | - | - | - | - | - | |
| **EFO Interest Reserve** | | | | | | | | |
| Beginning Interest Reserve Balance | | | 385 | 350 | 350 | 350 | 350 | - |
| Increase in Interest Reserve | | | (35) | - | - | - | - | 175 |
| Ending Interest Reserve Balance | | | 350 | 350 | 350 | 350 | 350 | 175 |
| | | | | | | | | |
| **Post Petition Borrowing Base** | | | | | | | | |
| **Accounts Receivable: Post-Petition** | | | | | | | | |
| Beginning balance | | | 11,341 | 11,864 | 13,027 | 13,898 | 15,137 | 11,341 |
| Billings | | | | | | | | |
| MSC | 50% | | 561 | 1,317 | 1,317 | 1,317 | 1,317 | 13,051 |
| QBS | 10% | | 107 | 122 | 122 | 122 | 122 | 1,174 |
| TCC | 50% | | 106 | 150 | 150 | 150 | 150 | 1,592 |
| SRM | 25% | | 210 | 253 | 253 | 253 | 253 | 2,421 |
| ECC | | | 46 | 57 | 57 | 57 | 57 | 533 |
| Total Billings (Pink = Actual) | 85% | | 1,029 | 1,899 | 1,899 | 1,899 | 1,899 | 18,771 |
| Cash receipts-normal 9 weeks | 95% | | (506) | (736) | (1,029) | (660) | (1,247) | (10,969) |
| Ending A/R Gross Balance | | | 11,864 | 13,027 | 13,898 | 15,137 | 15,789 | 19,143 |
| Beginning Ineligible AR | | | - | - | 10 | 20 | 30 | |
| Change in Ineligible AR | | | - | 10 | 10 | 10 | 10 | |
| Ending Ineligible AR | | | - | 10 | 20 | 30 | 40 | |
| Eligible AR Collateral | | | 11,864 | 13,017 | 13,878 | 15,107 | 15,749 | |
| Advance Rate | | | 80% | 80% | 80% | 80% | 80% | |

(000's omitted)

| | Week ending | | | Key DIP Post-Petition | | | | Totals |
|---|---|---|---|---|---|---|---|---|
| | | 9 | 10 | 11 | 12 | 13 | | |
| | | 05/01/10 | 05/08/10 | 05/15/10 | 05/22/10 | 05/29/10 | | |
| AR Borrowing Base | | 9,491 | 10,414 | 11,102 | 12,085 | 12,599 | | |

(000's omitted)

