# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCHWAB INDUSTRIES, INC., *et al.*,[1] | ) | Case No. 10-60702-rk |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| | ) | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION DATED OCTOBER ~~12,~~ 26, 2010

The above-captioned debtors and debtors-in-possession (collectively, the "*Debtors*") and the Official Committee of Unsecured Creditors (the "*Committee*"), hereby submit this First Amended Joint Plan of Liquidation (the "*Plan*") pursuant to section 1123 of the Bankruptcy Code:

## ARTICLE I

### Definitions

The following terms, when used in the Plan shall, unless the context otherwise requires, have the following meanings, respectively:

1.1     "**503(b)(9) Claim**" shall mean a Claim of a Creditor of the kind specified in section 503(b)(9) of the Bankruptcy Code and that was filed by the Bar Date pursuant to the procedures set forth in the Bar Date Order.

1.2     "**503(b)(9) Fund**" shall mean the $500,000 in Cash provided by Oldcastle to pay 503(b)(9) Claims, which is expressly preserved solely for the benefit of holders of 503(b)(9) Claims.

1.3     "**ACP**" shall mean Allen Concrete Pumping, a Florida Partnership, fifty percent (50%) owned by SRM.

1.4     "**Administrative Claim**" shall mean a Claim of a Creditor of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the

---

[1]     The Debtors in these Cases, along with the last four digits of each Debtor's tax identification number are: Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525); Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

Bankruptcy Code, and shall include: (i) any actual and necessary costs and expenses incurred by the Debtors after the Petition Date with respect to preserving the Estates and operating the Debtors' businesses; (ii) any Professional Fee Claims approved by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code; and (iii) all fees and charges properly assessed against the Estates pursuant to 28 U.S.C. § 1930. Pursuant to the Bar Date Order, all Administrative Claims (other than Professional Fee Claims) were required to be filed prior to the Bar Date and in accordance with the Bar Date Order. Pursuant to the Bar Date Order: (i) 503(b)(9) Claims were required to be submitted no later than the Bar Date pursuant to the proof of claim form (with the appropriate checked box); and (ii) all holders of Other Administrative Expense Claims (other than holders of 503(b)(9) Claims) were required to seek allowance of their Administrative Claim by the Bar Date. Those Administrative Claims (other than Professional Fee Claims and those Claims identified on Schedule 1.6 to this Plan as Agreed Administrative Claims) not filed by the Bar Date and pursuant to the procedures established by the Bar Date Order shall be forever barred and disallowed as untimely. Notwithstanding the foregoing, Administrative Claims shall also include post-petition expenses of the Debtors that the Creditor Trustee otherwise believes should be paid as administrative expenses of the Estates.

1.5 "**Administrative Expense Fund**" shall mean the $900,000 in Cash provided by Oldcastle under the Core Sale Order to pay Allowed Administrative Claims, which is expressly preserved solely for the benefit of holders of Allowed Administrative Claims.

1.6 "**Agreed Administrative Claims**" shall mean the Claims identified on **Schedule 1.6** to this Plan, which Administrative Claims are known to the Debtors to have existed on the date this Plan was filed with the Court and remain unpaid as of such date. Agreed Administrative Claims remain subject to objection for substantive reasons, but the Creditor Trustee shall not object to such Agreed Administrative Claims for failure to file a proof of claim prior to the Bar Date so long as such Creditors holding Agreed Administrative Claims actually filed an Administrative Claim by the Bar Date. Nothing herein shall preclude the Creditor Trustee from seeking to establish a subsequent bar date if determined to be necessary or beneficial to administration of the Estates.

1.7 "**Allowed Claim**" or "**Allowed . . . Claim**" shall mean a Claim, proof of which is filed by the Bar Date pursuant to the procedures established pursuant to the Bar Date Order, or that has been, or is hereafter, scheduled by the Debtors as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been raised by the Creditor Trustee or filed within any applicable period fixed by the Bankruptcy Court, or as to which a Final Order allowing such Claim has been entered.

1.8 "**Avoidance Action**" shall mean causes of action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced before or after the Confirmation Date to prosecute such Avoidance Actions.

1.9 "**Bankruptcy Code**" shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

1.10  "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, located in Canton, Ohio, or any court having jurisdiction over these Cases or a proceeding arising in, or arising under or related to these Cases.

1.11  "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

1.12  "**Bar Date**" shall mean the applicable bar date by which a proof of Claim must be filed, as established by the Bar Date Order.

1.13  "**Bar Date Order**" shall mean that certain *Order Approving Debtors' Motion for Order Establishing Bar Date for Filing Prepetition Claims and Postpetition Administrative Claims and Approving Form and Manner of Notice Thereof* (Docket No. 529).

1.14  "**BofA**" shall mean Bank of America, N.A.

1.15  "**Cases**" shall mean the jointly administered cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re Schwab Industries, Inc.*, et al., Case No. 10-60702, currently pending before the Bankruptcy Court.

1.16  "**Cash**" shall mean legal tender of the United States of America and equivalents thereof.

1.17  "**Causes of Action**" shall mean all claims and causes of action now owned or hereafter acquired by the Debtors, whether arising under any contract, the Bankruptcy Code, or other federal or state law, including, but not limited to, all litigation pending as of the Confirmation Date in any jurisdiction in which any of the Debtors are a plaintiff, defendant or other party, and all other adversary proceedings and lawsuits.

1.18  "**Claim**" means any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined by section 101(5) of the Bankruptcy Code.

1.19  "**Class**" shall mean a class of holders of Claims as described in the Plan.

1.20  "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed in these Cases on March 9, 2010, pursuant to section 1102 of the Bankruptcy Code.

1.21  "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

1.22  "**Confirmation Order**" shall mean the order confirming this Plan.

1.23  "**Core Sale Order**" shall mean that certain *Order (1) Authorizing the Sale of Substantially all of the Debtors' Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, Subject to Higher or Better Offers Pursuant to Bankruptcy Code 363 and 365; (2) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Such Sale and Determining and Adjudicating Cure Amounts with Respect to Such Contracts and Leases; (3) Waiving the Fourteen-Day Period Provided by*

*Bankruptcy Rule 6004(h); and Granting Related Relief* entered by the Bankruptcy Court on May 28, 2010.

1.24    "**Creditors**" shall mean all creditors of the Debtors holding Claims for debts, liabilities, demands or other Claims of any character whatsoever.

1.25    "**Creditor Trust**" shall mean a common law trust to be established pursuant to the Plan, the Creditor Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 General Unsecured Claims. The Creditor Trust shall liquidate and distribute the Creditor Trust Assets, in accordance with the Creditor Trust Agreement.

