**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.**





**Russ Kendig**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCHWAB INDUSTRIES, INC., *et al.*,[1] | ) | Case No. 10-60702-rk |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | Judge Russ Kendig |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER: (I) APPROVING FIRST AMENDED DISCLOSURE STATEMENT WITH RESPECT TO FIRST AMENDED JOINT PLAN OF LIQUIDATION OF SCHWAB INDUSTRIES, INC. ET AL. PURSUANT TO 11 U.S.C. § 1125; AND (II) CONFIRMING FIRST AMENDED JOINT PLAN OF LIQUIDATION DATED OCTOBER 26, 2010**

Schwab Industries, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "*Debtors*"),[2] having each filed with this Court their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") on February 28, 2010 (the "*Petition Date*"); and the Debtors and the Official Committee of Unsecured Creditors (the

---

[1]     The Debtors in these Cases, along with the last four digits of each Debtor's tax identification number are: Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525); Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

[2]     Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement.

1

"*Committee*," and collectively with the Debtors, the "*Plan Proponents*"), having filed with this Court their First Amended Joint Plan of Liquidation dated October 26, 2010 (the "*Plan*"); and the Plan Proponents, having filed with this Court the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "*Disclosure Statement*"); and the Plan Proponents seeking approval of the Disclosure Statement simultaneously with confirmation of the Plan, as allowed by this Court's order on October 27, 2010 (the "*Solicitation Procedures Order*"); and which Solicitation Procedures Order also (1) authorized the Plan Proponents to solicit acceptances or rejections of the Plan, (2) approved the form of ballots to be transmitted with the Plan and Disclosure Statement for voting purposes, (3) fixed 5:00 p.m. (prevailing Eastern time) on December 3, 2010 as the deadline for submitting acceptances or rejections to the Plan (the "*Voting Deadline*"), (4) set December 3, 2010 as the deadline for filing objections to the Disclosure Statement or to confirmation of the Plan (the "*Objection Deadline*"), (5) fixed December 9, 2010, at 2:00 p.m. (prevailing Eastern time) for the hearing to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code (the "*Joint Hearing*") and (6) approved the form and manner of notice of the Joint Hearing, the Voting Deadline and Objection Deadline; and the Plan Proponents, having solicited votes on the Plan and having provided notice of the Joint Hearing in accordance with the Solicitation Procedures Order; and the Court having considered the Declaration of Patrick M. Leathem of the Garden City Group, Inc. Regarding the Methodology for the Tabulation of Ballots Accepting or Rejecting the First Amended Joint Plan of Liquidation Dated October 26, 2010, filed with this Court on December 6, 2010, (the "*Ballot Report*"); and due notice of the Voting Deadline, the Joint Hearing and the Objection Deadline having been given by the Plan Proponents to all creditors, equity security

2

holders and other parties-in-interest in accordance with the Solicitation Procedures Order, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"); and the Plan Proponents having filed with this Court the Memorandum of Law in Support of: (I) Approval of First Amended Disclosure Statement with Respect to First Amended Joint Plan of Liquidation of Schwab Industries, Inc. et al. Pursuant to 11 U.S.C. § 1125; and (II) Confirmation of First Amended Joint Plan of Liquidation Dated October 26, 2010, dated December 6, 2010 (the "*Confirmation Brief*") and their Omnibus Reply to Objections to: (I) Approval of First Amended Disclosure Statement with Respect to First Amended Joint Plan of Liquidation of Schwab Industries, Inc. et al. Pursuant to 11 U.S.C. § 1125; and (II) Confirmation of First Amended Joint Plan of Liquidation Dated October 26, 2010, on December 6, 2010 (the "*Omnibus Reply*"); and upon all the documents and the evidence of record adduced at the Joint Hearing and the statements of the parties appearing at such hearing; and upon all the pleadings and proceedings heretofore in this matter; and after due deliberation and consideration; and good and sufficient cause appearing therefore:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

**IT IS HEREBY FOUND AND DETERMINED that:**

#### A.    **Exclusive Jurisdiction, Venue and Core Proceeding**

This Court has jurisdiction over these chapter 11 cases (the "*Cases*") pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

---

[3]       Pursuant to Bankruptcy Rule 7050, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

**B.**     **Judicial Notice**

This Court takes judicial notice of the docket of these Cases maintained by the Clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and documents filed, all orders entered and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of these Cases.

**C.**     **Burden of Proof**

The proponents of the Plan have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**D.**     **Transmittal, Mailing Materials and Notice**

In accordance with the Solicitation Procedures Order, the Plan Proponents timely mailed the Solicitation Package to holders of Claims entitled to vote on the Plan, which contained the following materials: (1) a copy of the Solicitation Procedures Order; (2) a copy of the Plan and Disclosure Statement; (3) a Class 2a or Class 3 Ballot, as appropriate; and (4) a copy of the Joint Hearing Notice. As to those holders of Claims or Interests not entitled to vote on the Plan, the Office of the United States Trustee and all other parties requesting service of notices in the Debtors' Cases, the Plan Proponents timely mailed copies of: (1) the Joint Hearing Notice; (2) the Solicitation Procedures Order; and (3) the Plan and Disclosure Statement. Adequate and sufficient notice of the Joint Hearing, the Voting Deadline, the Objection Deadline and other requirements, deadlines, hearings and matters described in the Solicitation Procedures Order was provided in compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and no further notice is required. All parties-in-interest had the opportunity to appear and be heard at the Joint Hearing.

10-60702-rk    Doc 698    FILED 12/15/10    ENTERED 12/15/10 15:31:27    Page 4 of 64

**E.      Impaired Classes that Have Voted To Accept the Plan**

As evidenced by the Ballot Report, which certified both the method and results of the voting by Impaired Classes of Claims with respect to the Plan, Classes 2a and 3 are Impaired and have voted to accept the Plan pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code. Thus, at least one Impaired Class of Claims has voted to accept the Plan.

**F.      Classes Deemed To Have Accepted the Plan**

Classes 1 and 2b are not Impaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**G.      Classes Deemed To Have Rejected the Plan**

Class 4 is impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**H.      Compliance with Requirements of Section 1129 of the Bankruptcy Code**

   **1.      Section 1129(a)(1) of the Bankruptcy Code – Plan Compliance With Provisions of the Bankruptcy Code**

The Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

   **a.      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))**

Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Interests, other than Administrative Claims and Priority Tax Claims against the Debtors, which are not required to be classified. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class, and

5

therefore the Plan satisfies the requirement of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

### b. Specification of Impaired and Unimpaired Claims and Interests and Treatment Thereof

Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article IV of the Plan specifies which Claims and Interests are not Impaired and which Claims and Interests are Impaired. Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article V of the Plan also provides the same treatment for each Claim or Interest within a particular Class. Therefore, the Plan complies with sections 1123(a)(2)-(4) of the Bankruptcy Code.

### c. Means of Implementation (11 U.S.C. § 1123(a)(5))

The Plan provides adequate means for its implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

### d. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))

The Plan contemplates and mandates liquidation of the Debtors' Estates and remaining assets and, therefore, no securities will be issued. Therefore, the Plan complies with section 1123(a)(6) of the Bankruptcy Code.

### e. Selection of Directors and Officers (11 U.S.C. § 1123(a)(7))

The Plan contemplates and mandates liquidation of the Debtors' Estates and remaining assets, and therefore, no directors or officers will be appointed under the Plan. The Plan, however, appoints the Creditor Trustee to administer the Creditor Trust after confirmation of the Plan, with such Creditor Trustee being named by the Plan Proponents by that certain notice filed with the Court on December 6, 2010.

6

### f.    Compliance with Bankruptcy Rule 3016

The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).

### g.    Compliance with Bankruptcy Rule 3018

The solicitation of votes to accept or reject the Plan was conducted in accordance with the Solicitation Procedures Order and otherwise satisfies Bankruptcy Rule 3018. The Plan was transmitted to all Creditors entitled to vote on the Plan and those other parties entitled to notice under applicable law. Sufficient time was prescribed for such Creditors to accept or reject the Plan, and the solicitation materials and procedures comply with section 1126 of the Bankruptcy Code. The requirements of Bankruptcy Rule 3018 are thereby satisfied.

### 2.    Section 1129(a)(2) of the Bankruptcy Code – Plan Proponents' Compliance with Provisions of the Bankruptcy Code

The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3013, 3018 and 3019 and all applicable orders of this Court. The solicitation of acceptances or rejections of the Plan was (a) in compliance with the solicitation procedures set forth in the Solicitation Procedures Order, and (b) solicited after disclosure of adequate information as defined in section 1125(a) of the Bankruptcy Code to holders of Claims and Interests, and, therefore, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

7

### 3. Section 1128(a)(3) of the Bankruptcy Code – Plan Proposed in Good Faith and Not by Means Forbidden by Law

The Plan has been proposed in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan Proponents proposed the Plan with legitimate and honest purposes to preserve and protect the rights and interests of Creditors and all other parties in interest. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to effectuate the liquidation of the Debtors' Estates and remaining assets and distribute those assets to holders of Allowed Claims, in accordance with the priority scheme set forth in the Bankruptcy Code and pursuant to the mechanic set forth in Article V of the Plan and the Creditor Trust Agreement, by a Creditor Trust formed pursuant to the Plan and this Confirmation Order. Moreover, the Plan itself and the process leading to its formulation provide independent evidence that the Plan has been proposed in good faith, including, without limitation, the Committee's and the Debtors' collaborative effort in formulating and soliciting the Plan and the consent of the Pre-Petition Lenders thereto.

### 4. Section 1129(a)(4) of the Bankruptcy Code – Payment of Costs and Expenses

All payments made, or to be made, by the Debtors' Estates, for services or for costs and expenses in connection with these Cases or in connection with the Plan and incident to the Cases are reasonable and by this Confirmation Order hereby are approved as appropriate under the circumstances. The Court further finds that any fees and expenses payable to any Professional Persons retained in these Cases are subject to approval of this Court in accordance with applicable law. Therefore, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

8

### 5. Section 1129(a)(5) of the Bankruptcy Code – Disclosure of Identities of Officers, Directors and Insiders

Under the Plan, all of the Debtors' remaining assets (other than the Tax Refund) will be transferred to the Creditor Trust, and the Debtors will cease to exist. Thus, the Plan, having not identified anyone as successor, still meets the requirements of section 1129(a)(5) of the Bankruptcy Code because no one will be serving in any capacity of the Debtors.

### 6. Section 1129(a)(6) of the Bankruptcy Code – Rate Changes

Section 1129(a)(6) of the Bankruptcy Code is inapplicable to confirmation of the Plan because there are no rate changes provided for in the Plan over which a governmental regulatory commission will have jurisdiction.

### 7. Section 1129(a)(7) of the Bankruptcy Code – Best Interests of Creditors

With respect to each Impaired Class of Claims and Interests, each holder of a Claim or Interest of such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if each of the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### 8. Section 1129(a)(8) of the Bankruptcy Code – Acceptance of the Plan or Non-Impairment

Due to the Plan meeting the requirements set forth in section 1129(b) of the Bankruptcy Code, section 1129(a)(8) of the Bankruptcy Code does not have to be satisfied.

