The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 11 |
| | ) |
| SII LIQUIDATION COMPANY, | ) CASE NO. 10-60702 |
| | ) |
| Debtor. | ) JUDGE RUSS KENDIG |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| | ) **PUBLICATION)** |
| | ) |

John B. Pidcock, trustee ("Creditor Trustee") of the "Creditor Trust," objected to the proof of claim filed by American Sand and Gravel, a Division of Kenmore Construction Co., Inc. ("American Sand") as untimely. American Sand contends that excusable neglect exonerates the late filing and urges the court to allow the claim. Arguments were presented to the court on March 22, 2011.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

American Sand was a pre- and postpetition supplier of aggregate to Medina Supply Company ("Medina Supply"), one of the jointly administered debtors. On average, American Sand supplied product to Medina Supply two times each month and issued invoices. Postpetition, American Sand provided aggregate from March 2010 through December 2010. With the exception of the May 2010 invoices, the postpetition invoices

1

were paid from five to forty-eight days after issuance and the bulk were paid in thirty days or less.

In May 2010, American Sand provided aggregate on May 15th and May 31st. The invoices from May 2010, totaling $41,460.76, were not paid. These invoices are the only postpetition supplies of material by American Sand which were not paid.

On July 9, 2010, the court approved Debtors' motion to establish a claims bar date of August 12, 2010. The bar date included claims for postpetition administrative expenses incurred prior to July 13, 2010.[1] The bar date notice was filed on July 20, 2010 and served on July 21, 2010. American Sand was listed a creditor. The procedure is not challenged.

American Sand filed an untimely administrative expense request ("claim") for $41,460.76 on November 17, 2010.

## LAW

Creditor Trustee objects to the claim as untimely and there is no argument that the claim was late. The bar date established a deadline of August 12, 2010 to file administrative expense claims arising prior to July 13, 2010. The American Sand claim was incurred in May 2010, making the August 12, 2010 bar date applicable to American Sand.

American Sand wants the court to allow the late filing under an excusable neglect theory pursuant to Federal Rule of Bankruptcy Procedure 9006(b). Countering, Creditor Trustee argues that the late filing does not meet the excusable neglect standard of Rule 9006(b). The parties agreed to argue about the wrong standard and the wrong legal provisions. Neither party addresses the correct standard for this dispute, namely cause under 11 U.S.C. § 503(a), the governing provision for requests for payment of administrative expenses.

American Sand's "claim" is a request for payment of an administrative expense. Although it may be filed on a proof of claim form, an administrative expense is a separate classification of claims under the bankruptcy code, governed directly by administrative expense code provisions. *See* 11 U.S.C. 503. Collier's advises against labeling a request for payment of an administrative expense as a "proof of claim" because "an administrative expense is not properly asserted in a proof of claim, and the filing of [a] proof of claim is unnecessary to request payment of an administrative expense; the application for payment filed under section 503(a) is all that is required." 4 Alan N. Resnick and Henry J. Sommer, Collier on Bankruptcy ¶ 503.02[1], 503-9 (16th ed. 2011) (footnotes omitted). Collier's notes the absence of procedures for filing requests for administrative expenses, recognizing the paucity of procedure for administrative expenses as compared to proofs of claim. Id. at ¶ 503.02.

Under section 503(a), "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court *for cause*." 11 U.S.C. § 503(a) (emphasis added). Thus, the court's starting point is determine what constitutes cause for allowing a late-filed application for administrative expenses.

"The term 'cause' is not a defined term in either the Bankruptcy Code or the Bankruptcy Rules, so the kinds of 'cause' sufficient to permit tardy filing of administrative expenses claims is left to judicial discretion and development." Id. at ¶ 503.02[2], 503-10.

---

[1] The claims bar date for administrative expense claims incurred after July 12, 2010 was January 14, 2011.

2

10-60702-rk    Doc 836    FILED 05/06/11    ENTERED 05/06/11 14:16:21    Page 2 of 5

Many courts rely on the excusable neglect standard to determine whether to allow a late administrative expense claim. *See* In re UAL Corp., 2009 WL 4068023 *6, fn. 6 (Bankr. N.D. Ill. 2009) (citations omitted). At least one court specifically rejected the excusable neglect standard, finding it narrower than an inquiry for cause. *See* In re Heartland Steel, Inc., 2003 WL 23100035 (S.D. Ind. 2003).

"Cause" is the standard for relief in many bankruptcy situations. *See, e.g.*, 11 U.S.C. §§ 324, 362(d)(1), 707(a), 1112(b)(1); 28 U.S.C. § 157(d); Fed. R. Bankr. P. 1006(b)(2), 1019(1)(B), 3002(c)(1), 3003(c)(3). Noting the lack of definition for cause in sections 362(d) and 1112(b), the Sixth Circuit advised courts to determine whether "discretionary relief is appropriate on a case-by-case basis." Laguna Assoc. Ltd. P'Ship v. Aetna Cas. & Sur. Co. (In re Laguna Assoc. Ltd. P'Ship), 30 F.3d 734 (6th Cir. 1994) (citation omitted); *see also* Simon v. Amir (In re Amir), 436 B.R. 1 (B.A.P. 6th Cir. 2010) (using same framework for § 707(a)) analysis; In re Pierce, 82 B.R 874 (Bankr. S.D. Ohio 1987) (§ 1322(c)). Cause is within the court's discretion and based on the relevant facts of each case and thereby provides similarity to a Rule 9006(b) analysis.