| | Week ending | | 9 05/01/10 | 10 05/08/10 | 11 05/15/10 | 12 05/22/10 | 13 05/29/10 | Totals |
|---|---|---|---|---|---|---|---|---|
| | | | | | Key DIP Post-Petition | | | |
| **Inventory: Post-Petition** | | | | | | | | |
| Beginning balance | | | 2,752 | 2,855 | 2,953 | 3,002 | 3,050 | |
| Purchases | | | | | | | | |
| MSC | 53.3% | | 359 | 762 | 742 | 742 | 742 | |
| QBS | 47.4% | | 61 | 68 | 58 | 58 | 58 | |
| TCC | 49.7% | | 63 | 85 | 75 | 75 | 75 | |
| SRM | 58.5% | | 143 | 168 | 158 | 158 | 158 | |
| ECC | 73.0% | | 33 | 42 | 42 | 42 | 42 | |
| Total Purchases | | | 658 | 1,124 | 1,074 | 1,074 | 1,074 | 8,200 |
| COGS | | | (556) | (1,026) | (1,026) | (1,026) | (1,026) | (720) |
| Ending Inventory Balance | | | 2,855 | 2,953 | 3,002 | 3,050 | 3,099 | |
| Eligible Inventory Collateral | | | 2,855 | 2,953 | 3,002 | 3,050 | 3,099 | |
| Less Ineligibles | | | | | | | | |
| Advance Rate | | | 50% | 50% | 50% | 50% | 50% | |
| Inventory Borrowing Base | | | 1,427 | 1,477 | 1,501 | 1,525 | 1,549 | |
| | | | | | | | | |
| **Total Borrowing Base: Post Petition** | | | 10,918 | 11,890 | 12,603 | 13,611 | 14,148 | |
| | | | | | | | | |
| **Maximum Commitment** | | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | |
| | | | | | | | | |
| **BORROWING BASE: Pre-Petition** | | | | | | | | |
| **Accounts Receivable: Pre-Petition** | | | | | | | | |
| Beginning balance – Not Trued Up | 98% | | 3,369 | 2,947 | 2,875 | 2,803 | 2,731 | |
| Billings | | | | | | | | |
| Cash receipts-normal 7 weeks | | | (72) | (72) | (72) | (72) | (72) | (350) |
| National adjustment | | | | | | | | |
| Orange Participation & potato adj | | | (350) | | | | | (5,901) |
| Cash Receipts-Seasonal catch up | | | | | | | | |
| Total Cash Receipts | | | (422) | (72) | (72) | (72) | (72) | 7,130 |
| Other | | | | | | | | |
| Ending A/R Gross Balance | | | 2,947 | 2,875 | 2,803 | 2,731 | 2,659 | |
| Less Ineligibles: | | | | | | | | |
| > 90 Days | -10% | | 2,947 | 2,875 | 2,803 | 2,731 | 2,659 | |
| Due from Affiliates | | | | | | | | |
| Increase in Eligibles | | | | | | | | |
| Total Ineligibles | | | | | | | | |
| Eligible AR Collateral | | | 2,947 | 2,875 | 2,803 | 2,731 | 2,659 | |
| Advance Rate | | | 80% | 80% | 80% | 80% | 80% | |
| **A/R Borrowing Base** | | | | | | | | |
| | | | | | | | | |
| Term A & B Notes - Beginning Balance | | | 51,569 | 52,021 | 52,021 | 52,021 | 52,021 | |
| Additions (Interest) | | | 451 | | | | | |
| Scheduled Payments | | | | | | | | |
| Proceeds from Asset Sales | | | | | | | | |
| **Term A & B Notes - Ending Balance** | | | 52,021 | 52,021 | 52,021 | 52,021 | 52,021 | |
| | | | | | | | | |
| Pre-Petition LOC - Beginning Balance | | | 5,500 | 5,548 | 5,548 | 5,548 | 5,548 | |
| Additions (Interest) | | | 48 | | | | | |
| Reductions (pay downs) | | | | | | | | |
| **Pre-Petition LOC - Ending Balance** | | | 5,548 | 5,548 | 5,548 | 5,548 | 5,548 | |
| | | | | | | | | |
| **Total Pre-Petition Bank Debt** | | | 57,568 | 57,568 | 57,568 | 57,568 | 57,568 | |

Interest

(000's omitted)

Preliminary, Draft

| | Week ending | | Key DIP Post-Petition | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 9 05/01/10 | 10 05/08/10 | 11 05/15/10 | 12 05/22/10 | 13 05/29/10 | Totals | |
| Term Interest | 10.500% | 451 | - | - | - | - | 3,214 | |
| Pre-Petition Prime Revolver | 10.500% | 48 | - | - | - | - | 343 | |
| **Total Interest** | | 499 | - | - | - | - | 3,556 | - |
| **Cumulative Interest** | | 994 | 994 | 994 | 994 | 994 | | |

**Assumptions**

Closing of Atlas sale 5-24-10 (Monday)

Payroll for Monday of week 14 added to week 13

Material purchased for week 13 reduced by 80%

Professional fees for April and May are added to this budget to show expenses incurred. Most or all of these fees will likely be paid post closing of sale