1.26    "**Creditor Trust Agreement**" shall mean the agreement to be executed as soon as reasonably practicable after the Confirmation Date among the Debtors, the Committee and the Creditor Trustee, which shall govern the obligations of the Creditor Trustee with respect to oversight of the distribution of the Net Proceeds of the Creditor Trust Assets, as further set forth in the Creditor Trust Agreement and the Plan.

1.27    "**Creditor Trust Assets**" shall mean those assets to be transferred to and vested in the Creditor Trust pursuant to this Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time. The Creditor Trust Assets shall include (but not be limited to): (i) all Cash held by the Debtors (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims); (ii) the Settlement Amount; (iii) the Debtors' remaining property, including real estate, motor vehicles, furniture, fixtures, inventory, investments, partnership or other ownership interests, refunds, accounts, equipment, any other tangible or intangible personal property and any and all proceeds thereof; (iv) the Debtors' outstanding accounts receivable; (v) the proceeds from any Avoidance Actions or Miscellaneous Causes of Action engaged in by the Creditor Trust; (vi) the 503(b)(9) Fund; and (vii) the Administrative Expense Fund. The Creditor Trust Assets shall not include any carve-outs from collateral of Secured Creditors, including without limitation amounts held by Professionals as carve-outs from the Pre-Petition Lenders' collateral to be used to compensate Professionals for their fees and expenses.

1.28    "**Creditor Trustee**" shall mean such Person or entity, including any replacements thereof or successors thereto, as may be designated by the Plan Proponents at least three (3) days in advance of the Joint Hearing, and approved by the Bankruptcy Court, as necessary or appropriate, to serve as custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein for the benefit of the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 General Unsecured Claims, pursuant to the Plan, the Confirmation Order and the Creditor Trust Agreement.

1.29    "**Debtors**" shall mean SII, MCC, MSC, QBS, OIS, TCC, SRM, SMI and ECC, collectively.

1.30 "**Deficiency Claim**" shall mean any General Unsecured Claim of a Creditor against a Debtor equal to the excess of the Allowed amount of the Creditor's asserted Claim over the value of such Creditor's interest in such Debtor's interest in the property securing such Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.31 "**Disclosure Statement**" shall mean the Disclosure Statement filed by the Debtors and the Committee and approved by the Bankruptcy Court.

1.32 "**Disputed Claim**" shall mean any Claim (other than an Allowed Claim) which is either a Claim that has been scheduled by the Debtors or a Claim which is the subject of a proof of claim which has been filed with the Bankruptcy Court, as to which the Debtors, the Committee or the Creditor Trustee have indicated a dispute, or as to which scheduled or filed Claim a timely objection to the allowance thereof has been filed by a party entitled to make such an objection, but as to which the Bankruptcy Court has not yet entered a Final Order.

1.33 "**ECC**" shall mean Eastern Cement Corp.

1.34 "**Effective Date**" shall mean a date not greater than 180 days after the Confirmation Date, unless extended by the Creditor Trustee in his or her sole discretion; provided, however, that if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

1.35 "**Equity Security**" shall have the meaning provided by section 101(16) of the Bankruptcy Code.

1.36 "**Equity Security Holder**" shall have the meaning provided by section 101(17) of the Bankruptcy Code.

1.37 "**Estates**" shall mean the estates of the Debtors created in these Cases pursuant to section 541 of the Bankruptcy Code.

1.38 "**Final Order**" shall mean an order or judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.39 "**General Unsecured Claim**" shall mean any Unsecured Claim, arising prior to the Petition Date, that is not a Professional Fee Claim, Other Administrative Expense Claim, Unsecured Priority Tax Claim, Class 1 Claim (Priority Claims), Class 2a Claim (Secured Claims of the Pre-Petition Lenders), Class 2b Claim (Other Secured Claims) or Class 4 Interest (Equity Security Interests).

1.40 "**Huntington**" shall mean The Huntington National Bank.

1.41 "**Impaired**" shall mean any Class, or any Claim or Interest in a Class, that is impaired within the meaning of section 1124 of the Bankruptcy Code, and shall include, without limitation, Class 2a Secured Claims of the Pre-Petition Lenders, Class 3 General Unsecured Claims and Class 4 Equity Security Interests.

1.42    "**Intercompany Claim**" shall mean any Claim held by a Debtor against any other Debtor.

1.43    "**Interest**" shall mean the legal, equitable, contractual and other rights of the holders of any Equity Security in the Debtors, including the rights of any entity to purchase or demand the issuance of any Equity Securities, including:  (i) conversion, exchange, voting, participation and dividend rights; (ii) liquidation preferences; (iii) stock options, warrants and put rights; and (iv) share-appreciation rights.

1.44    "**Joint Hearing**" shall mean the date on which the Bankruptcy Court holds a hearing to consider approval of the Disclosure Statement and confirmation of this Plan.

1.45    "**KeyBank**" shall mean KeyBank, National Association, both in its capacity as a Pre-Petition Lender and as administrative agent for the Pre-Petition Lenders.

1.46    "**Lien**" shall have the meaning provided by section 101(37) of the Bankruptcy Code.

1.47    "**MCC**" shall mean Medina Cartage Co.

1.48    "**Miscellaneous Causes of Action**" means all Causes of Action other than Avoidance Actions.

1.49    "**MSC**" shall mean Medina Supply Company.

1.50    "**Net Proceeds**" shall mean the Cash proceeds received by the Creditor Trustee from time to time from the sale or other disposition of the Creditor Trust Assets, net of the reasonable or necessary costs of such sale or other disposition, including reasonable fees and expenses of the Creditor Trustee's legal counsel and other Professionals incurred in connection therewith.

1.51    "**OIS**" shall mean O.I.S. Tire, Inc.

1.52    "**Oldcastle**" shall mean Oldcastle Materials, Inc., the purchaser of the bulk of the Debtors' core assets pursuant to the Core Sale Order.

1.53    "**Other Administrative Expense Claim**" shall mean an Administrative Claim that is not a Professional Fee Claim.

1.54    "**Other Secured Claim**" shall mean a Secured Claim of a Secured Creditor other than the Pre-Petition Lenders.

1.55    1.54 "**Oversight Committee**" shall mean the committee created pursuant to the Creditor Trust Agreement, which shall have the duties and powers set forth in the Creditor Trust Agreement.

1.56 ~~1.55~~ "**Person**" shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.57 ~~1.56~~ "**Petition Date**" shall mean the date of the filing of the Debtors' Cases, or February 28, 2010.