### 9. Section 1129(a)(9) of the Bankruptcy Code – Treatment of Claims Entitled to Priority

Except to the extent that the holder of a Claim agrees to different treatment of such Claim, the Plan provides that Administrative Claims will be paid in accordance with the

9

Bankruptcy Code, the Plan and the Creditor Trust Agreement. Therefore, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

### 10. Section 1129(a)(10) of the Bankruptcy Code – Acceptance by at Least One Impaired Class

Classes 2a and 3 are Impaired under the Plan. Pursuant to section 1129(a)(10) of the Bankruptcy Code, if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan must accept the plan, determined without including any acceptance of the plan by any insider. This requirement has been satisfied because Classes 2a and 3 have overwhelmingly voted to accept the Plan.

### 11. Section 1129(a)(11) of the Bankruptcy Code – Feasibility

Normally the feasibility test, used to determine if section 1129(a)(11) of the Bankruptcy Code has been satisfied, determines whether a reorganization plan can be successfully implemented. Because the Plan contemplates liquidation and transfer of all remaining assets of the Debtors' Estates to the Creditor Trust, and reorganization is not required, the feasibility test is satisfied based on the Plan Proponents' showing that there is a "reasonable probability" that the provisions of the Plan can be performed. Therefore, section 1129(a)(11) of the Bankruptcy Code is satisfied.

### 12. Section 1129(a)(12) of the Bankruptcy Code – Payment of Fees

The Debtors have paid or, pursuant to Section 9.2 of the Plan, shall pay, on or prior to the Effective Date, all amounts due under 28 U.S.C. § 1930, and therefore, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### 13. Sections 1129(a)(13)-1129(a)(16) of the Bankruptcy Code

There are no retirement benefits owed by the Debtors, the Debtors are not required to pay domestic support obligations, the Debtors are not individuals and transfers of property of the

Plan will be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a trust that is not a moneyed, business or commercial corporation or trust. Therefore, the final four subsections of section 1129(a) of the Bankruptcy Code are inapplicable to the Debtors.

### 14. Section 1129(b) of the Bankruptcy Code – Cramdown

Section 1129(b) of the Bankruptcy Code allows for the Plan to be confirmed, notwithstanding an Impaired Class rejecting the Plan, if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired, under, and has not accepted the plan." 11 U.S.C. § 1129(b)(1). But, one Impaired Class must nevertheless accept the Plan for this Court to approve the Plan under section 1129 of the Bankruptcy Code. Here, two impaired Classes – Class 2a and Class 3 – have accepted the Plan, and the remaining Classes, which are subject to cramdown under section 1129(b) of the Bankruptcy Code, have been treated fairly and equitably and without unfair discrimination according to the standards set forth in section 1129(b) of the Bankruptcy Code.

### 15. Section 1129(c) of the Bankruptcy Code – No Other Plan

The Plan Proponents seek confirmation of the Plan, as modified, a copy of which is attached to this Confirmation Order as Exhibit A.[4] No other entity has proposed a plan contradicting the current Plan. Therefore, section 1129(c) of the Bankruptcy Code has been satisfied.

### 16. Section 1129(d) of the Bankruptcy Code – Avoidance of Taxes

The principal purpose of this Plan is not the avoidance of taxes or the avoidance of the Securities Act of 1933, but for the liquidation and distribution of the remaining assets of the

---

[4]     A redline of the Plan, reflecting those non-material modifications made since the date of the filing of the Plan, is attached to this Confirmation Order as Exhibit B.

11

Debtors and their Estates. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## H.    Compliance with Section 1125(e) of the Bankruptcy Code

Based on the record before the Court in these Cases, the Plan Proponents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and as otherwise provided herein.

## I.    Retention of Causes of Action/Reservation of Rights.

As disclosed in the Disclosure Statement and as provided in the Plan, it is anticipated that a source of funds for payments to Creditors under the Plan will be recoveries from existing or potential Causes of Action commenced by or on behalf of the Debtors, their Estates and/or the Creditor Trust, which Causes of Action may include: (i) any and all Causes of Action pursuant to any applicable section of the Bankruptcy Code, including Avoidance Actions; (ii) objections to Claims; and (iii) claims against the Potential Insider Defendants based on: (a) breaches of fiduciary duties (both prior to and after the Petition Date); (b) aiding and abetting breaches of fiduciary duties; (c) piercing the corporate veil; (d) conversion; (e) fraud; (f) negligence; (g) negligent misrepresentation; (h) waste of corporate assets; and (i) equitable subordination of Claims. The above list of potential claims against the Potential Insider Defendants is not exhaustive, and if a specific Cause of Action or defendant is not identified thereon, it is because such Cause of Action or defendant is not known to the Debtors or the Creditor Trustee at this

12

time. On behalf of the Debtors and their Estates, the Debtors preserve for the Creditor Trust the rights to any Causes of Action that may be identified on or after the Confirmation Date. The recoveries, if any, from any litigation brought by the Creditor Trust will depend on many factors, which cannot be predicted at this time. The Creditor Trustee may in his sole discretion elect not to pursue any Causes of Action (including Avoidance Actions) the pursuit of which the Creditor Trustee deems not to be in the best interest of the Estates or the Creditor Trust.

This Court hereby finds that provisions in the Disclosure Statement, Plan and this Confirmation Order relating to retention of Causes of Action/reservation of rights shall be sufficient for all purposes to satisfy the requirements of the standard set forth in *Browning v Levy*, 283 F.3d 761 (6th Cir. 2002).

**J.      Objections to Confirmation of the Plan and/or Approval of the Disclosure Statement**

The following creditors or parties-in-interest (collectively, the "*Objecting Parties*") filed objections to the confirmation of the Plan and/or approval of the Disclosure Statement (collectively, the "*Objections*"): (1) Oldcastle Materials, Inc. ("*Oldcastle*"); (2) Department of the Treasury, Internal Revenue Service (the "*IRS*"); (3) Ohio Department of Taxation and Bureau of Workers' Compensation ("*Ohio*"); (4) Allen Concrete & Masonry, Inc. and Allen Concrete Pumping (collectively, "*Allen Concrete*"); and (5) Timothy Taylor.

### ORDER

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**Approval of the Disclosure Statement and Confirmation of the Plan**

1.      The Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Court and is hereby approved.

13

2.      The Plan shall be, and hereby is, confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. Any modifications to the Plan shall be, and hereby are, approved and are incorporated into and made part of the Plan. Each and every provision of the Plan is incorporated by reference into, and is made an integral part of, this Confirmation Order as if the Plan were set forth in its entirety in this paragraph. Further, the provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

**Objections to Confirmation of the Plan or Approval of the Disclosure Statement**

3.      All Objections to confirmation of the Plan or approval of the Disclosure Statement, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Joint Hearing, or resolved pursuant to this Confirmation Order, are hereby expressly overruled.

4.      Ohio Objection. The Objection of Ohio is overruled. The Bankruptcy Court provided Ohio with the option to elect to certain modifications to Section 7.20 of the Plan. Ohio has exercised this option, and the Plan, as attached hereto as Exhibit A, has been modified in accordance with the Bankruptcy Court's remarks on the record and as agreed between the Committee, the Debtors and Ohio.

5.      IRS Objection. Based on the evidence submitted at the Joint Hearing and the proffers offered by counsel to the Committee, the Debtors and the Pre-Petition Lenders concerning the clear intention of the parties in preparing the Core Sale Order, the Objection of the IRS raised at the Confirmation Hearing is overruled. In resolution of the other objections of the IRS raised in its Objection, the Creditor Trustee will make quarterly distributions to the IRS, with respect to its Allowed Priority Tax Claim, in equal installments in Cash, beginning on the

14

Effective Date (or as soon as practicable following the date the IRS's Claim becomes an Allowed Priority Tax Claim) and through the fifth year following the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Further, approval of this Confirmation Order shall not be deemed consent by the United States to any actions or jurisdiction of any Court nor a waiver of any rights it may have if these Cases are dismissed.

6. <u>Allen Concrete Objection</u>. The Allen Concrete Objection has been resolved pursuant to Schedule 7.4 of the Plan. The Creditor Trustee is hereby authorized to execute on behalf of itself, the Debtors and their Estates and the Committee, and file with the Bankruptcy Court, a stipulation resolving, among other things, ACM's and ACP's asserted secured and administrative expense claims against the Debtors' estates, within three (3) days of the entry of this Confirmation Order without a motion or further hearing before the Bankruptcy Court. Upon such filing, the stipulation shall be automatically approved and the parties authorized to act in accordance therewith.

7. <u>Oldcastle Objection</u>. In full settlement of the Objection filed by Oldcastle, Oldcastle shall have an Allowed Agreed Administrative Claim in the amount of $75,000 (the "*Oldcastle AAA Claim*"), constituting an Allowed Administrative Claim not subject to further challenge, review, objection, offset (other than as provided in this paragraph) or otherwise; provided, however, that Oldcastle's $9,000 contribution obligation owed to the Debtors pursuant to the Agreed Order (Docket No. 674) regarding the Settlement Agreement and Release attached thereto shall be satisfied by an offset against the Oldcastle AAA Claim. Notwithstanding anything in this Confirmation Order, the Plan or the Creditor Trust Agreement to the contrary, the Oldcastle AAA Claim (in the net amount of $66,000) shall be paid to Oldcastle in Cash no later than the Effective Date. In exchange for the foregoing, Oldcastle hereby agrees to

10-60702-rk    Doc 698    FILED 12/15/10    ENTERED 12/15/10 15:31:27    Page 15 of 64

withdraw, with prejudice, its Objection and its Motion of Oldcastle Materials, Inc. for Allowance of Administrative Expense Claims (Docket No. 680).

8.    Taylor Objection. Mr. Taylor's objection to approval of the Disclosure Statement has been resolved. No later than December 30, 2010, Mr. Taylor shall file a proof of claim (the "*Taylor Claim*") by submitting the same to The Garden City Group, Inc. ("*Garden City*") by first class mail at The Garden City Group, Inc., Attn: Schwab Industries Claims Processing, P.O. Box 9402, Dublin, Ohio 43017-4502, setting forth his claims against the Debtors' Estates or be forever barred. So long as the Taylor Claim is received by Garden City not later than December 30, 2010, the Plan Proponents and the Creditor Trustee hereby agree not to object to the Taylor Claim on timeliness grounds, but reserve all rights to object to the Taylor Claim on substantive grounds in accordance with the Plan and the Creditor Trust Agreement. In consideration for the foregoing, Mr. Taylor has agreed to withdraw his objection to the Disclosure Statement.

**Effects of Confirmation**

9.    Binding Effect. In accordance with the provision of section 1141 of the Bankruptcy Code and immediately upon entry of the Confirmation Order, the Plan and all of its provisions shall be, and hereby are, binding upon the Debtors, any Person acquiring or receiving property or a distribution under the Plan, any lessor or lessee of property to or from the Debtors, any past, present, or future Creditor of the Debtors and any holder of a Claim against or Interest in the Debtors, whether or not such Claim or Interest of such holder is Impaired under the Plan, whether known or unknown, and whether or not such holder has accepted or rejected the Plan or will or will not receive a distribution under the Plan.

10.    Subject to the terms of the Plan and this Confirmation Order, all prior orders of this Court entered in these Cases, all documents and agreements executed by the Debtors as

16

authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date shall be, and hereby are, binding upon and shall inure to the benefit of the Creditor Trust.

11.    The form, terms and provisions of the Creditor Trust Agreement, a copy of which is attached as Exhibit C, and any other documents executed and delivered in connection therewith (collectively, the "*Plan Related Documents*") are hereby approved and each of the Plan Related Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with its terms (except as enforceability may be limited by any bankruptcy or insolvency proceeding filed by any party thereto subsequent to the date of the execution of such document).  The appointment of John B. Pidcock as the initial Creditor Trustee is hereby approved.