Rule 9006(b) states that enlargement of the time period is within the court's discretion. The party seeking the enlargement bears the burden of proving that the untimeliness was the result of excusable neglect. In re Lee Way Holding Co., 178 B.R. 976 (Bankr. S.D. Ohio 1995); In re Morelock, 151 B.R. 121 (Bankr. N.D. Ohio 1992). The determination of whether the act is excusable requires a court to undertake an equitable review of the relevant circumstances. Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395 (1993). Factors for consideration include, but are not strictly limited to, "(1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on the proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the late party; and (5) whether the late party acted in good faith." Norpak Corp. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 131 F.3d 1185, 1188 (6th Cir. 1997) (citing Dix v. Johnson, 95 B.R. 134 (B.A.P. 9th Cir. 1988), Pioneer Inv., 507 U.S. 380, 381)). The focus on the specific facts of the case, coupled with the court's discretionary power, makes the overlap between cause and "excusable neglect" apparent.

One difference, however, is evident. In an equitable review, fairness is the paramount consideration. That does not necessarily follow on a review for cause. While fairness may provide the requisite cause for relief, it does not necessarily drive the decision. The court can picture fact patterns where an inequitable outcome may still establish cause for relief. On this point, cause and excusable neglect diverge. An exercise of the court's discretion may not always be equitable. Thus, the court will use what it views as the less stringent standard requiring a demonstration of cause rather than that of excusable neglect.[2]

On the facts before the court, cause exists to allow the request for payment. American Sand successfully demonstrates a lack of prejudice and cognizable harm to Debtors and an explanation for the delay.

American Sand filed its request for payment before the bar date for administrative expenses incurred after July 12, 2010 expired. Thus, when American Sand filed, administrative claims were still being filed by other administrative creditors. As pointed out by Creditor Trustee, and per the notice issued on December 15, 2010, these creditors had until January 14, 2011 to file a proof of claim. The objection to the claim was not filed until

---

[2] Since the parties have argued under the excusable neglect standard, the factual analysis looks very similar to the review of facts the court would undertake under Rule 9006(b). That is simply the result of the framework employed, and facts emphasized, by the parties.

3

February 2011. Thus, American Sand's delay does not appear to be meaningful.

Creditor Trustee suggests that allowance of this claim could devastate the plan of reorganization and ultimately result in a state court liquidation of the remaining assets of Debtors. There is no explanation as to why this claim, compared to later- filed administrative claims, is calamitous. Thus, is it difficult to imagine a significant negative impact resulted from the untimely claim when not all claims had yet been filed.

According to the Creditor Trustee, the unsecured creditors will suffer actual prejudice because they will receive a reduced distribution if the expense is allowed. The consideration of other parties is reasonable, especially when there is no actual prejudice to the debtor. Here, Debtors will not benefit if the expense is disallowed because if American Sand is not paid, the distribution will simply be paid to another claimant. The outcome on the claim objection will only affect who gets paid. In the question of "who" gets paid, the Code clearly favors administrative expense holders and, in the absence of palpable harm, the Code favors loss apportionment based upon the merits.

There is no question that paying this claim will negatively impact a pool of claimants, although it is not entirely clear which claimants will be impacted. In one statement, Creditor Trustee says the detriment will be on unsecured creditors but also suggests that the Creditor Trust may not be administratively solvent. If the latter is true, the unsecured creditors would not suffer any adverse impact from allowance of the claim, and the effect would fall on creditors higher up the ladder. Since very few estates can pay claims in full, this deleterious effect on some pool of creditors is seldom avoidable.

Creditor Trustee states that the payment of an additional $41,000 would "result in a measurable increase in the overall Administrative Claims pool." (Creditor Trustee's Reply, p. 6.) However, Creditor Trustee doesn't provide any frame of reference for its assertion. It makes a difference if the $41,000 is in a pool of $200,000 or $2,000,000. Without the reference, the court cannot measure the impact on creditors.

American Sand does not deny it knew of the bar date and disregarded it. According to American Sand, it did not file its request because it didn't think it was necessary. In its communications with Medina Supply, it was informed that the invoices would be paid and "not to worry." In reliance on these statements and its previous relationship with the debtor, American Sand did not file its request for payment. Although American Sand's disregard is puzzling in light of the circumstances, no one challenges the statements between Medina Supply and American Sand.

Further, it appears that nonpayment of the May invoices is an anomaly. The facts show that, as of the bar date of August 12, 2010, the May invoices were between seventy-three and eighty-six days old. The majority of the other post-petition invoices were paid in approximately one-half this time. At the time of the bar date, postpetition invoices for February, March, April and June had been paid, yet May's invoices remained outstanding. The May invoices were the only postpetition invoices which were not paid. This strongly suggests that nonpayment of the May invoices was an oversight. It also gives credibility to American Sand's reliance on the representations by Medina Supply that the invoices would be paid.

The combination of the above facts leads the court to conclude that cause exists to permit American's late-filed request for payment of its administrative expense claim. The objection to the claim will be overruled.

An appropriate order shall be issued immediately.

#   #   #

**Service List**:

Aaron L. Hammer
Thomas R. Fawkes
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, IL 60606-6677

Matthew R. Duncan
Patrick J. Keating
Buckingham, Doolittle & Burroughs
3800 Embassy Parkway, Suite 300
Akron, OH 44333

Daniel A DeMarco
200 Public Sq
Suite 2800
Cleveland, OH 44114-2301