Assumes that if the non-core vehicles are purchased by a buyer of the core assets, Keybank will allow the Company to use such funds to pay budgeted expenses

Sales tax to be paid in June shown as 5-29 disbursement

Does not include some admin and priority claims including healthcare payments--amounts not yet determined

Does not include any expenses to be incurred after 5-29

Does not include creditor committee or other professional fees for April and May in excess of budget amounts

Schwab has use of the collection of pre-petition AR along with collection of post-petition AR. Schwab also has use of a $2mm DIP line

Sale of non-core assets take place in weeks 9, 13 and July with the proceeds being used for working capital

Interest is accrued on the term loans and pre-petition LOC but not paid

There is no estimate for Bank counsel or their financial advisor fees

Projected cost reductions were adjusted to agree with the projection model and updated circumstances

Sales, Purchases and Hourly payroll have been updated for current April run rates

Assumes no payments to EFO through-out the period

Assumes all payment due to the Port Facility can be deferred until September other than monthly rent

Collections are assumed at 95% of sales

David Schwab's compensation reduced by 30% and Donna and Jerry Schwab's unqualified pension is deferred until after the close.

Schwab Cash Fcst - Ch11 Use of Cash Collateral R3-Staking Horse- bank DIP.xls 5/2/2010 9:50 PM

## Schedule 6.6

## Required Consents

1.  The consent of all partners in Jones Loop Partnership (other than Schwab) to the sale, assignment or other transfer of all ownership interests in Jones Loop Partnership owned or otherwise held by Schwab or any other Seller to Buyer or its assignee, unless either (a) a Final Order of the Bankruptcy Court authorizing the sale, assignment or other transfer of this contract has been entered or (b) all of the following are true: (i) all partners in Jones Loop Partnership (other than Schwab) were provided timely notice of such sale, assignment or other transfer; (ii) a certificate of service filed with the Bankruptcy Court provides evidence of such service; (iii) no partner in Jones Loop Partnership has filed an objection to such sale, assignment or other transfer by a deadline established by a Final Order of the Bankruptcy Court (an "*Assignment Objection Deadline*") or any such objection has been overruled by the Bankruptcy Court; and (iv) the Assignment Objection Deadline has passed with respect to such sale, assignment or other transfer.

2.  The consent of all partners in Allen Concrete Pumping (other than SRM) to the sale, assignment or other transfer of all ownership interests in Allen Concrete Pumping owned or otherwise held by SRM or any other Seller to Buyer or its assignee unless either (a) a Final Order of the Bankruptcy Court authorizing the sale, assignment or other transfer of this contract has been entered or (b) all of the following are true: (i) all partners in Allen Concrete Pumping (other than SRM) were provided timely notice of such sale, assignment or other transfer; (ii) a certificate of service filed with the Bankruptcy Court provides evidence of such service; (iii) no partner in Allen Concrete Pumping has filed an objection to such sale, assignment or other transfer by the Assignment Objection Deadline or any such objection has been overruled by the Bankruptcy Court; and (iv) the Assignment Objection Deadline has passed with respect to such sale, assignment or other transfer..

3.  The consent of Koskosing Construction, Co. ("*KCC*") to the sale, assignment or other transfer of the real property located at 1550 Timken Road, Wooster, Ohio 44691, together with all improvements located thereon, to Buyer or its assignee, which consent shall also include an express waiver of any right of first refusal, right of purchase or other similar rights held by KCC in connection with such sale, assignment or other transfer unless either (a) a Final Order of the Bankruptcy Court authorizing the sale, assignment or other transfer of this real property has been entered or (b) all of the following are true: (i) KCC was provided timely notice of such sale, assignment or other transfer; (ii) a certificate of service filed with the Bankruptcy Court provides evidence of such service; (iii) KCC has not filed an objection to such sale, assignment or other transfer by the Assignment Objection Deadline or any such objection has been overruled by the Bankruptcy Court; and (iv) the Assignment Objection Deadline has passed with respect to such sale, assignment or other transfer..