1.58 ~~1.57~~ "**Plan**" shall mean this First Amended Joint Plan of Liquidation as set forth herein or as it may be modified or amended.

1.59 ~~1.58~~ "**Plan Proponents**" shall mean the Debtors and the Committee.

1.60 ~~1.59~~ "**Pre-Petition Lenders**" shall mean KeyBank, BofA and Huntington, collectively.

1.61 ~~1.60~~ "**Priority Claim**" shall mean a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code. With respect to the Claims of employees or former employees, such Claims shall constitute Priority Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.62 ~~1.61~~ "**Priority Tax Claims**" shall mean a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.63 ~~1.62~~ "**Professional Fee Claims**" shall mean Claims of Professional Persons for compensation for services rendered in these Cases prior to the Confirmation Date pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.64 ~~1.63~~ "**Professional Fee Carve Out Funds**" shall mean such Cash held by: (i) Professionals for the Debtors to compensate Professionals for the Debtors; and (ii) Professionals for the Committee to compensate Professionals for the Committee, respectively, as described more fully in the Core Sale Order, for such Professionals' Allowed Professional Fee Claims.

1.65 ~~1.64~~ "**Professional**" or "**Professional Persons**" shall mean persons, including attorneys, accountants and financial advisors retained by the Debtors, the Committee or the Creditor Trustee, or to be compensated pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.66 ~~1.65~~ "**Pro Rata**" shall mean proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included.

1.67 ~~1.66~~ "**QBS**" shall mean Quality Block & Supply, Inc.

1.68 ~~1.67~~ "**Reclamation Claim**" shall mean a Claim of a Creditor: (i) of the kind specified in section 546(c)(1) of the Bankruptcy Code; or (ii) any similar Claim available under applicable state law.

1.69 ~~1.68~~ "**Schwab Family Members**" shall mean Jerry A. Schwab, Donna L. Schwab, David A. Schwab and Mary Lynn Hites.

1.70 ~~1.69~~ "**Secured Claim**" shall mean a Claim of a Creditor secured by a lien on property of the Estates, or a Claim subject to set off under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estates, or to the extent of the amount subject to set off, as the case may be.

1.71 ~~1.70~~ "**Secured Creditor**" shall mean the holder of a Secured Claim.

1.72 ~~1.71~~ "**Settlement Amount**" shall mean the "gift" made by the Pre-Petition Lenders to the Class 3 General Unsecured Creditors pursuant to the Core Sale Order in an amount equal to $850,000, plus fifteen percent (15%) of the net sale proceeds received by the Pre-Petition Lenders in excess of $51 million based on a sharing formula appended to the Core Sale Order, which is expressly preserved solely for the benefit of Class 3 General Unsecured Creditors and to pay the Trustee's Expenses in accordance with any budget approved by the Oversight Committee.

1.73 ~~1.72~~ "**SII**" shall mean Schwab Industries, Inc.

1.74 ~~1.73~~ "**SMI**" shall mean Schwab Materials, Inc.

1.75 ~~1.74~~ "**SRM**" shall mean Schwab Ready-Mix, Inc.

1.76 ~~1.75~~ "**Substantive Consolidation Order**" shall mean the order, or provision of the Confirmation Order, substantively consolidating the Cases as provided in Section 7.1.1 of the Plan.

1.77 ~~1.76~~ "**TCC**" shall mean Twin Cities Concrete Company.

1.78 ~~1.77~~ "**Trustee's Expenses**" shall mean the reasonable fees, costs and expenses incurred by the Creditor Trustee and any Professionals retained by it in connection with the performance of its duties and responsibilities under the Plan and Creditor Trust Agreement, as well as any other reasonable and necessary costs of administration of the Creditor Trust, including U.S. Trustee fees incurred during the post-Confirmation Date period, which may be paid from the Creditor Trust Assets (including, without limitation, the Settlement Amount) in accordance with any budget approved by the Oversight Committee.

1.79 ~~1.78~~ "**Unsecured Claim**" shall mean a Claim of a Creditor not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim pursuant to section 507 of the Bankruptcy Code.

1.80 ~~1.79~~ "**U.S. Trustee**" shall mean the United States Trustee.

**Rules of Interpretation and Computation of Time.** For purposes of this Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to any entity as a holder of a Claim or Interest includes the entity's successors and assigns; (v) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (ix) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II

## Unclassified Claims

Section 1123(a)(1) of the Bankruptcy Code provides that Administrative Claims and Priority Tax Claims are not to be classified under the Plan.

2.1     Allowed Administrative Claims include the following:

2.1.1     **Allowed Administrative Claims of any Professional Person** shall include Allowed Professional Fee Claims.

2.1.2     **Allowed Other Administrative Expense Claims** shall include the Allowed Administrative Claims of parties other than Professional Persons, including such Agreed Administrative Claims as may be Allowed.

2.2     **Priority Tax Claims** shall include the Allowed unsecured Priority Tax Claims.

## ARTICLE III

## Designation of Classified Claims and Interests

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims and Interests are classified as follows:

3.1    **Class 1 Claims** shall consist of all Allowed unsecured Priority Claims (other than unsecured Priority Tax Claims).

3.2    **Class 2a Claims** shall consist of all Allowed Secured Claims of the Pre-Petition Lenders that are fully secured to the extent of the value in the underlying collateral securing the Class 2a Claims.

3.3    **Class 2b Claims** shall consist of all Allowed Other Secured Claims that are fully secured to the extent of the value in the underlying collateral securing the Class 2b Claims.  For convenience of identification, the Plan classifies Class 2b Claims in a single class.  This Class is actually a group of subclasses, and each Class 2b Claim will be placed in a separate subclass and treated as a distinct Class for distribution purposes.

3.4    ~~3.3~~ **Class 3 Claims** shall consist of the Allowed Claims of general unsecured Creditors, including Deficiency Claims of Secured Creditors.   The Pre-Petition Lenders' Deficiency Claim has been waived in its entirety by agreement between the Pre-Petition Lenders and the Committee, as set forth in the Core Sale Order.

3.5    ~~3.4~~ **Class 4 Interests** shall consist of the Interests of Equity Security Holders.

## ARTICLE IV

### Impairment of Classes

4.1    **Impaired Classes of Claims Entitled To Vote.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 2a and Class 3 are Impaired and holders of Claims in those Classes shall be entitled to vote to accept or reject this Plan.