12.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and the Plan Related Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

13.    Executory Contracts and Unexpired Leases.    The executory contract and unexpired lease provisions of Article VI of the Plan shall be, and hereby are, approved.  Each executory contract or unexpired lease of the Debtors that has not expired by its own terms or been assumed prior to the Confirmation Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Confirmation Date.

14.    All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.1 of the Plan shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court by the Bar Date, or if an executory contract or unexpired lease is rejected after the Bar Date, by no later than

17

thirty (30) days after the Confirmation Date. The Claims of any Creditor arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.1 of the Plan that fails to timely file a proof of claim shall be released, discharged and forever barred from assertion against the Debtors, their Estates or their property.

15. Termination of Pension Plan; PBGC Claims. From and after the Confirmation Date, the Creditor Trustee will oversee the termination of the Pension Plan according to the terms and conditions of the Pension Plan and effected in conformity with all statutory and regulatory requirements, including any applicable notice provisions. Alternatively, to the extent permitted by the Bankruptcy Code, the Pension Plan will be deemed rejected as of the Confirmation Date. Any undistributed, vested benefits of the terminated Pension Plan will be distributed to the participants of the Pension Plan, as provided by statute, the applicable regulations and the Pension Plan's provisions. In order to ensure that the Pension Plan's termination complies with the terms of the Pension Plan, applicable statutes and regulations, the Debtors, the Creditor Trustee or the Plan Administrator (as defined in the Pension Plan) will obtain any necessary approvals of the relevant regulatory agencies, such as the PBGC, the Internal Revenue Service and the U.S. Department of Labor, in respect of such terminations. To the extent that such processes require additional time or expense to complete after the Confirmation Date, the Plan Administrator shall be responsible for completing such process and such costs will be paid from the assets of the Pension Plan. The Debtors and the Creditor Trustee do not waive any objections they may have to any of the PBGC's Claims. The Bankruptcy Court shall retain jurisdiction over any disputes relating to the termination of the Pension Plan and the Creditor Trustee shall have standing to object to any Claim filed by the PBGC with respect to the Pension Plan.

18

16.     Unimpaired Claims. All Class 1 and 2b Claims are not Impaired by the Plan in accordance with section 1124 of the Bankruptcy Code and shall survive confirmation of the Plan. All Professional Persons requesting payment of Professional Fee Claims and all other persons requesting payments of Other Administrative Expense Claims arising after July 12, 2010 shall be entitled to file an application for allowance of such Claims until not later than thirty (30) days after the Confirmation Date. In conjunction therewith, the Plan Proponents shall serve a notice of entry of this Confirmation Order and Administrative Claims bar date to all known or anticipated holders of Administrative Claims by U.S. mail within three (3) days following the Confirmation Date. Objections to any applications from holders of Professional Fee Claims or Other Administrative Expense Claims arising after July 12, 2010 must be written, filed with the Bankruptcy Court, and served on the applicable parties within forty-five (45) days after such application is filed. Any dispute with respect to any other unimpaired Claim may be determined, resolved or adjudicated, as the case may be, with respect to the Creditor Trust in the manner in which such dispute would have been determined, resolved or adjudicated if these Cases had not been commenced, with this Court expressly retaining jurisdiction to adjudicate any such dispute. Moreover, notwithstanding anything in this Confirmation Order or the Plan to the contrary, no Other Administrative Expense Claim arising before July 12, 2010 that is not properly evidenced by a proof of claim or application for allowance of such Claim filed in advance of the applicable bar date shall be deemed an Allowed Other Administrative Expense Claim and shall be disallowed and forever barred. Except as otherwise provided in the Plan, nothing under the Plan or this Confirmation Order shall affect the Creditor Trust's rights in respect of any unimpaired Claims, including, but not limited to, all rights in respect of legal and equitable defenses to or setoff, or recoupments against such unimpaired Claims.

17.    Injunctions and Stays Remain in Effect until Effective Date.  All injunctions and stays pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise shall remain in full force and effect through the termination of the Creditor Trust and the imposition of the injunction set forth in Section 7.16 of the Plan; provided, however, that no Person will be stayed or enjoined from exercising or enforcing their rights, remedies and interests with respect to: (i) that certain adversary case pending in the Bankruptcy Court as Adversary Case No. 10-06097 or any of the claims, demands, causes of action or remedies asserted therein; (ii) any rights under that certain Assignment of Rights in Agreement Regarding Earnout Payments, dated June 2, 2010, between SMI and KeyBank; and (iii) the Tax Refund.

**Matters Relating to Implementation of the Plan**

18.    Vesting of Assets.  Within seven (7) days of the Confirmation Date, all assets of the Debtors and their Estates, other than the Tax Refund (collectively, the "*Creditor Trust Assets*") shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  In the event KeyBank, on behalf of the Pre-Petition Lenders, provides written direction to the Creditor Trustee (on behalf of the Debtors or the Creditor Trust) to incur any fees and expenses necessary and appropriate in KeyBank's sole discretion to prosecute the Tax Refund and respond to any related issues (the "*Authorized Fees and Expenses*"), pursuant to KeyBank's and the Pre-Petition Lenders' rights under the Core Sale Order, any such Authorized Fees and Expenses shall be satisfied by KeyBank, in its capacity as agent for the Pre-Petition Lenders, and shall be reimbursed to KeyBank through the Tax Refund prior to calculating the actual amount of recovery realized upon the Tax Refund for purposes of the sharing agreement set forth in the Core Sale Order.  Neither KeyBank nor the Pre-Petition Lenders shall have any obligation to direct the Creditor Trustee (on behalf of the Debtors or the

20

Creditor Trust, as the case may be) to prosecute the Tax Refund or otherwise respond to any related issues or matters, including, but not limited to, responding to any audit. KeyBank shall be authorized to abandon the Pre-Petition Lenders' rights, claims, interests and Liens on the Tax Refund in its sole discretion by formal written notice to the Creditor Trustee (on behalf of the Debtors or the Creditor Trust), in which case, the Creditor Trustee shall have all of the rights of KeyBank and the Pre-Petition Lenders solely with respect to the Tax Refund as set forth herein. The Creditor Trust Assets include, without limitation, all Cash in the possession of the Debtors (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims), the Settlement Amount, all Avoidance Actions and Miscellaneous Causes of Action, the 503(b)(9) Fund, the Administrative Expense Fund, all rights of the Debtors under the Plan, the Confirmation Order and all other orders entered by the Bankruptcy Court in these Cases on or prior to the Confirmation Date, and all books and records related to the Estates. The Creditor Trust Assets shall also include all remaining real property and personal property of the Debtors.

19.     For the avoidance of doubt, all property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 Claims and shall not be deemed property of the Debtors. Additionally, proceeds of the Settlement Amount obtained for General Unsecured Creditors from the Pre-Petition Lenders shall be distributed only to the holders of Allowed Class 3 General Unsecured Claims, proceeds of collateral subject to the Pre-Petition Lenders' Liens shall be distributed only to the holders of Allowed Class 2a Secured Claims until the Pre-Petition Lenders have received distributions on their Allowed Secured Claims totaling $51,000,000 and, thereafter, all further distributions to the Pre-Petition Lenders of Net Proceeds from the Creditor

Trust shall be subject to the sharing formula appended to the Core Sale Order, the 503(b)(9) Fund shall be distributed only to the holders of Allowed 503(b)(9) Claims and the Administrative Expense Fund shall be distributed only to the holders of Allowed Administrative Claims; provided, however, that the Settlement Amount may be used to pay Allowed Administrative Claims or satisfy the Trustee's Expenses pursuant to any budget approved by the Oversight Committee.

20.     Nothing in the Plan shall preclude payment of: (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Confirmation Date; and (ii) the Trustee's Expenses in accordance with the Plan and the Creditor Trust Agreement from any other assets held by the Creditor Trust. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of their property to the Creditor Trust, subject to oversight from the Oversight Committee or the Creditor Trustee, as applicable.

21.     Substantive Consolidation of Debtors' Estates.  Effective as of the date of this Confirmation Order, each of the Debtors' Estates shall be substantively consolidated into the Estate of SII. On the Confirmation Date, and except as otherwise provided in the Plan: (i) all guaranties of any Debtor of the payment, performance or collection of another Debtor shall be deemed eliminated and cancelled; (ii) any obligation of any Debtor and all guaranties thereof executed by another Debtor or Debtors shall be treated as a single obligation and any obligation of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, shall be treated and allowed only as a single Claim against the consolidated Debtors; and (iii) each Claim filed or to be filed against any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a single Claim against and a single obligation of the

22

consolidated Debtors. On the Confirmation Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guaranties of collection, payment or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect. Except as set forth in Section 7.1.1 of the Plan, such substantive consolidation shall not (other than for purposes related to the Plan) cause any Debtor to be liable under the Plan for any Claim for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such substantive consolidation. On the Confirmation Date, the Intercompany Claims of Debtors against any other Debtors shall be extinguished and cancelled.

22. Creditor Trust Administration. The Creditor Trustee shall administer the Creditor Trust's assets pursuant to the Plan and the Creditor Trust Agreement from and after the Confirmation Date. The Creditor Trustee shall be responsible for liquidating the Creditor Trust Assets and distributing the Net Proceeds to the beneficiaries of the Creditor Trust pursuant to the Plan and the Creditor Trust Agreement.

23. Chapter 11 Case Administration. From and after the Confirmation Date and continuing through the date that a final decree closing these Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Cases. In addition to the foregoing, for all matters arising in, arising under or related to the Debtors or these Cases, the Creditor Trustee shall: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) have the right to obtain records of, or related to, the Debtors (including, without limitation, bank statements and cancelled checks); (iii) have the right to sign

23

or otherwise execute documents, receive funds and direct transfers to third parties (including without limitation, with respect to the Tax Refund) on behalf of the Debtors; (iv) be entitled to notice and opportunity for hearing; (v) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (vi) have exclusive standing (including derivative standing to pursue Causes of Action on behalf of the Debtors) to commence Avoidance Actions and Miscellaneous Causes of Action; (vii) be entitled to request the Bankruptcy Court to enter a final decree closing the Cases; (viii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in these Cases; and (ix) be authorized to designate the allocation of the funds remaining in the 503(b)(9) Fund and the Administrative Expense Fund as of the Confirmation Date, following consultation with, and subject to the approval of, the Oversight Committee.

24.     Dissolution of the Debtors. Promptly after: (i) the Creditor Trustee completes the Debtors' wind-down (including, without limitation, closing any pending sale(s) of real estate); (ii) ACP is dissolved; and (iii) a final determination is made with respect to the Tax Refund, the Creditor Trustee is hereby authorized to allow the applicable Secretary of State to involuntarily dissolve each of the Debtors. The Creditor Trustee shall thereafter have standing to assert claims or pursue matters on behalf of the Debtors to the extent necessary to preserve, protect and liquidate the Creditor Trust Assets or otherwise necessary to administer the Creditor Trust or any matter related to the Tax Refund.

25.     Closing of Debtors' Cases Other Than the SII Case. The Cases of MCC, MSC, QBS, TCC, SRM, SMI, OIS and ECC shall be deemed closed as of the entry of this Confirmation Order and the substantive consolidation of the foregoing Estates into the Estate of SII, and the Clerk of Court shall take all necessary actions to effectuate the closing of such

Cases. Upon such event, the Creditor Trustee may file all Causes of Action and objections to Claims in the SII Case, and not in any other individual Debtor Case, notwithstanding the fact that the transferring Debtor (in an Avoidance Action) or the Debtor against whom the Claim was filed (in a Claim objection proceeding) may be a Debtor other than SII.