4.  The consent of all Governmental Bodies that are parties to Contracts identified on Schedule 2.1(e) (or in any amendment to Schedule 2.1(e) made on or before May 20, 2010), unless, with respect to a particular Contract, unless either (a) a Final Order of the

Bankruptcy Court authorizing the sale, assignment or other transfer of such particular Contract has been entered or (b) all of the following are true: (i) the Governmental Body was provided timely notice of such sale, assignment or other transfer; (ii) a certificate of service filed with the Bankruptcy Court provides evidence of such service; (iii) the Governmental Body has not filed an objection to such sale, assignment or other transfer by the Assignment Objection Deadline or any such objection has been overruled by the Bankruptcy Court; and (iv) the Assignment Objection Deadline has passed with respect to such sale, assignment or other transfer.

## Schedule 8.3

### Form of Proposed Bid Procedures Order

See attached.

CLE - 2707344.2

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### AT CANTON

```
------------------------------------------------------- x
In re:                                                  :    Chapter 11
                                                        :
SCHWAB INDUSTRIES, INC., et al.,[1]                     :    Case No. 10-60702
                                                        :    (Jointly Administered)
                            Debtors.                    :
                                                        :    Judge Russ Kendig
------------------------------------------------------- x
```

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525), Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

CLE - 2707828.1

**ORDER APPROVING MOTION FOR A REVISED BIDDING PROCEDURES ORDER APPROVING (1) EXECUTED STALKING HORSE ASSET PURCHASE AGREEMENT; (2) PROPOSED BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (3) REVISED BIDDING PROCEDURES; (4) THE FORM AND MANNER OF SERVICE OF NOTICE OF THE SALE HEARING AND AUCTION; AND (5) THE FORM AND MANNER OF SERVICE OF NOTICE OF THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH REVISES ORDER (1) APPROVING AUCTION AND BIDDING PROCEDURES AND AN AUCTION DATE; (2) SCHEDULING DATE AND TIME FOR SALE HEARING; (3) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE OF THE SALE HEARING AND AUCTION PURSUANT TO BANKRUPTCY RULES 2002, 6004 AND 6006; (4) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE OF THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (5) GRANTING RELATED RELIEF**

This matter having come before the Court on the Motion for a Revised Bidding Procedures Order Approving (1) Executed Stalking Horse Asset Purchase Agreement; (2) Proposed Break-Up Fee and Expense Reimbursement; (3) Revised Bidding Procedures; (4) the Form and Manner of Service of Notice of the Sale Hearing and Auction; and (5) the Form and Manner of Service of Notice of the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Revised Sale Procedures Motion") filed on May 3, 2010 by Schwab Industries, Inc ("SII"), Medina Cartage Co. ("MCC"), Medina Supply Company ("MSC"), Quality Block & Supply, Inc. ("QBS"), O.I.S. Tire, Inc. ("OIS"), Twin Cities Concrete Company ("TCC"), Schwab Ready-Mix, Inc. ("SRM"), Schwab Materials, Inc. ("SMI") and Eastern Cement Corp. ("ECC", and together with SII, MCC, MSC, QBS, OIS, TCC, SRM and SMI, the "Debtors"), seeking entry of an order (a) establishing the bidding and auction procedures (the "Bidding Procedures") that will govern the sale of substantially all of the assets of Debtors (the "Assets"); (b) scheduling the hearing (the "Sale Hearing") to approve the sale of the Assets (the "Sale"); (c) approving the proposed form of service of notice (the "Sale Notice") for the Sale; and (d) approving the form of service of notice related to the assumption and assignment of unexpired leases and executory contracts (the "Cure Claim Notice"). The Revised Sale

Procedures Motion sought to modify the Court's Order of April 16, 2010 approving certain bidding procedures (the "Original Sale Procedures Order"). Unless otherwise defined herein, capitalized terms in this order (the "Revised Sale Procedures Order") shall be given the same meaning accorded to such terms in the Revised Sale Procedures Motion. The Court has considered the entire record in these proceedings to date, including pleadings filed in response to the motion to approve the Original Sale Procedures Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on the foregoing, and after due deliberation and good sufficient factual and legal cause appearing therefor, the Court finds and concludes as follows:

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for relief sought herein include sections 105(a), 363, 365 and 1146(c) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002, 4001(d), 6004, 6006, 9013 and 9014 and Local Rule 9013.