4.2    **Classes Deemed To Accept the Plan.**  Class 1 Claims and Class 2b Claims are unimpaired by this Plan and holders of such Claims are conclusively presumed to have accepted

this Plan pursuant to section 1126(f) of the Bankruptcy Code. The votes of Creditors holding these Claims will therefore not be solicited.

4.3 **Classes Deemed To Reject the Plan.** Holders of Interests in Class 4 will not receive or retain any distribution under the Plan on account of their Interests. Pursuant to section 1126(g) of the Bankruptcy Code, Class 4 is Impaired and is conclusively presumed to have rejected this Plan, and the votes of Creditors holding Class 4 Interests therefore will not be solicited.

4.4 **Cram Down.** The Debtors and the Committee will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class that rejects the Plan.

## ARTICLE V

## Treatment of Claims and Interests

5.1 **Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims.**

5.1.1 Allowed Professional Fee Claims (to the extent not paid from amounts carved out of the Pre-Petition Lenders' collateral, including the Professional Fee Carve Out Funds, which may only be used to compensate Professionals in accordance with the Core Sale Order) and Allowed Other Administrative Expense Claims shall be paid in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement. Notwithstanding anything stated above, Agreed Administrative Claims remain

subject to objection for substantive reasons, but the Creditor Trustee shall not object for failure to file a proof of claim prior to the Bar Date so long as such Creditors holding Agreed Administrative Claims actually filed an Administrative Claim by the Bar Date. Nothing herein shall preclude the Creditor Trustee from seeking to establish a subsequent bar date if determined to be necessary or beneficial to administration of the Estates.

5.1.2   Distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) make a distribution on account of Disputed Claims that are Professional Fee Claims or Other Administrative Expense Claims; and (ii) pay the Trustee's Expenses in full.

5.1.3   No Professional Fee Claims will be paid prior to such Claims becoming Allowed Professional Fee Claims pursuant to Section 7.9 herein, but all Professional Fee Claims shall be paid within twenty (20) days of becoming Allowed Professional Fee Claims, provided that the Creditor Trust has sufficient Cash to make such distribution(s).

5.1.4   Distributions from the 503(b)(9) Fund shall be made first, to holders of Allowed 503(b)(9) Claims, and second, to any unpaid Allowed Administrative Claims in accordance with Section 5.1.2 of the Plan.

5.1.5   Distributions from the Administrative Expense Fund shall be made to holders of Allowed Administrative Claims in accordance with Section 5.1.2 of the Plan.

5.1.6   No distributions from the Settlement Amount shall be made to holders of Professional Fee Claims or Other Administrative Expense Claims, except as may be permitted by the Plan or Creditor Trust Agreement.

5.1.7   No distributions of Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall be made to holders of Professional Fee Claims or Other Administrative Expense Claims, until such time as Allowed Class 2a Claims are paid in full.

5.2   **Priority Tax Claims.**

5.2.1   Allowed Priority Tax Claims shall be paid in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order.  The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.2.2   Distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement (and in accordance with sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code) to the holders of Allowed Priority Tax Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) satisfy all alleged Administrative Claims in full; (ii) make a distribution on account of Disputed Claims that are Priority Tax Claims or Priority Claims; and (iii) pay the Trustee's Expenses in full.

5.2.3    No distributions of Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall be made to holders of Priority Tax Claims, until such time as each of Allowed Class 2a Claims, Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims are paid in full.

5.3    **Class 1 Claims.**

5.3.1    Allowed Priority Claims shall be paid in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order.  The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.3.2    Distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Priority Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) satisfy all alleged Administrative Claims in full; (ii) make a distribution on account of Disputed Claims that are Priority Claims or Priority Tax Claims; and (iii) pay the Trustee's Expenses in full.

5.3.3    No distributions of Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall be made to holders of Priority Claims, until such time as

each of Allowed Class 2a Claims, Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims are paid in full.

5.4 **Class 2a Claims.**

5.4.1 Allowed Secured Claims of the Pre-Petition Lenders shall be paid in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.4.2 Distributions of the Net Proceeds from the Creditor Trust, solely from Creditor Trust Assets that are subject to the Liens of the Pre-Petition Lenders, shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Secured Claims of the Pre-Petition Lenders from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to pay the Trustee's Expenses in full.

5.4.3 Upon payment to the Pre-Petition Lenders of an amount equal to $51,000,000 with respect to the Pre-Petition Lenders' Secured Claims (whether from distributions from the Creditor Trust or otherwise), all further distributions to the Pre-Petition Lenders of Net Proceeds from the Creditor Trust shall be subject to the sharing formula appended to the Core Sale Order.

5.4.4 Upon payment in full of all sums required pursuant to this Plan, the holders of Class 2a Claims shall release, and shall be deemed to have released, their Liens upon property of the Debtors' Estates.  Evidence of such release shall be provided to the Creditor Trustee and filed with the Bankruptcy Court.

**5.5 Class 2b Claims.**

5.5.1 5.4 **Class 2 Claims.** The Creditor Trustee shall pay to holders of Allowed Class 2 Claims one hundred percent (100%) of their Allowed Class 2b Claims in Cash as soon as practicable following the ConfirmationEffective Date, or surrender the collateral securing such Allowed Class 2b Claims, in full satisfaction of such Claims.  Upon payment in full of all sums required pursuant to this Plandue, the holders of Class 2b Claims shall release, and shall be deemed to have released, their Liens upon property of the Debtors' Estates.  Evidence of such release shall be provided to the Creditor Trustee and filed with the Bankruptcy Court.

5.6 5.5 Class 3 Claims.

5.6.1 5.5.1 Allowed Class 3 Claims shall be paid Pro Rata in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order.  The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan and the Creditor Trust Agreement.

5.6.2 5.5.2 Pro Rata distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Class 3 General Unsecured Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee,

within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) satisfy all alleged Administrative Claims in full; (ii) satisfy all alleged Priority Tax Claims and Priority Claims in full; (iii) make a Pro Rata distribution on account of Disputed Claims that are Class 3 General Unsecured Claims; and (iv) pay the Trustee's Expenses in full.

5.6.3 ~~5.5.3~~ Distributions from the Settlement Amount shall be made to holders of Allowed General Unsecured Claims in accordance with Section ~~5.5.2~~5.6.2 of this Plan.

5.6.4 ~~5.5.4~~ No distributions from the Settlement Amount shall be made to holders of Claims other than Allowed Class 3 General Unsecured Claims, notwithstanding that this may cause Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims and/or Allowed ~~Priority~~Class 2a Secured Claims to not be paid in full; provided, however, that the Settlement Amount may be used to pay certain Allowed Administrative Claims or the Trustee's Expenses as permitted by the Plan or Creditor Trust Agreement.