26. Name Change; Transfer of Remaining Trade Names to Oldcastle. Upon the Confirmation Date, the Debtors shall thereafter be referred to, collectively, as "SII Liquidation Company." The Debtors shall take any actions as necessary, including, without limitation, registering such name change with the appropriate secretary of state, to effect such name change.

27. From and after the Confirmation Date, the caption of these Cases shall be modified as follows:

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SII LIQUIDATION COMPANY, | ) | Case No. 10-60702-rk |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Russ Kendig |

All parties filing pleadings, notices or other documents in these Cases shall use the forgoing case caption, and the Clerk of the Court is hereby ordered to modify the docket maintained for these Cases on the Court's PACER system to reflect the modified caption.

28. Effective upon the Confirmation Date, all trade names of the Debtors, including without limitation, the trade names associated with SII, MCC, MSC, QBS, TCC, SRM, SMI, OIS and ECC shall be indefeasibly and permanently transferred to Oldcastle.

29. Dissolution of Committee. The Committee shall terminate automatically upon the acceptance by the Creditor Trustee of its appointment in accordance with this Plan and the Creditor Trust Agreement following the Confirmation Date. Upon termination of the Committee, the Committee shall be dissolved and its members shall be deemed released of their

duties and responsibilities in connection with the Cases or the Plan and its implementation, and the retention or employment of the Committee's counsel shall terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

**Injunctions and Related Provisions**

30.     Preservation of Rights of Action.  Except as otherwise provided in the Plan, in this Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Creditor Trust shall retain and may exclusively enforce any Avoidance Actions, the Miscellaneous Causes of Action or other causes of action or rights to payment of claims that the Debtors or their estates may hold against any Person or entity.  The Creditor Trust may pursue such retained Avoidance Actions, the Miscellaneous Causes of Action, other causes of action and rights to payment of claims, as appropriate, in accordance with the best interests of the Creditor Trust and its beneficiaries.  The Creditor Trust shall retain and may enforce all defenses, counterclaims and rights against all Claims and Interests asserted against the Debtors or their estates.

31.     Permanent Injunction.     Except as otherwise provided in the Plan or the Confirmation Order, on and after the Confirmation Date, all Persons and entities who have held, hold or may hold Liens, Claims or Interests in or against the Debtors are, with respect to any such Liens, Claims or Interests, permanently enjoined from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Creditor Trust or any of their property, or any

26

direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors or the foregoing Creditor Trust, or any property of any such transferee or successor; (ii) enforcing against, levying upon or attaching (including, without limitation, any pre-judgment attachment) the Debtors or the Creditor Trust, or any property of any such transferee or successor; (iii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree, claim or order against the Debtors or the Creditor Trust, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the Debtors or the Creditor Trust; (iv) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Liens, Claims or Interests of any kind against or in the Debtors or the Creditor Trust, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtors or the Creditor Trust; (v) other than as otherwise expressly provided for in this Plan, asserting any right of setoff, subordination or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, the Creditor Trust, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, the Debtors or the Creditor Trust; and (vi) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of this Plan.

32.     Notwithstanding the injunction set forth in Paragraph 31 of this Confirmation Order, nothing contained herein or in the Plan shall prohibit, preclude, limit or otherwise impair the rights of (i) any Person to enforce their rights, remedies and interests with respect to: (a) that certain adversary case pending in the Bankruptcy Court as Adversary Case No. 10-06097 or any of the claims, demands, causes of action or remedies asserted therein; (b) any rights under that

27

certain Assignment of Rights in Agreement Regarding Earnout Payments, dated June 2, 2010, between SMI and KeyBank; and (c) the Tax Refund; or (ii) KeyBank or any of the Pre-Petition Lenders to file a motion with the Bankruptcy Court seeking relief from the injunction and stay provisions of the Plan, including, without limitation, Sections 7.16 and 7.17 thereof, with respect to matters concerning the administration or liquidation of the Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders.

33.     Exculpation and Limitation of Liability.  Neither the Committee, the Pre-Petition Lenders, the Creditor Trustee, the Debtors (excluding the Schwab Family Members) nor any of their respective present and former members, officers, directors, shareholders, subsidiaries, affiliates, employees, advisors, attorneys or agents acting in such capacity or any of their successors or assigns (but in all cases, excluding the Schwab Family Members), shall have or incur any liability to, or be subject to any right of action by, any person or entity, for any act or omission in connection with, relating to or arising out of, the Cases, the pursuit of confirmation of the Plan or the Plan's implementation, except for their fraud, willful misconduct or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

34.     Closing of the SII Case; Structured Dismissal.  The SII Case shall not be closed, or if closed shall remain subject to re-opening pursuant to section 350 of the Bankruptcy Code, until the Creditor Trust Assets have been fully administered and any Tax Refund is fully adjudicated.   If, prior to the Effective Date, the Creditor Trustee determines, following consultation with the Oversight Committee, that the Creditor Trust will be unable to generate sufficient cash proceeds from the liquidation of Creditor Trust Assets to pay Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Claims in full, it may,

28

upon approval by the Oversight Committee, file a notice of dismissal of the SII Case pursuant to section 1112(b) of the Bankruptcy Code, which shall be deemed immediately effective and which shall not require further approval of this Court.

35.     Following such dismissal, the Creditor Trustee shall, following consultation with, and approval by, the Oversight Committee: (i) oversee the liquidation of the Creditor Trust Assets and distribution of the Net Proceeds through the commencement of dissolution proceedings in the Common Pleas Courts of Cuyahoga County, Ohio, including, without limitation, conducting a Claims reconciliation process and distributing Net Proceeds (not including the Settlement Amount, collateral subject to the Liens of the Pre-Petition Lenders, the 503(b)(9) Fund or the Administrative Expense Fund other than as directed below) to holders of Allowed Claims according to the priority scheme set forth in the Bankruptcy Code, Pro Rata; (ii) distribute the Settlement Amount to the holders of Allowed Class 3 General Unsecured Claims, Pro Rata; (iii) distribute Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders to holders of Allowed Class 2a Secured Claims, Pro Rata, until the Pre-Petition Lenders have received $51,000,000 with respect to their Allowed Secured Claims, at which point any future Net Proceeds of such collateral shall be distributed to holders of Allowed Class 2a Secured Claims and Allowed Class 3 General Unsecured Claims pursuant to the sharing formula appended to the Core Sale Order; (iv) distribute the 503(b)(9) Fund to holders of Allowed 503(b)(9) Claims, Pro Rata; and (v) distribute the Administrative Expense Fund to holders of Allowed Administrative Claims, Pro Rata. The Debtors, their Creditors and all other parties-in interest hereby consent to the substantive consolidation of the Debtors into SII, the dismissal of the SII Case and the jurisdiction of the Common Pleas Courts of Cuyahoga County, Ohio to supervise its dissolution.

29

36.     In the event of a dismissal of the SII Case pursuant to Paragraphs 34 and 35 of this Confirmation Order, the Creditor Trustee shall have standing to commence, prosecute and settle Avoidance Actions and Miscellaneous Causes of Action in the Bankruptcy Court, with all Net Proceeds of such Causes of Action to be distributed to holders of Allowed Claims according to the priority scheme set forth in the Bankruptcy Code, Pro Rata, and the Bankruptcy Court shall retain jurisdiction over the Avoidance Actions and Miscellaneous Causes of Action notwithstanding the dismissal of the Cases.

**Retention of Jurisdiction**

37.     Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over these Cases and related matters after the Confirmation Date and after the Effective Date, as legally permissible, as and to the extent provided in Article X of the Plan.

**Payment of Statutory And Other Fees**

38.     The Creditor Trustee shall pay:  (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Confirmation Date; and (ii) the Trustee Expenses in accordance with the Plan and the Creditor Trust Agreement.

**Creditor Trust Professional Fees**

39.     All reasonable professional fees for services rendered following the Confirmation Date shall be paid by the Creditor Trust in accordance with the Plan and the Creditor Trust Agreement, without the need for further Court authorization or entry of a Final Order.  If the Creditor Trust and any of its professionals cannot agree on the amount of post-Effective Date fees and expenses to be paid to such professional, such amount shall be determined by this Court pursuant to the dispute resolution procedures set forth in the Creditor Trust Agreement.

30

## Notice of Entry of Confirmation Order

40.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Plan Proponents shall be, and hereby are, directed to serve a notice of entry of this Confirmation Order on all holders of Claims and Interests to whom the Joint Hearing Notice was mailed and the United States Trustee no later than three (3) business days after the Confirmation Date. Notwithstanding the foregoing, the Plan Proponents shall be, and hereby are, directed to serve copies of the Confirmation Order on each party that has filed a notice of appearance in these Cases and on each Objecting Party, no later than fourteen (14) days after the Confirmation Date. No further notice of the entry of this Confirmation Order shall be required.

## Effect of Reference to the Plan in this Confirmation Order

41.     The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## Retention of Causes of Action/Reservation of Rights.

42.     Except as specifically provided in the Plan or this Confirmation Order, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or Causes of Action (including any Avoidance Actions) that

31

the Debtors or the Creditor Trust, as the case may be, may have or which the Creditor Trustee may choose to assert on behalf of the Estates or the Creditor Trust in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) the avoidance of any transfer by or obligation of any of the Estates or the Debtors under chapter 5 of the Bankruptcy Code or the recovery of the value of such transfer, (ii) the turnover of any property of the Estate, or (iii) any other Cause of Action not specifically released pursuant to the Plan.

43. Except as specifically provided in the Plan or in this Confirmation Order, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action (including Avoidance Actions) or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Creditor Trust or the Creditor Trustee, as the case may be, shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action (including Avoidance Actions) or other legal or equitable defenses which the Debtors, the Estates, the Creditor Trust or the Creditor Trustee or any of them had immediately prior to the Petition Date fully as if the Cases had not been commenced, and all legal and equitable rights of the Debtors respecting any Claim, Cause of Action (including Avoidance Actions) or other legal or equitable defense left unimpaired by the Plan may be asserted after the Confirmation Date by the Creditor Trust or the Creditor Trustee to the same extent as if the Cases had not been commenced.

44. ALL CAUSES OF ACTION SHALL SURVIVE CONFIRMATION AND THE COMMENCEMENT OR PROSECUTION OF CAUSES OF ACTION SHALL NOT BE BARRED OR LIMITED BY ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR

32

OTHERWISE. The Creditor Trustee's right to commence and prosecute Causes of Action (including Avoidance Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan. No defendant party to any Cause of Action (including an Avoidance Action) shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect upon the commencement and prosecution of Causes of Action (including Avoidance Actions).

**Reversal**

45.     If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to the Creditor Trust's receipt of written notice of any such order; nor shall such reversal, modification or vacatur of this Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan and the Plan Related Documents or any amendments or modifications thereto.