2.    Debtors are diligently marketing the Assets for sale.

3.    Debtors have entered into a stalking horse Asset Purchase Agreement (appended to the Revised Sales Procedures Motion, the "APA") with Cement Resources LLC (the "Stalking Horse Bidder").

4.    Due and proper notice of the Revised Sale Procedures Motion has been given to all necessary parties.

CLE - 2707828.1

5.     Debtors have shown good and sufficient business reasons for the relief requested in the Revised Sale Procedures Motion and have exercised prudent and reasonable business judgment with respect thereto.

6.     Good cause exists for the establishment of the timelines set forth under this Revised Bid Procedures Order and in the Bidding Procedures attached hereto.

7.     Debtors have been advised that time is of the essence for the Stalking Horse Bidder.  Taking into consideration solicitation efforts made by Debtors thus far, the levels of interest received by Debtors in the Assets, the consent of the agent under Debtors' prepetition secured lending facility (the "Agent") to the sale of the Assets proposed by the APA, and the value to be provided to the Debtors' chapter 11 estates through the transaction contemplated by the APA, Debtors have concluded, and the Court finds, that the modifications to the Original Sale Procedures Order set forth herein are warranted under the circumstances.  In light of the above factors, certain bid protections for the Stalking Horse Bidder are likewise warranted, including the modification of the rights of certain parties under the Court's Final Agreed Order Authorizing Limited Use of Cash Collateral that was entered by the Court on April 15, 2010 (the "Cash Collateral Order").

8.     Any objections to the Revised Sale Procedures Motion are overruled.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**

1.     The Bidding Procedures hereby are approved as attached hereto as Exhibit A, and Debtors are authorized to proceed with the auction and sale process in accordance with the Bidding Procedures.

2.     The form of APA set forth as Exhibit B hereto is approved, and Debtors are authorized to proceed with the utilization of the APA as the form document to be utilized as part of the Bidding Procedures.  All Qualified Bids must be made in a form by modifying the form of

CLE - 2707828.1

APA and be for substantially all of Debtors' assets (in the APA, this is defined as the "Acquired Assets").

3.    Within two business days after the entry of this Revised Sale Procedures Order, Debtors shall serve (except with respect to those parties receiving electronic notice in Debtors' bankruptcy proceeding) the Sale Notice, substantially in the form annexed hereto as <u>Exhibit C</u> on the following entities: (i) all parties that contacted Debtors or their advisors in connection with the marketing and sale process for the Assets; (ii) all entities who receive electronic notice in Debtors' bankruptcy proceedings; and (iii) all parties required to be served pursuant to Bankruptcy Rules 6004(a), 6004(c), 6006(c) and 9014 and the case management procedures in place in these Cases. In addition, Debtors shall also serve all prospective offerors and parties-in-interest upon written request. Service pursuant to Bankruptcy Rules 6004(a), 6004(c), 6006(c) and 9014 on those parties not receiving electronic notice shall be by first-class mail addressed to the business address of such persons appearing in Debtors' records notwithstanding Bankruptcy Rule 9014. Pursuant to Bankruptcy Rule 2002, service of the Sale Notice described herein shall constitute good and sufficient notice of the Bidding Procedures (including the APA), the Auction, this Revised Sale Procedures Order, the Sale Motion, and the Sale Hearing (and any proceedings to be held thereon or related thereto) on all known and unknown creditors and parties-in-interest, including persons entitled to service pursuant to Bankruptcy Rules 2002, 6004(a), 6004(c), 6006(c) and 9014. The Form of Sale Notice is hereby approved.