5.6.5 Upon payment to the Pre-Petition Lenders of an amount equal to $51,000,000 with respect to the Pre-Petition Lenders' Secured Claims (whether from distributions from the Creditor Trust or otherwise), all further distributions of Net Proceeds from the Creditor Trust with respect to Creditor Trust Assets subject to the Pre-Petition Lenders' Liens shall be subject to the sharing formula appended to the Core Sale Order.

5.7 ~~5.6~~ **Class 4 Interests.**  Holders of Class 4 Interests shall not receive a distribution under the Plan.  Upon the Confirmation Date of the Plan, all Equity Securities in the Debtors will be retired.

## ARTICLE VI

## Treatment of Executory Contracts

6.1    **Contracts Deemed Rejected.**  Each executory contract or unexpired lease of the Debtors that has not expired by its own terms or been assumed prior to the Confirmation Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Confirmation Date.

6.2    **Bar Date for Rejection Damages.**  All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.1 of this Plan shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court by the Bar Date, or if an executory contract or unexpired lease is rejected after the Bar Date, by no later than thirty (30) days after the Confirmation Date.  The Claims of any Creditor arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.1 of this Plan that fails to timely file a proof of claim shall be released, discharged and forever barred from assertion against the Debtors, their Estates or their property.

6.3    **Pension Plan.**  The Debtors are contributing sponsors of the Schwab Industries, Inc. Employees' Pension Plan (the "*Pension Plan*") or asserted by the Pension Benefit Guaranty Corporation (the "*PBGC*") to be the members of the contributing sponsor's controlled group. The PBGC asserts that the Pension Plan is covered by Title IV of the Employment Retirement Income Security Act of 1974, as amended ("*ERISA*") (29 U.S.C. § 1310 *et seq.*).

On the Confirmation Date, the Pension Plan will be deemed rejected, and terminated as of the Confirmation Date.  Any such termination will be overseen by the Creditor Trustee, and completed will oversee the termination of the Pension Plan according to the terms and conditions of the Pension Plan and effected in conformity with all statutory and regulatory requirements, including any applicable notice provisions.  Any undistributed, vested benefits of the terminated Pension Plan will be distributed to the participants of the Pension Plan, as provided by statute,

the applicable regulations and the Pension Plan's provisions. In order to ensure that the Pension Plan's termination complies with the terms of the Pension Plan, applicable statutes and regulations, the Debtors, the Creditor Trustee or the Plan Administrator (as defined in the Pension Plan) will obtain any necessary approvals of the relevant regulatory agencies, such as the PBGC, the Internal Revenue Service and the U.S. Department of Labor, in respect of such terminations. To the extent that such processes require additional time or expense to complete after the Confirmation Date, the Plan Administrator shall be responsible for completing such process and such costs will be paid from the assets of the Pension Plan.

The PBGC is the wholly-owned United States government corporation and agency of the United States created under Title IV of ERISA to administer the federal pension insurance programs and enforce compliance with the provisions of Title IV. The PBGC guarantees the payment of certain pension benefits upon termination of a pension plan covered by Title IV.

The PBGC has filed various Claims against the Estates with respect to the Pension Plan, including the following: (i) a contingent Claim for unfunded benefit liabilities allegedly owed to the Pension Plan in the estimated amount of $19,014,863 pursuant to 29 U.S.C. § 1362(a), a portion of which the PBGC asserts is an Administrative Claim; (ii) an estimated Claim asserting that contributions are owed to the Pension Plan in the amount of $1,875,941 pursuant to 29 U.S.C. § 1082(c)(11), a portion of which the PBGC asserts is an Administrative Claim; (iii) an estimated Claim for statutory premiums allegedly owed to the PBGC in the amount of $3,141,960 pursuant to 29 U.S.C. § 1307, a portion of which the PBGC asserts is a Priority Claim; and (iv) an estimated Claim for alleged shortfall and waiver amortization charges in the amount of $12,402,766 pursuant to 29 U.S.C. § 1362(c).

The Creditor Trustee does not waive any objections it may have to any of the PBGC's Claims. The Bankruptcy Court will retain jurisdiction over any disputes relating to the termination of the Pension Plan and the Creditor Trustee shall have standing to object to any Claim filed by the PBGC with respect to the Pension Plan.

No provision contained herein, in the Confirmation Order or section 1141 of the Bankruptcy Code shall be construed as discharging, releasing or relieving any party, other than the Debtors or the Creditor Trustee in any capacity, from any liability with respect to the Pension Plan under any law, government policy or regulatory provision; provided, however, that the PBGC shall not share in any amounts disbursed pursuant to this Plan other than with respect to any Allowed Claims in whatever class such Claims may be Allowed. The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any party, other than the Debtors, the Creditor Trust and the Creditor Trustee, as a result of the provisions herein for satisfaction, release and discharge of claims.

## ARTICLE VII

### Means of Implementation of the Plan

7.1     **Substantive Consolidation.**

7.1.1     The Substantive Consolidation Order shall contain one or more provisions substantively consolidating the Estates into the Estate of SII. On the Confirmation Date, and except as otherwise provided in the Plan: (i) all guaranties of any Debtor of the payment, performance or collection of another Debtor shall be deemed eliminated and cancelled; (ii) any obligation of any Debtor and all guaranties thereof executed by another Debtor or Debtors shall be treated as a single obligation and any obligation of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, shall be treated and allowed only as a single Claim against the consolidated Debtors; and (iii) each Claim filed or to be filed

against any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a single Claim against and a single obligation of the consolidated Debtors.  On the Confirmation Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guaranties of collection, payment or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect.  Except as set forth in this Section 7.1.1, such substantive consolidation shall not (other than for purposes related to the Plan) cause any Debtor to be liable under the Plan for any Claim for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such substantive consolidation.  On the Confirmation Date, the Intercompany Claims of Debtors against any other Debtors shall be extinguished and cancelled.

7.1.2    Unless the Bankruptcy Court has approved the substantive consolidation of the Estates by a prior order, this Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors as provided in Section 7.1.1 hereof.  If no objection to substantive consolidation is timely filed and served by any holder of an Impaired Claim affected by the Plan as provided herein on or before the deadline for objection to confirmation of the Plan, or if any such objection is resolved by the parties or overruled by the Bankruptcy Court, the Substantive Consolidation Order (which may be the Confirmation Order) may be entered by the Bankruptcy Court.  If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of the Estates and any objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Joint Hearing.