**Headings**

46.     Headings utilized herein are for the convenience of reference only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

**Post-Confirmation Date Status Conference**

    47.   A status hearing on post-confirmation issues is hereby scheduled for *January 27*, 2011, *at 2 p.m.*

    **IT IS SO ORDERED.**

                # # #

Submitted by:

| | |
|---|---|
| /s/ Daniel A. DeMarco<br>Lawrence E. Oscar (0022696)<br>Daniel A. DeMarco (0038920)<br>Christopher W. Peer (0076257)<br>HAHN LOESER & PARKS LLP<br>200 Public Square, Suite 2800<br>Cleveland, Ohio 44114<br>Telephone:  216-621-0150<br>Facsimile:  216-241-2824<br>E-mail:     leoscar@hahnlaw.com<br>             dademarco@hahnlaw.com<br>             cpeer@hahnlaw.com<br><br><br>*Counsel for the Debtors and*<br>*Debtors-in-Possession* | /s/ Aaron L. Hammer<br>Aaron L. Hammer, Esq.<br>Richard S. Lauter, Esq.<br>Thomas R. Fawkes, Esq.<br>FREEBORN & PETERS LLP<br>311 South Wacker Drive, Suite 3000<br>Chicago, Illinois 60606-6677<br>Telephone:  312-360-6000<br>Facsimile:  312-360-6520<br>E-mail:     ahammer@freebornpeters.com<br>             rlauter@freebornpeters.com<br>             tfawkes@freebornpeters.com<br><br><br>*Counsel to the Official Committee*<br>*of Unsecured Creditors* |

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SCHWAB INDUSTRIES, INC., *et al.*,[1] | ) | Case No. 10-60702-rk |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |
| | ) | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION DATED OCTOBER 26, 2010

The above-captioned debtors and debtors-in-possession (collectively, the "*Debtors*") and the Official Committee of Unsecured Creditors (the "*Committee*"), hereby submit this First Amended Joint Plan of Liquidation (the "*Plan*") pursuant to section 1123 of the Bankruptcy Code:

### ARTICLE I

### Definitions

The following terms, when used in the Plan shall, unless the context otherwise requires, have the following meanings, respectively:

1.1     "**503(b)(9) Claim**" shall mean a Claim of a Creditor of the kind specified in section 503(b)(9) of the Bankruptcy Code and that was filed by the Bar Date pursuant to the procedures set forth in the Bar Date Order.

1.2     "**503(b)(9) Fund**" shall mean the $500,000 in Cash provided by Oldcastle to pay 503(b)(9) Claims, which is expressly preserved solely for the benefit of holders of 503(b)(9) Claims.

1.3     "**ACP**" shall mean Allen Concrete Pumping, a Florida Partnership, fifty percent (50%) owned by SRM.

1.4     "**Administrative Claim**" shall mean a Claim of a Creditor of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the

---

[1]     The Debtors in these Cases, along with the last four digits of each Debtor's tax identification number are: Schwab Industries, Inc. (2467); Medina Cartage Co. (9373); Medina Supply Company (3995); Quality Block & Supply, Inc. (2186); O.I.S. Tire, Inc. (7525); Twin Cities Concrete Company (9196); Schwab Ready-Mix, Inc. (8801); Schwab Materials, Inc. (8957); and Eastern Cement Corp. (7232).

10-60702-rk    Doc 698    FILED 12/15/10    ENTERED 12/15/10 15:31:27    Page 36 of 64

Bankruptcy Code, and shall include: (i) any actual and necessary costs and expenses incurred by the Debtors after the Petition Date with respect to preserving the Estates and operating the Debtors' businesses; (ii) any Professional Fee Claims approved by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code; and (iii) all fees and charges properly assessed against the Estates pursuant to 28 U.S.C. § 1930. Pursuant to the Bar Date Order, all Administrative Claims (other than Professional Fee Claims) were required to be filed prior to the Bar Date and in accordance with the Bar Date Order. Pursuant to the Bar Date Order: (i) 503(b)(9) Claims were required to be submitted no later than the Bar Date pursuant to the proof of claim form (with the appropriate checked box); and (ii) all holders of Other Administrative Expense Claims (other than holders of 503(b)(9) Claims) were required to seek allowance of their Administrative Claim by the Bar Date. Those Administrative Claims (other than Professional Fee Claims and those Claims identified on Schedule 1.6 to this Plan as Agreed Administrative Claims) not filed by the Bar Date and pursuant to the procedures established by the Bar Date Order shall be forever barred and disallowed as untimely. Notwithstanding the foregoing, Administrative Claims shall also include post-petition expenses of the Debtors that the Creditor Trustee otherwise believes should be paid as administrative expenses of the Estates.

1.5 **"Administrative Expense Fund"** shall mean the $900,000 in Cash provided by Oldcastle under the Core Sale Order to pay Allowed Administrative Claims, which is expressly preserved solely for the benefit of holders of Allowed Administrative Claims.

1.6 **"Agreed Administrative Claims"** shall mean the Claims identified on **Schedule 1.6** to this Plan, which Administrative Claims are known to the Debtors to have existed on the date this Plan was filed with the Court and remain unpaid as of such date. Agreed Administrative Claims remain subject to objection for substantive reasons, but the Creditor Trustee shall not object to such Agreed Administrative Claims for failure to file a proof of claim prior to the Bar Date so long as such Creditors holding Agreed Administrative Claims actually filed an Administrative Claim by the Bar Date. Nothing herein shall preclude the Creditor Trustee from seeking to establish a subsequent bar date if determined to be necessary or beneficial to administration of the Estates.

1.7 **"Allowed Claim"** or **"Allowed . . . Claim"** shall mean a Claim, proof of which is filed by the Bar Date pursuant to the procedures established pursuant to the Bar Date Order, or that has been, or is hereafter, scheduled by the Debtors as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been raised by the Creditor Trustee or filed within any applicable period fixed by the Bankruptcy Court, or as to which a Final Order allowing such Claim has been entered.

1.8 **"Avoidance Action"** shall mean causes of action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced before or after the Confirmation Date to prosecute such Avoidance Actions.

1.9 **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

1.10 **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, located in Canton, Ohio, or any court having jurisdiction over these Cases or a proceeding arising in, or arising under or related to these Cases.

1.11 **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

1.12 **"Bar Date"** shall mean the applicable bar date by which a proof of Claim must be filed, as established by the Bar Date Order.

1.13 **"Bar Date Order"** shall mean that certain *Order Approving Debtors' Motion for Order Establishing Bar Date for Filing Prepetition Claims and Postpetition Administrative Claims and Approving Form and Manner of Notice Thereof* (Docket No. 529).

1.14 **"BofA"** shall mean Bank of America, N.A.

1.15 **"Cases"** shall mean the jointly administered cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re Schwab Industries, Inc.*, et al., Case No. 10-60702, currently pending before the Bankruptcy Court.

1.16 **"Cash"** shall mean legal tender of the United States of America and equivalents thereof.

1.17 **"Causes of Action"** shall mean all claims and causes of action now owned or hereafter acquired by the Debtors, whether arising under any contract, the Bankruptcy Code, or other federal or state law, including, but not limited to, all litigation pending as of the Confirmation Date in any jurisdiction in which any of the Debtors are a plaintiff, defendant or other party, and all other adversary proceedings and lawsuits.

1.18 **"Claim"** means any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined by section 101(5) of the Bankruptcy Code.

1.19 **"Class"** shall mean a class of holders of Claims as described in the Plan.

1.20 **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed in these Cases on March 9, 2010, pursuant to section 1102 of the Bankruptcy Code.

1.21 **"Confirmation Date"** shall mean the date of entry of the Confirmation Order.

1.22 **"Confirmation Order"** shall mean the order confirming this Plan.

1.23 **"Core Sale Order"** shall mean that certain *Order (1) Authorizing the Sale of Substantially all of the Debtors' Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, Subject to Higher or Better Offers Pursuant to Bankruptcy Code 363 and 365; (2) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Such Sale and Determining and Adjudicating Cure Amounts with Respect to Such Contracts and Leases; (3) Waiving the Fourteen-Day Period Provided by*

3

*Bankruptcy Rule 6004(h); and Granting Related Relief* entered by the Bankruptcy Court on May 28, 2010.

    1.24    **"Creditors"** shall mean all creditors of the Debtors holding Claims for debts, liabilities, demands or other Claims of any character whatsoever.

    1.25    **"Creditor Trust"** shall mean a common law trust to be established pursuant to the Plan, the Creditor Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 General Unsecured Claims. The Creditor Trust shall liquidate and distribute the Creditor Trust Assets, in accordance with the Creditor Trust Agreement.

    1.26    **"Creditor Trust Agreement"** shall mean the agreement to be executed as soon as reasonably practicable after the Confirmation Date among the Debtors, the Committee and the Creditor Trustee, which shall govern the obligations of the Creditor Trustee with respect to oversight of the distribution of the Net Proceeds of the Creditor Trust Assets, as further set forth in the Creditor Trust Agreement and the Plan.

    1.27    **"Creditor Trust Assets"** shall mean those assets to be transferred to and vested in the Creditor Trust pursuant to this Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time. The Creditor Trust Assets shall include (but not be limited to): (i) all Cash held by the Debtors (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims); (ii) the Settlement Amount; (iii) the Debtors' remaining property, including real estate, motor vehicles, furniture, fixtures, inventory, investments, partnership or other ownership interests, refunds, accounts, equipment, any other tangible or intangible personal property and any and all proceeds thereof; (iv) the Debtors' outstanding accounts receivable; (v) the proceeds from any Avoidance Actions or Miscellaneous Causes of Action engaged in by the Creditor Trust; (vi) the 503(b)(9) Fund; and (vii) the Administrative Expense Fund. The Creditor Trust Assets shall not include: (i) any carve-outs from collateral of Secured Creditors, including without limitation amounts held by Professionals as carve-outs from the Pre-Petition Lenders' collateral to be used to compensate Professionals for their fees and expenses; or (ii) the Tax Refund.

    1.28    **"Creditor Trustee"** shall mean such Person or entity, including any replacements thereof or successors thereto, as may be designated by the Plan Proponents at least three (3) days in advance of the Joint Hearing, and approved by the Bankruptcy Court, as necessary or appropriate, to serve as custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein for the benefit of the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 General Unsecured Claims, pursuant to the Plan, the Confirmation Order and the Creditor Trust Agreement.

    1.29    **"Debtors"** shall mean SII, MCC, MSC, QBS, OIS, TCC, SRM, SMI and ECC, collectively.

1.30 **"Deficiency Claim"** shall mean any General Unsecured Claim of a Creditor against a Debtor equal to the excess of the Allowed amount of the Creditor's asserted Claim over the value of such Creditor's interest in such Debtor's interest in the property securing such Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.31 **"Disclosure Statement"** shall mean the Disclosure Statement filed by the Debtors and the Committee and approved by the Bankruptcy Court.

1.32 **"Disputed Claim"** shall mean any Claim (other than an Allowed Claim) which is either a Claim that has been scheduled by the Debtors or a Claim which is the subject of a proof of claim which has been filed with the Bankruptcy Court, as to which the Debtors, the Committee or the Creditor Trustee have indicated a dispute, or as to which scheduled or filed Claim a timely objection to the allowance thereof has been filed by a party entitled to make such an objection, but as to which the Bankruptcy Court has not yet entered a Final Order.

1.33 **"ECC"** shall mean Eastern Cement Corp.

1.34 **"Effective Date"** shall mean a date not greater than 180 days after the Confirmation Date, unless extended by the Creditor Trustee in his or her sole discretion; provided, however, that if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

1.35 **"Equity Security"** shall have the meaning provided by section 101(16) of the Bankruptcy Code.

1.36 **"Equity Security Holder"** shall have the meaning provided by section 101(17) of the Bankruptcy Code.

1.37 **"Estates"** shall mean the estates of the Debtors created in these Cases pursuant to section 541 of the Bankruptcy Code.