4.    Debtors shall serve via overnight courier upon all parties (the "<u>Counterparties</u>") to executory contracts and unexpired leases (the "<u>Contracts</u>") that are or may be assumed and assigned in connection with the Sale a notice (the "<u>Cure Claim Notice</u>"), substantially in the form attached hereto as <u>Exhibit D</u>, concurrently with this Order. The Cure Claim Notice shall

provide notice of (a) the Debtors' intent to assume and assign certain of the Contracts to any Successful Bidder, in the event that the Successful Bidder designates such Contract as an executory contract or unexpired lease to be assumed and assigned; (b) a schedule of the Contracts and the prepetition monetary defaults, if any, associated with each Contract that is required to be cured under section 365 of the Bankruptcy Code (the "Cure Amounts"); and (c) the procedures for filing objections to the assumption and assignment of the Contracts, including any objections to proposed Cure Amounts. As the APA provides for the Successful Bidder to assume certain of Debtors' post-petition (but pre-closing) accounts payable, the Cure Amounts set forth on the exhibit to the Cure Claim Notice shall include prepetition liabilities. In the event that the Stalking Horse Bidder is **not** the Successful Bidder, Debtors shall re-serve a revised Cure Claim Notice which will include amounts to be paid by the Debtors to cure postpetition defaults, according to their business records. Service pursuant to Bankruptcy Rules 6006(c) and 9014 on those parties not receiving electronic notice shall be by overnight mail addressed to the business address of such persons appearing in Debtors' records notwithstanding Bankruptcy Rule 9014. The Form of Cure Claim Notice is hereby approved.

5. Objections, if any, to the Sale Motion or the assumption and assignment of any Contracts (including objections to Cure Amounts, objections with respect to the provision of adequate assurance of future performance or objections to the assignment of a Contract under section 365 of the Bankruptcy Code) shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules and orders of this Court, shall set forth (i) the nature of the objector's claims against or interests in Debtors' estates; (ii) the basis for the objection; (iii) the specific grounds therefor; and (iv) all evidence in support of said objection, and shall be filed and served so as to be received on or before **May 14, 2010 at 5:00 p.m. E.D.T**, by (a) Debtors and Debtors'

Counsel, (b) the Committee and its Counsel, (c) the United States Trustee, (d) counsel for the Agent, (e) counsel for each of the Debtors' prepetition secured lenders; (f) counsel for Naples Funding Group, L.C., (g) counsel to the Stalking Horse Bidder and (h) all parties requesting service of notice and other motions and pleadings in this chapter 11 proceeding. Any person that does not comply with this paragraph shall not be heard at the Sale Hearing.

6. Except as set forth above, nothing otherwise contained in this Order shall be deemed to deprive any party of the right to object timely to the Sale Motion, all of which rights will be expressly reserved by this Order.

7. An Auction of the Assets shall be held on **May 17, 2010 at 10:00 a.m. E.D.T.**

8. The Sale Hearing to consider the relief requested in the Sale Motion and to consider whether to approve the bid by the Stalking Horse Bidder or other Successful Bidder shall be held on **May 20, 2010 at 10:00 a.m. E.D.T.**

9. The amounts of the Break-Up Fee and Expense Reimbursement (as such terms are defined in the APA) set forth in the APA are reasonable and appropriate and are hereby approved.