7.1.3    Upon the substantive consolidation of each Estate into the Estate of SII, the Cases of all Debtors other than SII shall be closed.  Upon such event, the Creditor Trustee

may file all Causes of Action and objections to Claims in the SII Case, and not in any other individual Debtor Case, notwithstanding the fact that the transferring Debtor (in an Avoidance Action) or the Debtor against whom the Claim was filed (in a Claim objection proceeding) may be a Debtor other than SII.

      7.2    **Vesting of Assets.**  Within seven (7) days of the Confirmation Date, all assets of the Debtors and their Estates shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. The assets include, without limitation, all Cash in the possession of the Debtors (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims), the Settlement Amount, all Avoidance Actions and Miscellaneous Causes of Action, the 503(b)(9) Fund, the Administrative Expense Fund, all rights of the Debtors under the Plan, the Confirmation Order and all other orders entered by the Bankruptcy Court in these Cases on or prior to the Confirmation Date, and all books and records related to the Estates. The assets shall also include all remaining real property and personal property of the Debtors. For the avoidance of doubt, all property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 Claims and shall not be deemed property of the Debtors. Additionally, proceeds of the Settlement Amount obtained for General Unsecured Creditors from the Pre-Petition Lenders shall be distributed only to the holders of Allowed Class 3 General Unsecured Claims, proceeds of collateral subject to the Pre-Petition Lenders' Liens shall be distributed only to the holders of Allowed Class 2a Secured Claims until the Pre-Petition Lenders have received distributions on their Allowed Secured Claims totaling $51,000,000, the 503(b)(9) Fund shall be distributed only to the holders of Allowed 503(b)(9) Claims and the Administrative

Expense Fund shall be distributed only to the holders of Allowed Administrative Claims; provided, however, that the Settlement Amount may be used to pay Allowed Administrative Claims or satisfy the Trustee's Expenses pursuant to any budget approved by the Oversight Committee. Nothing in the Plan, however, shall preclude payment of: (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Confirmation Date; and (ii) the Trustee's Expenses in accordance with this Plan and the Creditor Trust Agreement from any other assets held by the Creditor Trust. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of their property to the Creditor Trust, subject to oversight from the Oversight Committee or the Creditor Trustee, as applicable.

7.3 **Creditor Trust Asset Administration.** The Creditor Trustee, with oversight from the Oversight Committee, shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Confirmation Date. The Creditor Trustee shall be responsible for liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Avoidance Actions and Miscellaneous Causes of Action, making distributions of the Net Proceeds to the beneficiaries of the Creditor Trust and all other activities typically related to trust administration.

7.4 **ACP Resolution.** The terms of the resolution of ACP's alleged Claims are set forth on **Schedule 7.4** to this Plan.

7.5 **Dissolution of the Debtors.** Promptly after completing their wind-down (including, without limitation, closing any pending sale(s) of real estate), and following dissolution of ACP, the Creditor Trustee will allow the applicable Secretary of State to involuntarily dissolve each of the Debtors. The Creditor Trustee shall thereafter have standing to

assert claims or pursue matters on behalf of the Debtors to the extent necessary to preserve, protect and liquidate the Creditor Trust Assets or otherwise necessary to administer the Creditor Trust.

7.6     **Name Change; Transfer of Remaining Trade Names to Oldcastle.**  Upon the Confirmation Date, the Debtors shall thereafter be referred to, collectively, as "SII Liquidation Company."  The Debtors shall take any actions as necessary, including, without limitation, registering such name change with the appropriate secretary of state, to effect such name change, and the Confirmation Order shall contain a provision approving a corresponding change to the caption of the Cases.

Effective upon the Confirmation Date, all trade names of the Debtors, including without limitation, the trade names associated with SII, MCC, MSC, QBS, TCC, SRM, SMI, OIS and ECC shall be indefeasibly and permanently transferred to Oldcastle.

7.7     **Conditions to Confirmation.**  The Bankruptcy Court shall not enter the Confirmation Order unless and until the Confirmation Order shall be reasonably acceptable in form and substance to the Plan Proponents.

7.8     **Conditions to Effective Date.**  The following are conditions precedent to the occurrence of the Effective Date:  (i) the Confirmation Order confirming the Plan, as such Plan may have been modified, shall have been entered by the Bankruptcy Court and be in full force and effect and shall not have been vacated, amended, modified or stayed, and if it is the subject of any appeal, reconsideration or other review, no stay of the Confirmation Order shall be in effect; (ii) the Creditor Trust Agreement, in form and substance satisfactory to the Committee, shall be executed and delivered, and all conditions precedent to the effectiveness thereof shall have been satisfied; (iii) all other documents or agreements necessary to consummate the Plan

shall have been delivered or effectuated; (iv) the Creditor Trustee shall have been appointed by the Plan Proponents upon notice to the Bankruptcy Court; and (v) the Creditor Trustee determines that it believes there will be sufficient assets, once liquidated, to pay Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Claims in full. The Plan Proponents or the Creditor Trustee, as the case may be, may waive any of the foregoing conditions precedent at any time.

7.9 **Administrative Claims Bar Date.** All Persons requesting payment of Other Administrative Expense Claims shall file a proof of claim (in accordance with the Bar Date Order) no later than the Bar Date or, for Other Administrative Expense Claims arising after July 12, 2010, no later than thirty (30) days after the Confirmation Date. The Bar Date shall not apply to Professional Persons requesting payment of Professional Fee Claims, who shall be entitled to file an application for allowance of such claims until not later than thirty (30) days after the Confirmation Date. Objections to such applications for payment (whether by Professional Persons requesting payment of Professional Fee Claims or Persons requesting payment of Other Administrative Expense Claims), if any, must be written, filed with the Bankruptcy Court and served on the applicable parties within forty-five (45) days after such application is filed.

7.10 **Termination of Committee.** The Committee shall terminate automatically upon the acceptance by the Creditor Trustee of its appointment in accordance with this Plan and the Creditor Trust Agreement following the Confirmation Date. Upon termination of the Committee, the Committee shall be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Cases or the Plan and its implementation, and the retention or employment of the Committee's counsel shall terminate, except for ministerial

duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

7.11 **Case Administration.** From and after the Confirmation Date and continuing through the date that a final decree closing the Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Cases. In addition to the foregoing, for all matters arising in, arising under or related to the Cases, the Creditor Trustee shall: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) have the right to obtain records of, or related to, the Debtors (including, without limitation, bank statements and cancelled checks); (iii) be entitled to notice and opportunity for hearing; (iv) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (v) have exclusive standing (including derivative standing to pursue Causes of Action on behalf of the Debtors) to commence Avoidance Actions and Miscellaneous Causes of Action; (vi) be entitled to request the Bankruptcy Court to enter a final decree closing the Cases; (vii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in these Cases; and (viii) be authorized to designate the allocation of the funds remaining in the 503(b)(9) Fund and the Administrative Expense Fund as of the Confirmation Date, following consultation with, and subject to the approval of, the Oversight Committee.