1.38 **"Final Order"** shall mean an order or judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.39 **"General Unsecured Claim"** shall mean any Unsecured Claim, arising prior to the Petition Date, that is not a Professional Fee Claim, Other Administrative Expense Claim, Unsecured Priority Tax Claim, Class 1 Claim (Priority Claims), Class 2a Claim (Secured Claims of the Pre-Petition Lenders), Class 2b Claim (Other Secured Claims) or Class 4 Interest (Equity Security Interests).

1.40 **"Huntington"** shall mean The Huntington National Bank.

1.41 **"Impaired"** shall mean any Class, or any Claim or Interest in a Class, that is impaired within the meaning of section 1124 of the Bankruptcy Code, and shall include, without limitation, Class 2a Secured Claims of the Pre-Petition Lenders, Class 3 General Unsecured Claims and Class 4 Equity Security Interests.

5

1.42    "**Intercompany Claim**" shall mean any Claim held by a Debtor against any other Debtor.

1.43    "**Interest**" shall mean the legal, equitable, contractual and other rights of the holders of any Equity Security in the Debtors, including the rights of any entity to purchase or demand the issuance of any Equity Securities, including: (i) conversion, exchange, voting, participation and dividend rights; (ii) liquidation preferences; (iii) stock options, warrants and put rights; and (iv) share-appreciation rights.

1.44    "**Joint Hearing**" shall mean the date on which the Bankruptcy Court holds a hearing to consider approval of the Disclosure Statement and confirmation of this Plan.

1.45    "**KeyBank**" shall mean KeyBank, National Association, both in its capacity as a Pre-Petition Lender and as administrative agent for the Pre-Petition Lenders.

1.46    "**Lien**" shall have the meaning provided by section 101(37) of the Bankruptcy Code.

1.47    "**MCC**" shall mean Medina Cartage Co.

1.48    "**Miscellaneous Causes of Action**" means all Causes of Action other than Avoidance Actions.

1.49    "**MSC**" shall mean Medina Supply Company.

1.50    "**Net Proceeds**" shall mean the Cash proceeds received by the Creditor Trustee from time to time from the sale or other disposition of the Creditor Trust Assets, net of the reasonable or necessary costs of such sale or other disposition, including reasonable fees and expenses of the Creditor Trustee's legal counsel and other Professionals incurred in connection therewith.

1.51    "**OIS**" shall mean O.I.S. Tire, Inc.

1.52    "**Oldcastle**" shall mean Oldcastle Materials, Inc., the purchaser of the bulk of the Debtors' core assets pursuant to the Core Sale Order.

1.53    "**Oldcastle AAA Claim**" shall mean Oldcastle's Allowed Agreed Administrative Claim in the amount of $75,000, minus Oldcastle's $9,000 contribution obligation owed to the Debtors pursuant to the *Agreed Order* (Docket No. 674) regarding the Settlement Agreement and Release attached thereto.

1.54    "**Other Administrative Expense Claim**" shall mean an Administrative Claim that is not a Professional Fee Claim.

1.55    "**Other Secured Claim**" shall mean a Secured Claim of a Secured Creditor other than the Pre-Petition Lenders.

10-60702-rk    Doc 698    FILED 12/15/10    ENTERED 12/15/10 15:31:27    Page 41 of 64

1.56 **"Oversight Committee"** shall mean the committee created pursuant to the Creditor Trust Agreement, which shall have the duties and powers set forth in the Creditor Trust Agreement.

1.57 **"Person"** shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.58 **"Petition Date"** shall mean the date of the filing of the Debtors' Cases, or February 28, 2010.

1.59 **"Plan"** shall mean this First Amended Joint Plan of Liquidation as set forth herein or as it may be modified or amended.

1.60 **"Plan Proponents"** shall mean the Debtors and the Committee.

1.61 **"Pre-Petition Lenders"** shall mean KeyBank, BofA and Huntington, collectively.

1.62 **"Priority Claim"** shall mean a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code. With respect to the Claims of employees or former employees, such Claims shall constitute Priority Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.63 **"Priority Tax Claims"** shall mean a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.64 **"Professional Fee Claims"** shall mean Claims of Professional Persons for compensation for services rendered in these Cases prior to the Confirmation Date pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.65 **"Professional Fee Carve Out Funds"** shall mean such Cash held by: (i) Professionals for the Debtors to compensate Professionals for the Debtors; and (ii) Professionals for the Committee to compensate Professionals for the Committee, respectively, as described more fully in the Core Sale Order, for such Professionals' Allowed Professional Fee Claims.

1.66 **"Professional"** or **"Professional Persons"** shall mean persons, including attorneys, accountants and financial advisors retained by the Debtors, the Committee or the Creditor Trustee, or to be compensated pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.67 **"Pro Rata"** shall mean proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included.

7

1.68   **"QBS"** shall mean Quality Block & Supply, Inc.

1.69   **"Reclamation Claim"** shall mean a Claim of a Creditor: (i) of the kind specified in section 546(c)(1) of the Bankruptcy Code; or (ii) any similar Claim available under applicable state law.

1.70   **"Schwab Family Members"** shall mean Jerry A. Schwab, Donna L. Schwab, David A. Schwab and Mary Lynn Hites.

1.71   **"Secured Claim"** shall mean a Claim of a Creditor secured by a lien on property of the Estates, or a Claim subject to set off under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estates, or to the extent of the amount subject to set off, as the case may be.

1.72   **"Secured Creditor"** shall mean the holder of a Secured Claim.

1.73   **"Settlement Amount"** shall mean the "gift" made by the Pre-Petition Lenders to the Class 3 General Unsecured Creditors pursuant to the Core Sale Order in an amount equal to $850,000, plus fifteen percent (15%) of the net sale proceeds received by the Pre-Petition Lenders in excess of $51 million based on a sharing formula appended to the Core Sale Order, which is expressly preserved solely for the benefit of Class 3 General Unsecured Creditors and to pay the Trustee's Expenses in accordance with any budget approved by the Oversight Committee.

1.74   **"SII"** shall mean Schwab Industries, Inc.

1.75   **"SMI"** shall mean Schwab Materials, Inc.

1.76   **"SRM"** shall mean Schwab Ready-Mix, Inc.

1.77   **"Substantive Consolidation Order"** shall mean the order, or provision of the Confirmation Order, substantively consolidating the Cases as provided in Section 7.1.1 of the Plan.

1.78   **"Tax Refund"** shall mean any rights of the Debtors to a federal, state or local tax refund, which is subject to a perfected security interest in favor of KeyBank.

1.79   **"TCC"** shall mean Twin Cities Concrete Company.

1.80   **"Trustee's Expenses"** shall mean the reasonable fees, costs and expenses incurred by the Creditor Trustee and any Professionals retained by it in connection with the performance of its duties and responsibilities under the Plan and Creditor Trust Agreement, as well as any other reasonable and necessary costs of administration of the Creditor Trust, including U.S. Trustee fees incurred during the post-Confirmation Date period, which may be paid from the Creditor Trust Assets (including, without limitation, the Settlement Amount) in accordance with any budget approved by the Oversight Committee.

8

1.81    "**Unsecured Claim**" shall mean a Claim of a Creditor not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim pursuant to section 507 of the Bankruptcy Code.

1.82    "**U.S. Trustee**" shall mean the United States Trustee.

**Rules of Interpretation and Computation of Time.** For purposes of this Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to any entity as a holder of a Claim or Interest includes the entity's successors and assigns; (v) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (ix) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II

## Unclassified Claims

Section 1123(a)(1) of the Bankruptcy Code provides that Administrative Claims and Priority Tax Claims are not to be classified under the Plan.

2.1    Allowed Administrative Claims include the following:

2.1.1    **Allowed Administrative Claims of any Professional Person** shall include Allowed Professional Fee Claims.

2.1.2    **Allowed Other Administrative Expense Claims** shall include the Allowed Administrative Claims of parties other than Professional Persons, including such Agreed Administrative Claims as may be Allowed.

2.2    **Priority Tax Claims** shall include the Allowed unsecured Priority Tax Claims.

10-60702-rk    Doc 698    FILED 12/15/10    ENTERED 12/15/10 15:31:27    Page 44 of 64

## ARTICLE III

### Designation of Classified Claims and Interests

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims and Interests are classified as follows:

3.1 **Class 1 Claims** shall consist of all Allowed unsecured Priority Claims (other than unsecured Priority Tax Claims).

3.2 **Class 2a Claims** shall consist of all Allowed Secured Claims of the Pre-Petition Lenders that are fully secured to the extent of the value in the underlying collateral securing the Class 2a Claims.

3.3 **Class 2b Claims** shall consist of all Allowed Other Secured Claims that are fully secured to the extent of the value in the underlying collateral securing the Class 2b Claims. For convenience of identification, the Plan classifies Class 2b Claims in a single class. This Class is actually a group of subclasses, and each Class 2b Claim will be placed in a separate subclass and treated as a distinct Class for distribution purposes.

3.4 **Class 3 Claims** shall consist of the Allowed Claims of general unsecured Creditors, including Deficiency Claims of Secured Creditors. The Pre-Petition Lenders' Deficiency Claim has been waived in its entirety by agreement between the Pre-Petition Lenders and the Committee, as set forth in the Core Sale Order.

3.5 **Class 4 Interests** shall consist of the Interests of Equity Security Holders.

## ARTICLE IV

### Impairment of Classes

4.1 **Impaired Classes of Claims Entitled To Vote.** Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 2a and

10

Class 3 are Impaired and holders of Claims in those Classes shall be entitled to vote to accept or reject this Plan.

4.2  **Classes Deemed To Accept the Plan.**  Class 1 Claims and Class 2b Claims are unimpaired by this Plan and holders of such Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  The votes of Creditors holding these Claims will therefore not be solicited.

4.3  **Classes Deemed To Reject the Plan.**  Holders of Interests in Class 4 will not receive or retain any distribution under the Plan on account of their Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, Class 4 is impaired and is conclusively presumed to have rejected this Plan, and the votes of Creditors holding Class 4 Interests therefore will not be solicited.

4.4  **Cram Down.**  The Debtors and the Committee will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class that rejects the Plan.

### ARTICLE V

### Treatment of Claims and Interests

5.1  **Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims.**

5.1.1  Allowed Professional Fee Claims (to the extent not paid from amounts carved out of the Pre-Petition Lenders' collateral, including the Professional Fee Carve Out Funds, which may only be used to compensate Professionals in accordance with the Core Sale Order) and Allowed Other Administrative Expense Claims shall be paid in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7)

11

days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement. Notwithstanding anything stated above, Agreed Administrative Claims remain subject to objection for substantive reasons, but the Creditor Trustee shall not object for failure to file a proof of claim prior to the Bar Date so long as such Creditors holding Agreed Administrative Claims actually filed an Administrative Claim by the Bar Date. Nothing herein shall preclude the Creditor Trustee from seeking to establish a subsequent bar date if determined to be necessary or beneficial to administration of the Estates.

5.1.2    Distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) make a distribution on account of Disputed Claims that are Professional Fee Claims or Other Administrative Expense Claims; and (ii) pay the Trustee's Expenses in full; provided, however, that Oldcastle's AAA Claim shall be paid in full in Cash no later than the Effective Date.

5.1.3    No Professional Fee Claims will be paid prior to such Claims becoming Allowed Professional Fee Claims pursuant to Section 7.9 herein, but all Professional Fee Claims shall be paid within twenty (20) days of becoming Allowed Professional Fee Claims, provided that the Creditor Trust has sufficient Cash to make such distribution(s).