10. The Break-Up Fee and Expense Reimbursement shall be paid to the Stalking Horse Bidder in the following circumstances: (i) immediately upon the consummation of a transaction or series of related transactions, other than the transactions to be consummated under the APA, pursuant to which a material portion of the Debtors' Assets will be acquired by, or transferred to, a third party (whether pursuant to an asset sale, merger, stock purchase, a chapter 11 plan or otherwise), including pursuant to a credit bid (any such transaction, an "Alternative Transaction"), in which case the amount of the Break-Up Fee shall equal 4% of the maximum Cash Purchase Price; (ii) in the event the APA is terminated pursuant to (x) Section 10.1(a) of

CLE - 2707828.1

the APA because all of the conditions in Article 6 have been satisfied or waived by the Stalking Horse Bidder and all of the conditions in Article 7 have been satisfied, but the Debtors are not willing to consummate the transactions contemplated by the APA or (y) Section 10.1(j) of the APA, immediately upon the closing of each transaction pursuant to which any portion of the Debtors' Assets are acquired by, or transferred to, a third party (whether pursuant to an asset sale, merger, stock purchase, chapter 11 plan, or otherwise), including pursuant to a credit bid, but excluding sales of inventory in the ordinary course of business, in which case the amount of the Break-Up Fee shall equal 4% of the maximum Cash Purchase Price; or (iii) in the event that the APA is terminated pursuant to Section 10.1 of the APA (other than Section 10.1(d) and 10.1(j)), immediately upon the closing of each transaction (out of the proceeds of each such transaction) pursuant to which any portion of the Debtors' Assets are acquired by, or transferred to, a third party (whether pursuant to an asset sale, merger, stock purchase, chapter 11 plan, or otherwise), including pursuant to a credit bid, but excluding sales of inventory in the ordinary course of business, until the Break-Up Fee and Expense Reimbursement have been paid in full, in which case the amount of the Break-Up Fee shall equal 2% of the maximum Cash Purchase Price.

11.     For purposes of clarification, in the event that Stalking Horse Bidder is not selected as the winning bidder at the Auction for the Debtors' Assets and an Alternative Transaction is consummated, but the APA also is terminated pursuant to Section 10.1 of the APA, the Break-Up Fee will be 4% of the maximum Cash Purchase Price. To the extent applicable and due and payable and otherwise unpaid, the Break-Up Fee and Expense Reimbursement shall constitute superpriority administrative expenses allowable under sections 364(c)(1) and section 503(b) of the Bankruptcy Code. Consistent with paragraph 10 herein, any

Break-Up Fee and Expense Reimbursement payable under the APA to the Stalking Horse Bidder shall be allowed and paid, without any further Court approval or order. In the event that the Stalking Horse Bidder's Break-Up Fee and Expense Reimbursement becomes payable pursuant to paragraph 10 above, any such amounts shall not be paid to the Debtors or become property of their estate, but shall instead be paid directly by the buyer to the Stalking Horse Bidder out of the proceeds of such transaction contemplated in paragraph 10 above. Notwithstanding any existing lien, claim or encumbrance, the Replacement Liens granted by the Cash Collateral Order (as such term is defined in the Cash Collateral Order) and any liens of the Pre-Petition Lenders (as such term is defined in the Cash Collateral Order) shall be subject to an additional carve-out equal to the amount of the Break-Up Fee and Expense Reimbursement, and such liens shall not attach to such amounts in the event that such amounts become payable pursuant to the terms of this Order.

###

Prepared and Submitted by:

/s/ Christopher W. Peer
Lawrence E. Oscar (0022696)
Daniel A. DeMarco (0038920)
Christopher W. Peer (0076257)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:    (216) 621-0150
Facsimile:    (216) 241-2824
E-mail:    leoscar@hahnlaw.com
    dademarco@hahnlaw.com
    cpeer@hahnlaw.com

*Counsel to Debtors*

**NO OBJECTION**

/s/ Curtis L. Tuggle
Alan R. Lepene (0023276)
Curtis L. Tuggle (0078263)
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Phone: (216) 566-5500
Fax:    (216) 566-5800

*Attorneys for KeyBank National Association, as*
*Administrative Agent for the Pre-Petition Lenders*