7.12 **Oversight Committee.** For purposes of implementation of the Plan, the Oversight Committee shall be created on the Confirmation Date and comprised of three (3) members, at least two (2) of which shall be representatives of the Committee and at least one (1)

of which shall be a representative of the Debtors (subject to the approval of the Committee, which shall not be unreasonably withheld or delayed). The Oversight Committee shall exercise such rights and duties as are set forth in the Creditor Trust Agreement. Each member of the Oversight Committee shall serve until the earlier of: (i) his or her death or resignation; (ii) his or her removal pursuant to the Creditor Trust Agreement; and (iii) the termination of the Creditor Trust.

7.13    **Filing of Additional Documents.**    On or before the Confirmation Date of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, without limitation, the final Creditor Trust Agreement, Schedule 1.6 and Schedule 7.4.

7.14    **Creditor Trustee's Professionals.**    Upon the later to occur of the Confirmation Date and acceptance by the Creditor Trustee of its appointment in accordance with this Plan and the Creditor Trust Agreement, the Creditor Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary, upon approval of the Oversight Committee, in accordance with the Creditor Trust Agreement, to aid in the performance of its responsibilities pursuant to the terms of the Plan, including, without limitation, the liquidation and distribution of assets of the Creditor Trust. The Professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in these Cases, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity. The Creditor Trustee's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict shall exist by virtue

of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance with Section 5.1 of this Plan.

7.15　**Notices.**　Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight delivery service, freight prepaid, addressed to the following:

The Debtors:

>Laurence V. Goddard
>The Parkland Group Inc.
>One Cleveland Center
>1375 E. 9th Street, Suite 1350
>Cleveland, Ohio  44114
>Telephone:  216-621-1985
>Facsimile: 216-621-1894
>E-Mail:  lgoddard@parkland.com

With a copy to:

>Lawrence E. Oscar, Esq.
>Hahn Loeser & Parks LLP
>200 Public Square, Suite 2800
>Cleveland, Ohio  44114
>Telephone:  216-621-0150
>Facsimile:  216-241-2824
>E-Mail:  leoscar@hahnlaw.com

>*Counsel for the Debtors*

The Committee:

>Aaron L. Hammer, Esq.
>Freeborn & Peters LLP
>311 South Wacker Drive, Suite 3000
>Chicago, Illinois  60606
>Telephone:  312-360-6000
>Facsimile:  312-360-6520
>E-Mail:  ahammer@freebornpeters.com

>*Counsel for the Committee*

The Creditor Trustee:

_____,
Creditor Trustee
_____
_____
Telephone: _____
Facsimile: _____
E-Mail:_____

7.16    **Injunction.**  Except as otherwise provided in the Plan or the Confirmation Order,

on and after the Confirmation Date, all Persons and entities who have held, hold or may hold

Liens, Claims or Interests in or against the Debtors are, with respect to any such Liens, Claims or

Interests, permanently enjoined from:  (i) commencing, conducting or continuing in any manner,

directly or indirectly, any suit, action or other proceeding of any kind (including, without

limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or

affecting the Debtors or the Creditor Trust or any of their property, or any direct or indirect

transferee of any property of, or direct or indirect successor in interest to, the Debtors or the

foregoing Creditor Trust, or any property of any such transferee or successor; (ii) enforcing

against, levying upon or attaching (including, without limitation, any pre-judgment attachment)

the Debtors or the Creditor Trust, or any property of any such transferee or successor; (iii)

enforcing, levying, attaching (including, without limitation, any pre-judgment attachment),

collecting or otherwise recovering by any manner or means whether directly or indirectly, of any

judgment, award, decree, claim or order against the Debtors or the Creditor Trust, any of their

property, or any direct or indirect transferee of any property of, or direct or indirect successor in

interest to the Debtors or the Creditor Trust; (iv) creating, perfecting or otherwise enforcing in

any manner, directly or indirectly, any Liens, Claims or Interests of any kind against or in the

Debtors or the Creditor Trust, any of their property, or any direct or indirect transferee of any

property of, or direct or indirect successor in interest to, the Debtors or the Creditor Trust; (v) other than as otherwise expressly provided for in this Plan, asserting any right of setoff, subordination or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, the Creditor Trust, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, the Debtors or the Creditor Trust; and (vi) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of this Plan.

7.17 **Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in the Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the termination of the Creditor Trust and the imposition of the injunction set forth in Section 7.16 of this Plan.

7.18 **Exculpation and Limitation of Liability.** Neither the Committee, the Pre-Petition Lenders, the Creditor Trustee, the Debtors (excluding the Schwab Family Members) nor any of their respective present and former members, officers, directors, shareholders, subsidiaries, affiliates, employees, advisors, attorneys or agents acting in such capacity or any of their successors or assigns (but in all cases, excluding the Schwab Family Members), shall have or incur any liability to, or be subject to any right of action by, any person or entity, for any act or omission in connection with, relating to or arising out of, the Cases or, the pursuit of confirmation of the Plan or the Plan's implementation, except for their fraud, willful misconduct or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

7.19 **Quarterly Reports.** The Creditor Trustee shall prepare and provide to the Oversight Committee and file with the Bankruptcy Court a report within thirty (30) days after the

conclusion of every calendar quarter setting forth: (i) all distributions to Creditors during the calendar quarter; (ii) a summary of the Creditor Trust deposits and disbursements during the calendar quarter; and (iii) a summary of the Creditor Trust Assets. As used in this section, "calendar quarter" shall mean a three month period of time, and the first calendar quarter shall commence on the first day of the first month immediately following the occurrence of the Effective Date. In the event the Effective Date does not occur, the Creditor Trustee shall have no obligation to prepare and file quarterly reports.