12

5.1.4   Distributions from the 503(b)(9) Fund shall be made first, to holders of Allowed 503(b)(9) Claims, and second, to any unpaid Allowed Administrative Claims in accordance with Section 5.1.2 of the Plan.

5.1.5   Distributions from the Administrative Expense Fund shall be made to holders of Allowed Administrative Claims in accordance with Section 5.1.2 of the Plan.

5.1.6   No distributions from the Settlement Amount shall be made to holders of Professional Fee Claims or Other Administrative Expense Claims, except as may be permitted by the Plan or Creditor Trust Agreement.

5.1.7   No distributions of Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall be made to holders of Professional Fee Claims or Other Administrative Expense Claims, until such time as Allowed Class 2a Claims are paid in full.

5.2   **Priority Tax Claims.**

5.2.1   Allowed Priority Tax Claims shall be paid in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.2.2   Distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement (and in accordance with sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code) to the holders of Allowed Priority Tax Claims from time to time on dates determined by the Creditor Trustee, following

13

consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) satisfy all alleged Administrative Claims in full; (ii) make a distribution on account of Disputed Claims that are Priority Tax Claims or Priority Claims; and (iii) pay the Trustee's Expenses in full; provided, however, that the Creditor Trustee will make quarterly distributions to the Internal Revenue Service, with respect to its Allowed Priority Tax Claim, in equal installments in Cash, beginning on the Effective Date (or as soon as practicable following the date the Internal Revenue Service's Claim becomes an Allowed Priority Tax Claim) and through the fifth year following the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

      5.2.3   No distributions of Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall be made to holders of Priority Tax Claims, until such time as each of Allowed Class 2a Claims, Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims are paid in full.

      5.3   **Class 1 Claims.**

      5.3.1   Allowed Priority Claims shall be paid in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

14

5.3.2    Distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Priority Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) satisfy all alleged Administrative Claims in full; (ii) make a distribution on account of Disputed Claims that are Priority Claims or Priority Tax Claims; and (iii) pay the Trustee's Expenses in full.

5.3.3    No distributions of Net Proceeds of Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall be made to holders of Priority Claims, until such time as each of Allowed Class 2a Claims, Allowed Professional Fee Claims and Allowed Other Administrative Expense Claims are paid in full.

5.4    **Class 2a Claims.**

5.4.1    Allowed Secured Claims of the Pre-Petition Lenders shall be paid in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order, or as otherwise provided in the Confirmation Order.    The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan, the Confirmation Order and the Creditor Trust Agreement.

5.4.2    Distributions of the Net Proceeds from the Creditor Trust, solely from Creditor Trust Assets that are subject to the Liens of the Pre-Petition Lenders, shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed

15

Secured Claims of the Pre-Petition Lenders from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to pay in full the Trustee's Expenses incurred solely in connection with the liquidation of the Creditor Trust Assets that are subject to the Liens of the Pre-Petition Lenders. Notwithstanding anything to the contrary contained herein, the Trustee's Expenses relating to the liquidation of the Creditor Trust Assets that are subject to the Liens of the Pre-Petition Lenders shall be subject to the prior written approval of KeyBank.

5.4.3 Upon payment to the Pre-Petition Lenders of an amount equal to $51,000,000 with respect to the Pre-Petition Lenders' Secured Claims (whether from distributions from the Creditor Trust or otherwise), all further distributions to the Pre-Petition Lenders of Net Proceeds from the Creditor Trust shall be subject to the sharing formula appended to the Core Sale Order.

5.4.4 Upon payment in full of all sums required pursuant to this Plan, the holders of Class 2a Claims shall release, and shall be deemed to have released, their Liens upon property of the Debtors' Estates. Evidence of such release shall be provided to the Creditor Trustee and filed with the Bankruptcy Court.

5.5 **Class 2b Claims.**

5.5.1 The Creditor Trustee shall pay one hundred percent (100%) of Allowed Class 2b Claims in Cash as soon as practicable following the Effective Date, or surrender the collateral securing such Allowed Class 2b Claims, in full satisfaction of such Claims. Upon payment in full of all sums due, the holders of Class 2b Claims shall release, and shall be deemed

16

to have released, their Liens upon property of the Debtors' Estates. Evidence of such release shall be provided to the Creditor Trustee and filed with the Bankruptcy Court.

5.6    **Class 3 Claims.**

5.6.1    Allowed Class 3 Claims shall be paid Pro Rata in accordance with the Creditor Trust Agreement and this Plan. In accordance with the Creditor Trust Agreement, all property of the Estates shall be deposited in the Creditor Trust account no later than seven (7) days after entry of the Confirmation Order. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds in accordance with this Plan and the Creditor Trust Agreement.

5.6.2    Pro Rata distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Allowed Class 3 General Unsecured Claims from time to time on dates determined by the Creditor Trustee, following consultation with, and approval by, the Oversight Committee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (i) satisfy all alleged Administrative Claims in full; (ii) satisfy all alleged Priority Tax Claims and Priority Claims in full; (iii) make a Pro Rata distribution on account of Disputed Claims that are Class 3 General Unsecured Claims; and (iv) pay the Trustee's Expenses in full.

5.6.3    Distributions from the Settlement Amount shall be made to holders of Allowed General Unsecured Claims in accordance with Section 5.6.2 of this Plan.

5.6.4    No distributions from the Settlement Amount shall be made to holders of Claims other than Allowed Class 3 General Unsecured Claims, notwithstanding that this may cause Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims

17

and/or Allowed Class 2a Secured Claims to not be paid in full; provided, however, that the Settlement Amount may be used to pay certain Allowed Administrative Claims or the Trustee's Expenses as permitted by the Plan or Creditor Trust Agreement.

5.6.5 Upon payment to the Pre-Petition Lenders of an amount equal to $51,000,000 with respect to the Pre-Petition Lenders' Secured Claims (whether from distributions from the Creditor Trust or otherwise), all further distributions of Net Proceeds from the Creditor Trust with respect to Creditor Trust Assets subject to the Pre-Petition Lenders' Liens shall be subject to the sharing formula appended to the Core Sale Order.

5.7 **Class 4 Interests.** Holders of Class 4 Interests shall not receive a distribution under the Plan. Upon the Confirmation Date of the Plan, all Equity Securities in the Debtors will be retired.

## ARTICLE VI

### Treatment of Executory Contracts

6.1 **Contracts Deemed Rejected.** Each executory contract or unexpired lease of the Debtors that has not expired by its own terms or been assumed prior to the Confirmation Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Confirmation Date.

6.2 **Bar Date for Rejection Damages.** All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.1 of this Plan shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court by the Bar Date, or if an executory contract or unexpired lease is rejected after the Bar Date, by no later than thirty (30) days after the Confirmation Date. The Claims of any Creditor arising from the rejection of executory contracts or unexpired leases

18

pursuant to Section 6.1 of this Plan that fails to timely file a proof of claim shall be released, discharged and forever barred from assertion against the Debtors, their Estates or their property.

6.3 **Pension Plan.** The Debtors are contributing sponsors of the Schwab Industries, Inc. Employees' Pension Plan (the "*Pension Plan*") or asserted by the Pension Benefit Guaranty Corporation (the "*PBGC*") to be the members of the contributing sponsor's controlled group. The PBGC asserts that the Pension Plan is covered by Title IV of the Employment Retirement Income Security Act of 1974, as amended ("*ERISA*") (29 U.S.C. § 1310 *et seq*.).

From and after the Confirmation Date, the Creditor Trustee will oversee the termination of the Pension Plan according to the terms and conditions of the Pension Plan and effected in conformity with all statutory and regulatory requirements, including any applicable notice provisions. Alternatively, to the extent permitted by the Bankruptcy Code, the Pension Plan will be deemed rejected as of the Confirmation Date. Any undistributed, vested benefits of the terminated Pension Plan will be distributed to the participants of the Pension Plan, as provided by statute, the applicable regulations and the Pension Plan's provisions. In order to ensure that the Pension Plan's termination complies with the terms of the Pension Plan, applicable statutes and regulations, the Debtors, the Creditor Trustee or the Plan Administrator (as defined in the Pension Plan) will obtain any necessary approvals of the relevant regulatory agencies, such as the PBGC, the Internal Revenue Service and the U.S. Department of Labor, in respect of such terminations. To the extent that such processes require additional time or expense to complete after the Confirmation Date, the Plan Administrator shall be responsible for completing such process and such costs will be paid from the assets of the Pension Plan.

The PBGC is the wholly-owned United States government corporation and agency of the United States created under Title IV of ERISA to administer the federal pension insurance

19

programs and enforce compliance with the provisions of Title IV. The PBGC guarantees the payment of certain pension benefits upon termination of a pension plan covered by Title IV.

The PBGC has filed various Claims against the Estates with respect to the Pension Plan, including the following: (i) a contingent Claim for unfunded benefit liabilities allegedly owed to the Pension Plan in the estimated amount of $19,014,863 pursuant to 29 U.S.C. § 1362(a), a portion of which the PBGC asserts is an Administrative Claim; (ii) an estimated Claim asserting that contributions are owed to the Pension Plan in the amount of $1,875,941 pursuant to 29 U.S.C. § 1082(c)(11), a portion of which the PBGC asserts is an Administrative Claim; (iii) an estimated Claim for statutory premiums allegedly owed to the PBGC in the amount of $3,141,960 pursuant to 29 U.S.C. § 1307, a portion of which the PBGC asserts is a Priority Claim; and (iv) an estimated Claim for alleged shortfall and waiver amortization charges in the amount of $12,402,766 pursuant to 29 U.S.C. § 1362(c).

The Creditor Trustee does not waive any objections it may have to any of the PBGC's Claims. The Bankruptcy Court will retain jurisdiction over any disputes relating to the termination of the Pension Plan and the Creditor Trustee shall have standing to object to any Claim filed by the PBGC with respect to the Pension Plan.

No provision contained herein, in the Confirmation Order or section 1141 of the Bankruptcy Code shall be construed as discharging, releasing or relieving any party, other than the Debtors or the Creditor Trustee in any capacity, from any liability with respect to the Pension Plan under any law, government policy or regulatory provision; provided, however, that the PBGC shall not share in any amounts disbursed pursuant to this Plan other than with respect to any Allowed Claims in whatever class such Claims may be Allowed. The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any party,

20

other than the Debtors, the Creditor Trust and the Creditor Trustee, as a result of the provisions herein for satisfaction, release and discharge of claims.

## ARTICLE VII

### Means of Implementation of the Plan

### 7.1    Substantive Consolidation.

7.1.1    The Substantive Consolidation Order shall contain one or more provisions substantively consolidating the Estates into the Estate of SII. On the Confirmation Date, and except as otherwise provided in the Plan: (i) all guaranties of any Debtor of the payment, performance or collection of another Debtor shall be deemed eliminated and cancelled; (ii) any obligation of any Debtor and all guaranties thereof executed by another Debtor or Debtors shall be treated as a single obligation and any obligation of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, shall be treated and allowed only as a single Claim against the consolidated Debtors; and (iii) each Claim filed or to be filed against any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a single Claim against and a single obligation of the consolidated Debtors. On the Confirmation Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guaranties of collection, payment or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect. Except as set forth in this Section 7.1.1, such substantive consolidation shall not (other than for purposes related to the Plan) cause any Debtor to be liable under the Plan for any Claim for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such substantive consolidation. On the Confirmation Date, the Intercompany Claims of Debtors against any other Debtors shall be extinguished and cancelled.