7.20 **Closing of the SII Case.** The SII Case shall not be closed, or if closed shall remain subject to re-opening pursuant to section 350 of the Bankruptcy Code, until the Creditor Trust Assets have been fully administered. If, prior to the Effective Date, the Creditor Trustee determines, following consultation with the Oversight Committee, that the Creditor Trust will be unable to generate sufficient cash proceeds from the liquidation of Creditor Trust Assets to pay Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Claims in full, it may, upon approval by the Oversight Committee, file a notice of dismissal of the SII Case pursuant to section 1112(b) of the Bankruptcy Code, which shall be deemed immediately effective. Following such dismissal, the Creditor Trustee shall, following consultation with, and approval by, the Oversight Committee: (i) oversee the liquidation of the Creditor Trust Assets and distribution of the Net Proceeds through the commencement of dissolution proceedings in the Common Pleas Courts of Cuyahoga County, Ohio, including, without limitation, conducting a Claims reconciliation process and distributing Net Proceeds (not including the Settlement Amount, collateral subject to the Liens of the Pre-Petition Lenders, the 503(b)(9) Fund or the Administrative Expense Fund other than as directed below) to holders of Allowed Claims according to the priority scheme set forth in the Bankruptcy Code, Pro Rata; (ii) distribute the

Settlement Amount to the holders of Allowed Class 3 General Unsecured Claims, Pro Rata; (iii) distribute Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders to holders of Allowed Class 2a Secured Claims, Pro Rata, until the Pre-Petition Lenders have received $51,000,000 with respect to their Allowed Secured Claims, at which point any future Net Proceeds of such collateral shall be distributed to holders of Allowed Class 2a Secured Claims and Allowed Class 3 General Unsecured Claims pursuant to the sharing formula appended to the Core Sale Order; (iv) distribute the 503(b)(9) Fund to holders of Allowed 503(b)(9) Claims, Pro Rata; and (ivv) distribute the Administrative Expense Fund to holders of Allowed Administrative Claims, Pro Rata. The Debtors, their creditors and all other parties-in-interest hereby consent to the substantive consolidation of the Debtors into SII, the dismissal of the SII Case and the jurisdiction of the Common Pleas Courts of Cuyahoga County, Ohio to supervise its dissolution. Notwithstanding the foregoing, the Creditor Trustee shall have standing to commence, prosecute and settle Avoidance Actions and Miscellaneous Causes of Action in the Bankruptcy Court, with all Net Proceeds of such Causes of Action to be distributed to holders of Allowed Claims according to the priority scheme set forth in the Bankruptcy Code, Pro Rata, and the Bankruptcy Court shall retain jurisdiction over the Avoidance Actions and Miscellaneous Causes of Action notwithstanding the dismissal of the Cases.

## ARTICLE VIII

## Modification of the Plan

The Plan and related documents may be altered, amended or modified, jointly, by the Plan Proponents, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE IX

## General Provisions

9.1     **Headings for Convenience Only.**  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meanings thereof.

9.2     **U.S. Trustee Fees.**  The Debtors shall continue to pay quarterly fees to the U.S. Trustee that have accrued up to the Confirmation Date; provided, however, that the Creditor Trustee shall pay any unpaid quarterly fees which remain unpaid on the Confirmation Date. Following the Confirmation Date, the Creditor Trustee shall pay quarterly fees accrued during the post-Confirmation Date period to the U.S. Trustee.

9.3     **Objections to Claims.**  The Creditor Trustee shall have standing to file objections to Claims, even if such Claims were scheduled by the Debtors as undisputed, liquidated and non-contingent.  The Creditor Trustee shall file objections to Claims no later than 180 days after the Confirmation Date (unless extended by an order of the Bankruptcy Court).  If the Creditor Trustee has objected to a Claim, payment will be withheld only with respect to the amount actually in dispute, and such objection shall not affect payments or distributions under the Plan on the undisputed portion of the Claim.  Notwithstanding the deadline to file objections to Claims provided herein, the Creditor Trustee may file objections to claims within ninety (90) days of the filing of an amended Claim.

9.4     **Lapsed Distributions.**  Any distribution that has not been cleared within ninety (90) days of the date of the distribution will lapse.  With respect to any lapsed distributions ~~on account of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed Class 3 Claims~~, the lapsed distribution will revert to the Creditor Trust and be distributed Pro Rata to the remaining beneficiaries of the Creditor Trust in accordance with the Plan and the Creditor Trust Agreement. ~~With respect to lapsed distributions on account of~~

any other Claims, the lapsed distribution will revert to the Creditor Trust for distribution Pro Rata to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed Class 3 Claims according to the priority scheme set forth in the Bankruptcy Code.

9.5 **Undeliverable and Unclaimed Distributions.** If any distribution is returned as undeliverable, no further distributions to such Creditor will be made unless the Creditor Trustee is notified in writing of the Creditor's current address. Upon receipt of the notification, the Creditor Trustee will remit all missed distributions to the Creditor without interest. All claims for undeliverable distributions must be made on or before the second anniversary of the Confirmation Date of the Plan. If a claim is not made within that time, all unclaimed distributions will revert to the Creditor Trust and be distributed Pro Rata to the remaining beneficiaries of the Creditor Trust. Nothing in this Plan will require the Creditor Trustee to attempt to locate any holder of an Allowed Claim.

**ARTICLE X**

**Retention of Jurisdiction**

This Bankruptcy Court shall retain jurisdiction over these Cases for the following purposes:

10.1 Resolution of any and all objections to Claims.

10.2 Determination of all questions and disputes regarding all Causes of Action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Confirmation Date, between: (i) any Debtor and any other party; (ii) the Creditor Trustee and any other party; or (iii) otherwise under this Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with these Cases.

10.3    The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

10.4    Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

10.5    Allowance of all Claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Debtors or their Estates pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

10.6    Resolution of any disputes regarding the Creditor Trust or any claim or controversy related thereto.

10.7    Entry of a final order confirming substantial consummation of the Plan and closing the Cases.

10.8    Avoidance Actions and Miscellaneous Causes of Action, in the event that these Cases are dismissed pursuant to Section 7.20 of this Plan.

*[Remainder of Page Intentionally Blank]*

Dated this ~~12~~26th day of October, 2010.

SCHWAB INDUSTRIES, INC., et al.

By:_____
      Their _____

OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By:_____
      Its Chair

**Schedule 1.6**

(to be filed prior to the Voting Deadline)

**Schedule 7.4**

(to be filed prior to the Voting Deadline)

Document comparison by Workshare Professional on Tuesday, October 26, 2010
3:50:10 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://FPDMS/DMSDB1/2160413/1 |
| Description | #2160413v1<DMSDB1> - Schwab Joint Liquidation Plan (changes since Oct. 12, 2010 filing) |
| Document 2 ID | interwovenSite://FPDMS/DMSDB1/2160413/4 |
| Description | #2160413v4<DMSDB1> - Schwab Joint Liquidation Plan (changes since Oct. 12, 2010 filing) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 68 |
| Deletions | 51 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 123 |