21

7.1.2   Unless the Bankruptcy Court has approved the substantive consolidation of the Estates by a prior order, this Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors as provided in Section 7.1.1 hereof.  If no objection to substantive consolidation is timely filed and served by any holder of an Impaired Claim affected by the Plan as provided herein on or before the deadline for objection to confirmation of the Plan, or if any such objection is resolved by the parties or overruled by the Bankruptcy Court, the Substantive Consolidation Order (which may be the Confirmation Order) may be entered by the Bankruptcy Court.  If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of the Estates and any objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Joint Hearing.

7.1.3   Upon the substantive consolidation of each Estate into the Estate of SII, the Cases of all Debtors other than SII shall be closed.  Upon such event, the Creditor Trustee may file all Causes of Action and objections to Claims in the SII Case, and not in any other individual Debtor Case, notwithstanding the fact that the transferring Debtor (in an Avoidance Action) or the Debtor against whom the Claim was filed (in a Claim objection proceeding) may be a Debtor other than SII.

7.2   **Vesting of Assets.**  Within seven (7) days of the Confirmation Date, all assets of the Debtors and their Estates (other than the Tax Refund) shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  In the event KeyBank, on behalf of the Pre-Petition Lenders, provides written direction to the Creditor Trustee (on behalf of the Debtors or the Creditor Trust) to incur any fees and expenses necessary and appropriate in KeyBank's sole discretion to prosecute the Tax Refund and respond to any

22

related issues (the "*Authorized Fees and Expenses*"), pursuant to KeyBank's and the Pre-Petition Lenders' rights under the Core Sale Order, any such Authorized Fees and Expenses shall be satisfied by KeyBank, in its capacity as agent for the Pre-Petition Lenders, and shall be reimbursed to KeyBank through the Tax Refund prior to calculating the actual amount of recovery realized upon the Tax Refund for purposes of the sharing agreement set forth in the Core Sale Order. Neither KeyBank nor the Pre-Petition Lenders shall have any obligation to direct the Creditor Trustee (on behalf of the Debtors or the Creditor Trust, as the case may be) to prosecute the Tax Refund or otherwise respond to any related issues or matters, including, but not limited to, responding to any audit. KeyBank shall be authorized to abandon the Pre-Petition Lenders' rights, claims, interests and Liens on the Tax Refund in its sole discretion by formal written notice to the Creditor Trustee (on behalf of the Debtors or the Creditor Trust), in which case, the Creditor Trustee shall have all of the rights of KeyBank and the Pre-Petition Lenders solely with respect to the Tax Refund as set forth herein. The Creditor Trust Assets include, without limitation, all Cash in the possession of the Debtors (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims), the Settlement Amount, all Avoidance Actions and Miscellaneous Causes of Action, the 503(b)(9) Fund, the Administrative Expense Fund, all rights of the Debtors under the Plan, the Confirmation Order and all other orders entered by the Bankruptcy Court in these Cases on or prior to the Confirmation Date, and all books and records related to the Estates. The assets shall also include all remaining real property and personal property of the Debtors. For the avoidance of doubt, all property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Class 2a Secured Claims and Allowed Class 3 Claims and shall not be deemed property

23

of the Debtors. Additionally, proceeds of the Settlement Amount obtained for General Unsecured Creditors from the Pre-Petition Lenders shall be distributed only to the holders of Allowed Class 3 General Unsecured Claims, proceeds of collateral subject to the Pre-Petition Lenders' Liens shall be distributed only to the holders of Allowed Class 2a Secured Claims until the Pre-Petition Lenders have received distributions on their Allowed Secured Claims totaling $51,000,000 and, thereafter, all further distributions to the Pre-Petition Lenders of Net Proceeds from the Creditor Trust shall be subject to the sharing formula appended to the Core Sale Order, the 503(b)(9) Fund shall be distributed only to the holders of Allowed 503(b)(9) Claims and the Administrative Expense Fund shall be distributed only to the holders of Allowed Administrative Claims; provided, however, that the Settlement Amount may be used to pay Allowed Administrative Claims or satisfy the Trustee's Expenses pursuant to any budget approved by the Oversight Committee. Nothing in the Plan, however, shall preclude payment of: (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Confirmation Date; and (ii) the Trustee's Expenses in accordance with this Plan and the Creditor Trust Agreement from any other assets held by the Creditor Trust; provided, however, that the proceeds from the liquidation of the Creditor Trust Assets subject to the Liens of the Pre-Petition Lenders shall only be used to satisfy the Trustee's Expenses incurred solely in connection with the liquidation of such asssets. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of their property to the Creditor Trust, subject to oversight from the Oversight Committee or the Creditor Trustee, as applicable.

     7.3    **Creditor Trust Asset Administration.** The Creditor Trustee, with oversight from the Oversight Committee, shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Confirmation Date. The Creditor Trustee

shall be responsible for liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Avoidance Actions and Miscellaneous Causes of Action, making distributions of the Net Proceeds to the beneficiaries of the Creditor Trust and all other activities typically related to trust administration. Notwithstanding anything to the contrary contained herein, the Creditor Trustee shall consult with KeyBank with respect to the administration of the Creditor Trust Assets that are subject to the Liens of the Pre-Petition Lenders and shall not liquidate any of such assets without KeyBank's prior written consent.

7.4 **ACP Resolution.** The terms of the resolution of ACP's alleged Claims are set forth on **Schedule 7.4** to this Plan.

7.5 **Dissolution of the Debtors.** Promptly after: (i) the Creditor Trustee completes the Debtors' wind-down (including, without limitation, closing any pending sale(s) of real estate); (ii) ACP is dissolved; and (iii) a final determination is made with respect to the Tax Refund, the Creditor Trustee will allow the applicable Secretary of State to involuntarily dissolve each of the Debtors. The Creditor Trustee shall thereafter have standing to assert claims or pursue matters on behalf of the Debtors to the extent necessary to preserve, protect and liquidate the Creditor Trust Assets or otherwise necessary to administer the Creditor Trust or any matter related to the Tax Refund.

7.6 **Name Change; Transfer of Remaining Trade Names to Oldcastle.** Upon the Confirmation Date, the Debtors shall thereafter be referred to, collectively, as "SII Liquidation Company." The Debtors shall take any actions as necessary, including, without limitation, registering such name change with the appropriate secretary of state, to effect such name change,

25

and the Confirmation Order shall contain a provision approving a corresponding change to the caption of the Cases.

Effective upon the Confirmation Date, all trade names of the Debtors, including without limitation, the trade names associated with SII, MCC, MSC, QBS, TCC, SRM, SMI, OIS and ECC shall be indefeasibly and permanently transferred to Oldcastle.

7.7 **Conditions to Confirmation.** The Bankruptcy Court shall not enter the Confirmation Order unless and until the Confirmation Order shall be reasonably acceptable in form and substance to the Plan Proponents.

7.8 **Conditions to Effective Date.** The following are conditions precedent to the occurrence of the Effective Date: (i) the Confirmation Order confirming the Plan, as such Plan may have been modified, shall have been entered by the Bankruptcy Court and be in full force and effect and shall not have been vacated, amended, modified or stayed, and if it is the subject of any appeal, reconsideration or other review, no stay of the Confirmation Order shall be in effect; (ii) the Creditor Trust Agreement, in form and substance satisfactory to the Committee, shall be executed and delivered, and all conditions precedent to the effectiveness thereof shall have been satisfied; (iii) all other documents or agreements necessary to consummate the Plan shall have been delivered or effectuated; (iv) the Creditor Trustee shall have been appointed by the Plan Proponents upon notice to the Bankruptcy Court; and (v) the Creditor Trustee determines that it believes there will be sufficient assets, once liquidated, to pay Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Claims in full. The Plan Proponents or the Creditor Trustee, as the case may be, may waive any of the foregoing conditions precedent at any time.

26

7.9    **Administrative Claims Bar Date.**  All Persons requesting payment of Other Administrative Expense Claims shall file a proof of claim (in accordance with the Bar Date Order) no later than the Bar Date or, for Other Administrative Expense Claims arising after July 12, 2010, no later than thirty (30) days after the Confirmation Date.  The Bar Date shall not apply to Professional Persons requesting payment of Professional Fee Claims, who shall be entitled to file an application for allowance of such claims until not later than thirty (30) days after the Confirmation Date.  Objections to such applications for payment (whether by Professional Persons requesting payment of Professional Fee Claims or Persons requesting payment of Other Administrative Expense Claims), if any, must be written, filed with the Bankruptcy Court and served on the applicable parties within forty-five (45) days after such application is filed.

7.10    **Termination of Committee.**  The Committee shall terminate automatically upon the acceptance by the Creditor Trustee of its appointment in accordance with this Plan and the Creditor Trust Agreement following the Confirmation Date.  Upon termination of the Committee, the Committee shall be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Cases or the Plan and its implementation, and the retention or employment of the Committee's counsel shall terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

7.11    **Case Administration.**  From and after the Confirmation Date and continuing through the date that a final decree closing the Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in,

10-60702-rk    Doc 698    FILED 12/15/10    ENTERED 12/15/10 15:31:27    Page 62 of 64

arising under or related to the Debtors or these Cases. In addition to the foregoing, for all matters arising in, arising under or related to the Cases, the Creditor Trustee shall: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) have the right to obtain records of, or related to, the Debtors (including, without limitation, bank statements and cancelled checks); (iii) have the right to sign or otherwise execute documents, receive funds and direct transfers to third parties (including without limitation, with respect to the Tax Refund) on behalf of the Debtors; (iv) be entitled to notice and opportunity for hearing; (v) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (vi) have exclusive standing (including derivative standing to pursue Causes of Action on behalf of the Debtors) to commence Avoidance Actions and Miscellaneous Causes of Action; (vii) be entitled to request the Bankruptcy Court to enter a final decree closing the Cases; (viii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in these Cases; and (ix) be authorized to designate the allocation of the funds remaining in the 503(b)(9) Fund and the Administrative Expense Fund as of the Confirmation Date, following consultation with, and subject to the approval of, the Oversight Committee.

7.12 **Oversight Committee.** For purposes of implementation of the Plan, the Oversight Committee shall be created on the Confirmation Date and comprised of three (3) members, at least two (2) of which shall be representatives of the Committee and at least one (1) of which shall be a representative of the Debtors (subject to the approval of the Committee, which shall not be unreasonably withheld or delayed). The Oversight Committee shall exercise such rights and duties as are set forth in the Creditor Trust Agreement. Each member of the Oversight Committee shall serve until the earlier of: (i) his or her death or resignation; (ii) his or

her removal pursuant to the Creditor Trust Agreement; and (iii) the termination of the Creditor Trust.

7.13 **Filing of Additional Documents.** On or before the Confirmation Date of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, without limitation, the final Creditor Trust Agreement and Schedule 7.4.

7.14 **Creditor Trustee's Professionals.** Upon the later to occur of the Confirmation Date and acceptance by the Creditor Trustee of its appointment in accordance with this Plan and the Creditor Trust Agreement, the Creditor Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary, upon approval of the Oversight Committee, in accordance with the Creditor Trust Agreement, to aid in the performance of its responsibilities pursuant to the terms of the Plan, including, without limitation, the liquidation and distribution of assets of the Creditor Trust. The Professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in these Cases, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity. The Creditor Trustee's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict shall exist by virtue of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance with Section 5.1 of this Plan.

7.15 **Notices.** Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid;